IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC., a Florida corporation, ATLANTIC VENTURES CORP., a Florida corporation, and G.I.E. C2B, a French entity,<br><br>Plaintiffs,<br><br>v.<br><br>SAVENCIA, S.A., a/k/a SAVENCIA FROMAGE & DAIRY, a French corporation, and ZAUSNER FOODS CORP., a Delaware corporation,<br><br>Defendants. | ) C.A. No. 19-731-RGA |

J. Caleb Boggs Courthouse
844 North King Street
Wilmington, Delaware

Wednesday, April 1, 2020
10:30 a.m.
Teleconference

BEFORE: THE HONORABLE CHRISTOPHER J. BURKE
United States District Court Magistrate Judge

APPEARANCES:

MACAULEY LLC
BY: THOMAS G. MACAULEY, ESQUIRE

-and-

MARKO & MAGOLNICK, P.A.
BY: JOHN E. KIRKPATRICK, ESQUIRE
BY: DAVID MARKO, ESQUIRE

For the Plaintiffs

APPEARANCES CONTINUED:

MORGAN LEWIS & BOCKIUS LLP
BY: DAVID W. MARSTON, JR., ESQUIRE
BY: TROY BROWN, ESQUIRE
BY: MARGOT BLOOM, ESQUIRE

For the Defendants

10:29:55 10:29:55

10:29:58 *** PROCEEDINGS ***

10:29:58 THE COURT: Good morning, everyone. It's Judge
10:30:02 Burke here.

10:30:04 Before we begin today, is our court reporter
10:30:09 with us?

10:30:10 THE REPORTER: Yes, Your Honor.

10:30:10 THE COURT: All right. Thank you, Ms. Triozzi.

10:30:12 And let me begin by making sure that we have
10:30:16 folks on the line. And I should say that we're here today
10:30:19 in the matter in our court of ECB USA versus Savencia, et
10:30:29 al. It's Civil Action Number 19-731-RGA in our court.

10:30:34 Before we go further, let me confirm whether
10:30:37 counsel are on the line for both sides. I'll start first
10:30:39 with counsel for plaintiffs' side and ask them to identify
10:30:42 themselves beginning with Delaware counsel.

10:30:44 MR. MACAULEY: Sure, Your Honor. Good morning,
10:30:47 Thomas Macauley on behalf of plaintiffs, and also John
10:30:56 Kirkpatrick on behalf of the plaintiffs. I believe that
10:30:58 David Marko and Letia Mungia also will be joining in this at
10:31:05 some point.

10:31:06 THE COURT: All right. And we'll do the same for counsel for defendants' side. We'll start first with Delaware counsel, and I'll ask Delaware counsel to identify other folks from their side who are on the call.

10:31:19 MR. MARSTON: Good morning, Your Honor. It's David Marston from Morgan Lewis & Bockius for defendants, and with me on the line are my colleagues, Troy Brown and Margot Bloom. And Troy Brown will be handling the argument for us today.

10:31:32 THE COURT: All right. Thank you.

10:31:36 Mr. Marston, I think on your end, at least on my side there was some static. I could still hear you okay, but we'll see if that persists or not, but we'll go forward. And I reviewed the parties' letter briefs that were filed at DI-113 and 116.

10:31:53 I think I have an understanding of the basic issues, but I'll ask some questions of counsel for each side and certainly give them the opportunity to add anything else they wish to add on their behalf. Since it's defendants' letter motion, I'll turn first to defendants' counsel.

10:32:07 Who's going to speak on behalf of defendants' side?

10:32:10 MR. BROWN: Good morning, Your Honor. It's Troy Brown.

10:32:13 THE COURT: All right, Mr. Brown. And let me,

as I said, start with a couple of questions. You know, a little bit about the back and forth about the particular posture that we're in and whether or not discovery should move forward in any sense relates to the parties' dispute about whether there is, in fact, an agreed-upon stay of discovery or not in the case. And I see the back and forth between the parties.

I know it's your view that, based on certain conversations your side had with plaintiffs' side, there was an agreement to a stay. And I know that the other side disagrees.

I guess my question is: I didn't see you necessarily pointing me to a document in which you said to the other side, Hey, I just want you to know we've all agreed to a stay or remember when we agreed to a stay. And the other side responded back and said, Oh, you're right. We have a stay. There's a stay in place. I agree.

It didn't seem like there was that back and forth, and that, in essence, the dispute about whether a stay's been agreed to seemed to boil down to a dispute between the parties about what they had said, and that was about the extent of it. Is that right or is there a finer point that you think plaintiffs have put on an agreement to a stay in the past in this case?

MR. BROWN: No, Your Honor. That's a fair

summary, frankly, and you addressed what would have been the first issue I would have talked about on my presentation. And that's while we are of the view that the parties agreed to a stay and that the agreement was oral between plaintiffs' counsel and my colleagues, Ms. Bloom and Ms. Kim, we did reference we would submit declarations, if necessary.

Frankly, Your Honor, it's a little bit of a contextual side issue. We're not necessarily moving to enforce an oral stay agreement. We think it provides the Court with relevant context for the absence of prejudice here and how the parties have been proceeding, but our argument is really focused on the good cause for other reasons that I can walk through and that we previewed in the letter.

THE COURT: Okay. And so if the question then becomes really primarily should there be a stay in the case, you know, we have some motions to dismiss pending including one with regard to personal jurisdiction with regard to a foreign defendant. We don't yet have a case scheduling order entered in the case.

But on the other hand, the plaintiffs' side, in terms of breaking down kind of what's happened in the case, the way they've framed things is, okay, we may not have been going forward full stop with all forms of discovery so far,

10:35:02 but there have been discovery efforts made. There have been targeted efforts or focused efforts, or whatever you want to call them, but each side has basically said, Look, I'd like to take this discovery. And sometimes the other side has said, Okay, we don't have an objection to that, or sometimes there may have been objections, but it's not as if nothing has happened on the discovery front.

10:35:22 And so I guess that's the way they frame it. If that is correct or at least partly correct, why doesn't that indicate to me that, Look, until these motions to dismiss get decided, we could get started with more discovery. You know, we could have a plan in place to do something significant over the next two months until we get a decision on those motions post oral argument.

10:35:47 MR. BROWN: Yeah. So as I said, Your Honor, why don't I address that a little more broadly because that really frames really the full scope of the issue before the Court today, and it really, I think, falls into three categories. We have issues pertaining to potential discovery against a French defendant, Savencia, over which we believe there's no personal jurisdiction. I've briefed that issue.

10:36:14 This case, as Your Honor has seen, has taken a long, slow, and from defendants' standpoint, painful meandering path from Florida where it was wrongfully filed

in the first place, and after expensive motion practice got to Delaware where it should have been filed in the first place, yet not against Savencia for which there's no personal jurisdiction. And there's also the parallel Rule 11 motion for sanctions pending with respect to the absence of pleading of jurisdictional facts that would show any possible personal jurisdiction over Savencia.

Let me step back, and without beginning with too mockish a comment, I did want to wish, because we haven't spoken with plaintiffs in a bit and we haven't spoken with the Court before, the Court, plaintiffs' counsel, and all of your respective families hopefully as safe and healthy well wishes as possible.

Frankly, when we filed this letter motion on March 13th, I don't think we could have predicted that 20 days later the world would be where it is. And so, while good cause existed before, we think as it relates to all three categories, the Savencia discovery, the Zausner party discovery, and third-party discovery, there's even more compelling reasons for good cause to issue for either an indefinite stay or, at a minimum, a 60-day stay.

So back to the core issue that Your Honor framed, and I think is at issue here, you know, we have a fully dispositive motion to dismiss for Savencia as mentioned. And I will note that plaintiffs in their

opposition letter did acknowledge that they are no longer seeking direct party discovery from Savencia for the time being. And while we appreciate that position and think that that is the appropriate approach in the near term, one issue that I think the Court needs to confront is the notion of Savencia being prejudiced if discovery against Zausner or third parties proceeds while its personal jurisdiction motion is pending in which it does not participate. And then if the Court were to decide that Savencia is properly before this Court, and there is personal jurisdiction over Savencia, and that some or all substantive claims should proceed past the motion to dismiss stage, discovery will have moved forward without them to potentially their prejudice. So I think that's something that needs to be kept in mind. While plaintiffs haven't committed to not proceeding with discovery against Savencia indefinitely, there is that potential negative consequence to Savencia.

THE COURT: And Mr. Brown, on that --

MR. BROWN: With respect -- yes.

THE COURT: -- I don't want to cut you off, but just to --

MR. BROWN: Sure.

THE COURT: -- focus on that issue while you've mentioned it. If I were to decide that discovery as to Zausner should go forward in the interim in some way, I

could see plaintiffs' representation as well that they weren't seeking discovery as to Savencia in the interim.

Would Savencia prefer in that world to have the plaintiffs' representation be upheld? That is, to not have discovery go forward against it in these next couple of months until we get a decision on the motions, or would Savencia prefer, in light of the prejudice you've referenced, if there was going to be discovery of some kind going forward against Zausner, would they prefer to be participating in discovery during that time as well?

MR. BROWN: I think that phrase will have the choice that compels a stay of discovery as to all party and non-party at least, Your Honor, for the next 60 days so that the parties and the Court can revisit the issue on June 1st, in our view, which is the week of the rescheduled argument on the substantive motions so that we can all reevaluate and revisit where things stand, both in the world, in France as it relates to Savencia, in the U.S. as it relates to Delaware corporation, Zausner, and as it relates to third parties that could be implicated and prejudiced here because Savencia, as a foreign defendant without any, we believe, basis for being before this Court should not be forced to have to choose between prejudice, and compelled participation in discovery to avoid a prejudice that it shouldn't have to confront. And that's kind of the issue

here where you have both a foreign defendant under a motion to dismiss on personal jurisdiction and a U.S. defendant with the fully dispositive motion to dismiss as well.

So you know, to answer Your Honor's question, I don't believe my client in France should be put to that choice. And that's why I think it compels, at a minimum, a 60-day stay so we can all revisit where things stand on June 1st.

THE COURT: Okay. Mr. Brown, could you hold on for a second?

Mr. Brown, I need to put the parties on hold for a moment. I'll be back in just a few moments. Okay?

MR. BROWN: Sure, Your Honor.

THE COURT: Thank you, Mr. Brown.

(Recess was taken.)

THE COURT: Counsel, it's Judge Burke. I'm back. I appreciate it. As you might imagine, we're working through some technical and logistical challenges here, so I appreciate your patience.

And Mr. Brown, I'll turn it back to you.

MR. BROWN: Yeah, certainly, Your Honor. Thank you. I think we're all cognizant of that.

With respect to discovery proceeding in the near term against Zausner, we think there are essentially three different reasons why it should be stayed, again, either

indefinitely to rule on the motions or at a minimum for 60 days so we can all revisit things on June 1st, but the first is the reason raised in the motion.

And that is we do have a fully dispositive and, we think, very compelling motion to dismiss. We are not six, or eight, or ten months out from hopeful resolution of that motion, but as Your Honor previewed, hopefully 65 to 85 or 90 days out from resolution of that motion. That motion could be fully dispositive of the claims against Zausner; and therefore, we see no compelling reason why Zausner should be put through the paces of any initial party discovery at this point when it may be dismissed, materially dismissed or the claims, including both the contract and non-contract claims, be circumscribed pretty significantly or repleaded on an amendment depending on how the Court rules.

But secondly, Your Honor, things have changed in the last three weeks, and I think it is incumbent upon all of us to acknowledge that things have changed dramatically with COVID-19. And while I recognize that we're in unchartered territory, I think in a lot of these matters, based on what is happening in real-time, we're not trying to overplay the unprecedented and serious nature of this.

Zausner is a Delaware corporation. Delaware, as we all know, is under a shelter in place, stay at home

order. Many of the employees, including in-house counsel for Zausner, live in Philadelphia or outside of the Delaware area; and therefore, our ability to interact with our client such that they could even get access to ESI search terms, ability to begin the process of electronic discovery and paper discovery is going to be significantly challenged over the next "X" number of days, weeks, and months. And particularly where we're only looking at potentially a 60-day interim stay, if that's where the Court lands, there doesn't seem to be a reason to put Zausner's counsel, employees, and IT staff, who are, frankly, like the rest of us and like many of our clients, and I expect many of plaintiffs' clients, plaintiffs' counsel's clients triaging the various issues that they're dealing with on a daily basis, transitioning to remote working, sustaining the company's business both in the U.S. and abroad during this unprecedented time.

And frankly, for Morgan Lewis, while we are more than capable of handling things remotely and will for our clients, including here, if that's what we're ordered to do by the Court, assembling document review teams and dealing with remote ESI training control and quality control during this time, particularly over the next 30 to 60 days as the crisis has been exploding, and as everyone is trying to transition to a new normal for some indefinite period of

time, it's extremely challenging, and I think an unnecessary stressor to both Zausner's pending motions and counsel.

And finally, Your Honor, the third category is the third-party discovery. I think there is certainly more than good cause, and frankly, almost a moral imperative, if I'm not overstating it, and I hope I'm not because it's unintentional if I am, a moral not to burden third parties with some sort of accelerated third-party discovery that leap frogs party discovery while fully dispositive motions and a motion for sanctions are pending such that a non-party like Savencia cheese, which had a subpoena issued, there's not a new subpoena issued. So currently they're not under any subpoena burden, but presumably that could happen at any time.

And in particular, Mr. Voss, Alain Voss, who's the former CEO and president of SFI, the acquired business, who is older, lives in the New York City area, the epicenter of the current crisis, and certainly will ultimately need to be deposed by both sides for any substantive claims that go forward, and Mr. Voss shouldn't be burdened by any discovery obligations, deposition or document, for at least the next 60 days while he is likely dealing with his own issues in New York City, and especially where he would then be subjected to a potential double deposition since it is our view that Mr. Voss should not be deposed certainly before

10:48:24 party discovery and before document production by both sides
10:48:29 where the defendants would then need to subpoena him for a
10:48:32 second deposition some time in the future. That would be
10:48:36 burdensome. And I recognize Mr. Voss is not represented on
10:48:39 this hearing as a third party seeking to quash or seeking a
10:48:43 protective order, but it is certainly something that I think
10:48:46 the Court should be considering with respect to the third
10:48:48 category which is third-party discovery.
10:48:51 Finally, Your Honor, I just did want to touch on
10:48:54 one issue about discovery and discussions that has been
10:49:00 underway in certain narrow areas in this case. A primary
10:49:05 issue that I think plaintiffs flag in their responsive
10:49:08 letter is the issue of the subpoena that we served on
10:49:14 Constantin, and I do want to give the Court just a brief bit
10:49:16 of context on that because it is incredibly one off, and I
10:49:20 don't think it informs the issue of the stay here today.
10:49:24 Constantin is the former accounting firm for the
10:49:27 acquired business, and plaintiffs or one of plaintiffs was
10:49:33 in litigation directly with Constantin. We were not that
10:49:37 client's -- defendants were not a party to that litigation.
10:49:40 There had been some discovery, and then there was, we
10:49:44 learned, a settlement being negotiated about which we had
10:49:48 some concerns which I won't get into the detail here. But
10:49:53 because plaintiffs had the benefit of Constantin's documents
10:49:58 and discovery in that case, and we did not, we needed to, at

least in the near term, level the playing field, particularly with no understanding of whether Constantin would be a going-forward concern or would continue to have documents to produce at a later date.

So we served a very narrow subpoena on Constantin solely to level the playing field and make sure that we had access in real-time to the same exact documents the plaintiffs already had by way of their litigation of Constantin. And that's the discovery that we were proceeding upon.

Plaintiffs make some reference in their letter to there being millions of documents. That is relatively stunning to me in light of the nature and trajectory of that case, and the issues in that case, and perhaps the millions of pages relate to line items after line items of accounting entries for years of the business. We have no idea. But certainly our intention was never to have Constantin produce millions of documents to us just to level the playing field. So I don't think that informs the issue of stay here, nor do I think our narrow subpoena for playing field leveling should undermine the good cause that I think we've presented for a stay.

So those are really the issues I wanted to address, and I can answer any additional questions the Court has.

THE COURT: Okay. And I guess just a couple more. One is in terms of how the respective defendants kind of stand here in terms of the case, there's Savencia, a foreign entity, and is their assertion that, Look, there is no personal jurisdiction as to us here in this district or, frankly, in any state or federal court in the U.S., or is it the assertion, no, it's just with regard to this matter about in this Court, there is no personal jurisdiction. It could be the case that there's personal jurisdiction as to that entity somewhere in the United States, i.e. if the case against it here in our court could not go forward. Is it the case that a case against it nowhere in the United States could go forward?

MR. BROWN: Well, I don't want to not answer the question, Your Honor, so I'll answer it this way: There's no personal jurisdiction and no basis for suit in Florida. There is certainly no basis for suit and personal jurisdiction in Delaware as we've briefed. And frankly, there's not a single Delaware fact pleaded about personal jurisdiction in the complaint which is one of the lead reasons for the Rule 11 motion that we were constrained to file after a lot of back and forth with plaintiffs which, frankly, I don't do lightly. And I filed, I think, one other since Rule 11 came into practice.

As far as any other court in the U.S., I can't

answer that dispositively on this call, Your Honor. I do not believe from my history of working with Savencia that there would be personal jurisdiction against Savencia in any U.S. court. I certainly can't say that dispositively because I haven't done the analysis, and somebody might prove me wrong one day and say "X state could assert personal jurisdiction under "Y" facts, but I don't believe that to be the case. I believe claims against Savencia, if they were meritorious and could be asserted, which they can't, would have to be brought in a foreign jurisdiction, particularly in France.

THE COURT: And so it could be the case, again, if we're just comparing the defendant as to Savencia, there's not only kind of, you know, pleading deficiency type arguments as to why it is that it believes a case against it shouldn't go forward, but then there's this additional separate layer that it could well be the case that no such case against it could go forward in U.S. courts at large as compared to Zausner Foods which is, in essence, saying, Look, we have various arguments for why it is we think the various claims against us are wanting. If we're successful as to all of our arguments or some significant part of them, then there won't be a case against us. There's just not that second line of, hey, we shouldn't even be here kind of argument as to them.

Is that a fair summary?

MR. BROWN: That is correct, Your Honor. We don't have jurisdictional assertions for Zausner because they are a Delaware corporation, and the contracts mandated suit to be brought in Delaware in the first place which is why we had to get it out of Florida and brought to Delaware. So the claims vis-a-vis Zausner on the substantive side are all 12(b)(6) type arguments, statute of limitations, deficient contract pleadings, deficient non-contract pleadings. But the jurisdiction does lie for this Court in Delaware for the claims against Zausner as a jurisdictional matter. Correct.

THE COURT: Okay. And I say that just to say, you know, would it be a fair statement, in your view, that, Look, of course, if we're successful as to our motions as to these two defendants, you know, there's no case at all. But in terms of, without getting into the merits, just in terms of kind of percentage chances of success or, you know, basic understanding of the likelihood of success, Savencia has kind of more layers to its argument that a case against it in our court, maybe in U.S. courts shouldn't go forward at all, then does its partner, defendant, Zausner Foods?

MR. BROWN: I certainly would agree with that, Your Honor. We have a longer cascade basis for Savencia, including the critical gating issue of personal jurisdiction

than for Zausner where we think we have very strong substantive arguments, but we don't have a traditional gating issue.

THE COURT: Okay. And then the last question would be: I certainly take your point that, you know, the global crisis that we're in with regard to COVID-19 would make, you know, probably in almost any case involving almost any entity right now in the world much more challenging than it would be if we didn't have this crisis. It almost certainly would mean that, you know, we have to be allotting, you know, more time than we otherwise would for processes of various kinds to be able to be, you know, kind of seen through, you know, no question about that.

I guess my question would be: You know, if I was inclined to say, as to at least Zausner Foods, I think some discovery should at least get started, you know, and again, assuming that the glide path for that discovery is longer than it otherwise would be, but in terms of moving forward, is there, in your view, some kind of subset of discovery that you'd say, Well, look, you know, Judge, if you were inclined to get this train started for the next two months, this is the kind of subset that should be pretty manageable, should at least be stuff that can get started without incredible prejudice to Zausner Foods, whereas this other kind of bucket of stuff would really be too much.

10:57:58 Is there any kind of midpoint you want to offer in that regard, or do you see it really as kind of an all or nothing kind of thing?

10:58:06 MR. BROWN: So I'm going to also, with your indulgence, Your Honor, answer that in two ways because I think we're in such a different procedural posture, and I'm going to answer it one way in this procedural posture, but I do want to frame it contextually on an alternative track. If this case had already -- many of the cases that Your Honor's previewing that we're all on this call dealing with in our other matters are cases that are in the middle of fact discovery. Dispositive motions are done. The parties have a case management order. They're looking towards summary judgment phases, trial phases, and the like, and they're somewhere in fact or expert discovery.

10:58:49 Now, we get a global pandemic, chaos ensues, and the parties are trying to figure out: How do we manage this? How do we manage it under a case management schedule? What are the implications? What relief is needed? And plaintiffs and defendants are trying to figure out, I think, both legitimate and whether or not there's some tactical advantages to delays.

10:59:09 In that world I think the Court's decision here is more challenging, and to your point, what can proceed without impasse, what can proceed without severe prejudice

10:59:22 are issues that we're all confronting kind of daily with our judges in various jurisdictions.

10:59:28 We are in a really different pasture here, and the reason I want to frame it that way is we have not had any material discovery in this case as we have gotten it from Florida to Delaware other than very narrow one-off issues that I have flagged.

10:59:44 We are asking essentially for, at this point, a narrow 60-day stay to revisit this on June 1st, and there isn't even a resolution of the dispositive motions yet. So it's not like we're trying to put a full stop or even a partial stop to discovery that has proceeded in earnest for some period of time. A brief 60-day stay on a parallel track to an argument scheduled on June 5th for the dispositive motions seems to us to be not a very heavy lift or a heavy ask.

11:00:25 To answer more directly and finally Your Honor's question, I don't believe that there should be a middle ground of some sort where some narrow paper discovery against Zausner should proceed because what I fear and what I hope not to happen, but I think is likely inevitable under these circumstances, seeing both this case and other cases dealing with these issues, is coming back to Your Honor in 30 or 40 days, rather than a status conference in 60 days, and saying, Here's the best we tried to do. Here are all

the issues that we previewed and thought would occur. Perhaps things have gotten even worse and more challenging, and I don't think any of us can predict that. And I think coming back to the Court serially in the interim on even narrow subsets of middle ground discovery against Zausner strikes me and our side respectfully as a potential can kick for us and a possible burden to the Court to have to come back multiple times.

So I'm sure there is some middle ground we could propose, but I think the likelihood of the middle ground being effective tactically and our ability to actually execute on it, I think is completely unknown, if I'm being candid to the Court.

THE COURT: Okay. Thank you, Mr. Brown. Anything further before I turn to your colleague on the other side?

MR. BROWN: No, Your Honor. Thank you very much.

THE COURT: All right. Let's do that then, and who's going to speak on behalf of plaintiffs' side?

MR. KIRKPATRICK: John Kirkpatrick, Your Honor. Would it be possible for me to take about a minute-and-a-half break before we go? I need a bathroom break.

THE COURT: Sure, Mr. Kirkpatrick. I'm going to

put the parties on mute here, and we'll just wait. When you're ready, just come back and let us know you're available, and then we'll go from there. Okay?

MR. KIRKPATRICK: Thank you, Your Honor.

(Recess was taken.)

MR. KIRKPATRICK: I'm back, Your Honor.

THE COURT: Okay. Thank you.

MR. KIRKPATRICK: Thank you, Your Honor.

THE COURT: Mr. Kirkpatrick, thank you. And as I turn to you, you know, if I'm summing up, some of what Mr. Brown said is, you know, and the following would be something like this: Look, you know, we're in a case here where in the main, very little discovery or not a lot of discovery has occurred. We don't yet have a case schedule. We do have pending dispositive motions that the parties have agreed to argue the beginning of June. And you know, oh, by the way, we're in the middle of this, you know, really significant global pandemic. Gosh, all we're asking for here is just to stay things for 60 days or so. We'll get a decision on the motions or at least have a good sense of what that decision might be, and then, you know, let's move forward. We're not asking for a lot, and boy, there's a lot going on that would justify this.

If I'm summarizing the gist of what he has said, tell me why, in plaintiffs' view, it's not right to look at

things that way.

MR. KIRKPATRICK: Well, I'd like to start by noting that their position has changed since they filed the papers. So the arguments regarding the pandemic and the extra burden are new arguments. I understand that we're all facing them. You know, we're a relatively small firm in Miami. We've never appeared before Your Honor before. We're all adjusting to how we get things done in the age of COVID-19.

It's not quite accurate to say discovery hasn't been done and hasn't been proceeding. And the assertion that the discovery that they engaged in in January of this year before they asserted that there was a stay was actually very, very significant discovery. We had multiple conversations about it. We implemented confidentiality aspects with regards to it.

There was a negotiation of how it was going to be done because the discovery that they received from third party, Constantin Associates LLP, was not a small piece of discovery. It was not narrowly tailored. They asked in their subpoena for all documents produced by any party in discovery in that case knowing full well that that case addresses many of the issues underlining the transactions at issue in this case. And in fact, the breadth of the documents and the fact that we mentioned millions of

11:06:35 documents does not come as a surprise to them because it was not only mentioned in conversations with me, but in conversations with counsel for Constantin, Roy Hartman, who had sent them encrypted hard drives because these documents are so voluminous, they couldn't be shared on zip drives or smaller mechanical devices.

11:07:01 In fact, our entire library of documents, as it relates to this set of transactions involved in this litigation, has been produced to them in that production. So it's not leveling the playing field. In fact, they have taken a 20-yard head start vis-a-vis discovery.

11:07:31 What I've asked the Court to note is the following: There was originally a Rule 26 conference in 2018 in Miami, and a scheduling order was proposed to the Court. Instead of entering the order, the Court ultimately transferred the case to Delaware. But the parties, the Zausner and the plaintiffs both filed -- extensive requests were produced on virtually all issues associated with this litigation.

11:08:06 Now, it was a prior complaint, so there may actually be some new issues inserted by the amended complaint, but I think we have 151 specifications. They had a hundred or so specifications.

11:08:20 Those requests were produced. Production were responded to by both parties, including them, and they said

that they would be producing documents. And if my understanding is correct, the parties agreed to a rolling production, and the productions themselves never got underway, although we did all of our document review and put together our production for them which they have now obtained through Constantin. But we have not received any documents pursuant to the pending discovery.

What I would suggest to the Court is, given the nature of COVID-19, the nature of this short-term crisis is that, well, if we're not to have depositions over the next 60 days -- and by the way, with regard to Alain Voss, the deposition of Alain Voss by our side is being arranged through his counsel, and obviously, it's cancelled for this Friday. But if need be, because of his health problems, if we need to take a deposition of him to preserve his testimony at a certain point, we should not be prohibited from doing it.

But other than that, the Court could ask the parties to complete their documentary production during this 60-day period. There's never been a stay in place. Okay. Courts never entered the stay. The parties have exchanged requests for production in which they say they will be producing documents. A mid ground, like the Court asked opposing counsel about a few moments ago, would be to say, Okay, that process apparently began in Miami. Let's

complete it prior to, you know, the June 5th hearings.

So what I would suggest is let's keep the case moving forward because one of the things that happens in any of these cases is, assuming the Court says, Okay, I think this is well pled and that is not well pled, and the Court, you know, enters some sort of dismissal subject to amendment of some of the claims, we don't want to be delaying discovery another five months pending resolution of another motion to dismiss.

So what we would ask the Court to do in that context is take the middle ground. And the middle ground here would be to say, all right, parties, let's complete, you know, documentary exchanges pursuant to the initial request for production. If parties have additional, you know, requests for documentation based upon the amended pleading, get those done because that doesn't involve human interaction. It does not invoke the problems associated with the COVID-19 virus.

I don't think we have an objection to delaying depositions beyond that part, but we do have an objection beyond that to the suggestion that discovery should, for some reason, be bifurcated between parties and non-parties. Similarly, we don't think that the Court should impose any restrictions on our ability to get documents from third parties during this interim period of time. So I would

11:12:05 suggest a middle ground, you know, as I just talked about.

11:12:11 THE COURT: Okay. And Mr. Kirkpatrick, I guess
11:12:14 in light of what you had said in your letter, if I'm
11:12:16 summarizing your middle ground, it would be with regard to
11:12:21 either the request that plaintiffs have served or would
11:12:25 serve or with regard to requests that defendant, Zausner
11:12:30 Foods Corp., has served or would serve, i.e. not as to
11:12:34 Savencia, the resolution of the motion against it, we would
11:12:39 propose that documentary discovery go forward.

11:12:42 Is that a fair summary?

11:12:44 MR. KIRKPATRICK: I think that's a fair summary.
11:12:46 I think that, you know, the Savencia aspect of this is an
11:12:51 interesting one because they keep bringing up there's no
11:12:54 Delaware jurisdictional context. As the Court is aware at
11:12:59 this time, we do not allege jurisdictional context because
11:13:04 Savencia asked for this case to be brought to Delaware. You
11:13:09 know, we can go ahead with regard to Zausner and maybe
11:13:13 affiliates of Zausner, documentary production, you know,
11:13:18 while this case moves forward on, you know, motion practice.

11:13:25 THE COURT: And in terms of the issues that
11:13:31 Mr. Brown raised with regard to COVID-19, I don't understand
11:13:35 you to be saying, Look, we don't have to take that into
11:13:40 account in terms of the timeliness of documentary discovery
11:13:45 or the ease of it. I understand you to be saying, Sure, is
11:13:50 that going to affect how quickly, even as the documentary

discovery, some of this stuff gets discussed and produced? Sure it is.

But I take your view to be that in light of the lengthy pendency of the case and in light of the reality that even if there were a further stay even of short duration, that would mean if it was extended delay, if the case against any of the defendants went forward, that's why you're pressing to get things kind of officially started now.

Is that the gist of your argument?

MR. KIRKPATRICK: Well, I believe that's a reasonable characterization except for one thing. What I really want to remind the Court here is that the defendants have just abjectly refused to give discovery without -- you know, they say that there was a stay. We put our position in front of the Court. We went further than we ordinarily would in terms of attaching the communications and correspondence because they objected to the credibility issue and said that they had declarations. And at no point in no communication prior to February 11th when they sent us a letter, an email, did any of the parties to this case ever mention a stay of discovery.

So while we were moving forward trying to move this case after they had engaged in discovery in January, they refused. But if the Court knows that, what concerns me

and why I asked for the Rule 26 conference and sort of doing what we're doing right now discussing this, is that it's incumbent upon us as plaintiffs to move a case forward. And we are being met with resistance from the defendants, and we would like to at least get this documentary discovery moving forward. It can be done on a rolling production. We understand that timing may be different than it otherwise would be in a pre-COVID era.

We're actually already prepared to give them our library of documents. We might have to redo a little bit of a privilege search on it, but other than that, they already have all of our documents.

So yeah, I think that the way you characterize it is correct, Your Honor.

THE COURT: And then, lastly, Mr. Kirkpatrick, to the point you're making about the Constantin Associates discovery, I saw the line in your letter that said this production, i.e. the production that defendants have sought or maybe have obtained comprises virtually all of plaintiffs' documents relating to the issues in the instant action. Is in essence what you're saying, Look, Judge, the defendants can serve all the document requests they want on us, but if those document requests have anything to do with the subject matter of this litigation, the documents we produced would basically be the same documents they have

either already requested or obtained from the Constantin Associates. Is that what you're saying?

And if it is what you're saying or if it's something close to it, is the reason why you're saying it because you think it demonstrates that there's an imbalance of discovery obtained so far, i.e. they've gotten basically all your documents, but you haven't gotten hardly any of theirs?

MR. KIRKPATRICK: I think your characterization is correct, Your Honor.

THE COURT: Okay. I mean, if I were to go forward with allowing document discovery starting, you know, in the near term, do you expect to produce different documents of any kind than what the defendants either have sought or have obtained from Constantin Associates?

MR. KIRKPATRICK: Per the conversation that we had with one of defendants' counsel in January, we told them, We're going to be producing documents to you, also. They're going to be essentially the same documents. We do not believe that because you got them from Constantin, it exempts us from, you know, producing the same documents. But they're going to be the same documents, and we're ready to produce them.

THE COURT: Okay. Mr. Kirkpatrick, is there anything else you would like to add before I turn back to

your colleague on the other side for brief rebuttal?

MR. KIRKPATRICK: No, Your Honor.

THE COURT: Okay. Thank you. And I'll do that.

And Mr. Brown, turning back to you, it's your motion, so I'll give you the chance for brief rebuttal in terms of what you heard from Mr. Kirkpatrick before we finish our call.

MR. BROWN: Yes. Thank you, Your Honor. Let me start by just putting another re-pin in the Savencia prejudice Hobson's choice that occurs here if there is discovery that proceeds that Savencia's not participating in actively, and at some point the Court determines that it should be in this case on personal jurisdiction grounds. I think that continues to be an umbrella issue that, frankly, can't be extracted from the other discovery issue.

With respect to party discovery as to Zausner, I need to make a few brief points. First, Your Honor, the request for production of documents that were exchanged by the parties in this case date back to February of 2019. The case was in Florida. The case had motion practice pending to get it out of Florida and to Delaware. And the most compelling evidence that there was an agreed stay in that case that has continued to this case until this issue became ripe more recently is the fact that in the intervening year from when those discovery requests were exchanged in

February where we find ourselves now dealing with this issue in February of 2020 in our motion is the fact that nobody proceeded forward with responses, with productions because there was an agreed stay. So whether or not there's a documented stay and whether or not there is a contextual stay, there was actions by all parties indicative of the fact that the parties agreed to stay discovery because what we're seeing from plaintiffs is they are certainly not shy about advancing positions that they believe that they're entitled to things, and we are dealing with discovery dispute issues on discovery requests served more than a year ago, now in March and today, April of 2020.

So I think that's important. Those were exchanged pre-stay, and nothing was moved on that.

With respect to the Constantin documents, Your Honor, while I'm not planning to hold Mr. Kirkpatrick to representations made on this call with respect to their expectations for production later in this case, if it survives its motions to dismiss, I have to say that I would be stunned and dumbfounded if plaintiffs' ultimate position if discovery goes forward after motion practice is that documents that plaintiffs produced to Constantin in a litigation against Constantin that was settled on what we believe are some questionable bases in which we didn't participate would somehow be the full universe of documents

that would be responsive to requests that would be served and have been served by Zausner and potentially Savencia if it's in this case here.

I don't know what they did vis-a-vis ESI process and protocols. I don't know if they negotiated and agreed to search terms and how detailed. We will need ESI protocols, search terms, custodians in this case reciprocally on both sides.

And again, if we are later in this case, and I have a representation from plaintiffs that the universe of documents that is being produced and has been produced by Constantin are what we envision to be a narrow playing field leveling subpoena, are somehow 99 percent or a hundred percent of the universe of documents to produce in this case, you know, I will be stunned. And I think there may be issues there, but I think the complexity associated with an ESI protocol and search term negotiations bilaterally in this case means that no matter what the Court would rule today or in the near term, there's no immediate production of documents. We will need to negotiate ESI protocols, and search terms, and the like before we can even figure out whether the parties have an agreement on their respective custodians' issues pertaining to potential domestic, and foreign discovery, and the like.

Finally, just because I'm compelled to say

something about Mr. Voss, and if I'm reading the Court correctly, and I recognize that's a risk, I am hopeful that the notion of third-party discovery in the near term is likely not on the table. But you know, we were told initially by plaintiffs that Mr. Voss had some significant health issues, and it was suggested to us that they related to, you know, the heart, and that they may need to take a near term deposition in the event that he was somehow unavailable, i.e. a deathbed deposition like you see in toxic tort cases or injury cases.

And what we have learned is Mr. Voss is a relatively healthy guy who has back issues and treats them with, you know, normal treatments of pain management like many of us of his vintage, present company included, deal with. So we learned that while there was going to be a deathbed deposition accelerated for Mr. Voss, that that simply wasn't the case, and that kind of led us to some of the dialogue that Mr. Kirkpatrick is referencing between the parties over the last several weeks that led to our motion on March 13th.

So I thought it was important for Your Honor to have a little bit of that context because I think there has been some question about the context within which some of this has been happening in the background. I'm happy to answer any other questions Your Honor has based on

Mr. Kirkpatrick's comments as well.

THE COURT: Just one other fact question, Mr. Brown, and that is with regard to the subpoena for the Constantin documents, have you actually received those documents yet, or is that something that you're still negotiating and yet to receive?

MR. BROWN: We received the production from Constantin. We have not scrutinized them in any detail to know whether they are complete and accurate. And again, we also just don't have the full context or, you know, the nature of what was negotiated and agreed in that case before this settlement arose suddenly.

THE COURT: Okay. All right. Well, thank you, counsel. I appreciate your arguments.

Obviously, I understand where both sides are coming from. There are good arguments to be made as to what to do at least in the near team here. I want to have a moment to consider what's been said in our call today. So I'll take the matter under advisement, but I'll expect to issue a short order very soon that will resolve the dispute. I expect that some time this week. And so the parties will have an answer, and they can figure out how or whether, in fact, we are moving forward in the meantime any way between now and our oral argument.

Also, I'll say with regard to the oral argument,

at least I understand, you know, it involves some substantial motions. I understand the parties' desire to make every effort to argue those in person. And that's what we've tried to accomplish in agreeing to the parties' request that we move oral argument until June.

Look, of course, who knows where we'll be in the beginning of June in terms of COVID-19 issues, but what I could say pretty confidently is if we are not in a position as a court where it is safe or it is our protocol to have an in-person oral argument on the date when we've rescheduled oral argument, I would fully expect to be doing it telephonically then. I don't want to put argument on those motions off any further unless there's some unforeseen emergency.

And so, one way or the other, what I'm saying is that we are going to have argument on that date. And again, absent something incredibly exigent, my hope is it will be in person. But if it's not in person, the expectation is it will be by telephone, and we can talk about procedures that we might need to utilize if that's what comes to pass in terms of if the parties have slides or if the parties want to make kind of other kinds of presentations to me as part of that oral argument. But that's for a little bit in the future, and as everyone has noted, things are moving on a very quick basis and changing very quickly during these

11:27:48 weeks.

11:27:48 All right. Well, then I'll take the matter 11:27:51 under advisement, and I hope to issue a short order soon.

11:27:55 I'll sign off by saying I appreciate your time 11:27:57 today. I wish everybody a good week and hope everyone stays 11:28:01 safe.

11:28:01 All right. With that, the Court will go off the 11:28:03 record, and I'll thank everyone. Take care.

(Everyone said, Thank you, Your Honor.)

(Teleconference was concluded at 11:28 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Heather M. Triozzi
Certified Merit and Real-Time Reporter
U.S. District Court