**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ECB USA, INC., ATLANTIC VENTURES CORP., and G.I.E. C2B, </br></br> Plaintiffs, </br></br> v. </br></br> SAVENCIA, S.A. and ZAUSNER FOODS CORP., on behalf of itself and as successor in interest to ZNHC, INC., </br></br> Defendants. | Civil Action No. 19-731-RGA-CJB |

## MEMORANDUM ORDER

Pending before the Court is Defendants Savencia S.A. ("Savencia") and Zausner Food Corp.'s ("Zausner," and collectively, "Defendants") motion for sanctions filed pursuant to Federal Rule of Civil Procedure 11 ("Motion"). (D.I. 86) Plaintiffs ECB USA, Inc. ("ECB"), Atlantic Ventures Corp. ("Atlantic Ventures") and G.I.E. C2B (collectively, "Plaintiffs") oppose the Motion. For the reasons set forth below, the Court DENIES the Motion in the manner set out herein.

**I.    BACKGROUND**

The Court incorporates by reference and assumes familiarity with the factual background and procedural history of this case, which is set out in the Court's July 10, 2020 Report and Recommendation. (D.I. 135 ("July 10 R&R")) By way of brief background, Plaintiffs' claims in this action relate to a transaction executed in 2014-15, wherein Plaintiffs ECB and Atlantic Ventures purchased Defendants' subsidiary Schratter Foods, Inc. ("Schratter") pursuant to the terms of a Stock Purchase Agreement ("SPA"). (D.I. 77 ("FAC") at ¶¶ 19, 38; *see also id.*, ex. 1 ("SPA")) In the operative First Amended Complaint ("FAC"), Plaintiffs allege that Defendants

breached the SPA, committed various forms of fraud prior to and after the purchase, and assisted others in breaching fiduciary duties owed to Plaintiffs prior to and after the purchase.

Defendants filed the Motion on October 7, 2019, (D.I. 86), along with respective motions seeking to dismiss the FAC against them (the "motions to dismiss"), (D.I. 82; D.I. 84). Briefing on the Motion was completed on October 28, 2019. (D.I. 91) United States District Judge Richard G. Andrews referred the Motion (along with the motions to dismiss) to the Court for resolution on January 2, 2020, (D.I. 100), and later referred this case to the Court for all purposes up through and including dispositive motions, (D.I. 118). The Court heard oral argument on the Motion and the motions to dismiss by videoconference on June 5, 2020. (D.I. 133 (hereafter, "Tr."))

## II.  STANDARD OF REVIEW

Rule 11(b)(1) explains that by presenting to the court a pleading, motion or other paper, counsel is certifying that to the "best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" *inter alia*, that the filing is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[,]" that the claims, defenses and other legal contentions therein are "warranted by existing law or by a nonfrivolous argument" for altering that law and that "the factual contentions [therein] have evidentiary support[.]" Fed. R. Civ. P. 11(b)(1). Rule 11 provides that a court may issue sanctions on an attorney, law firm or party if, after notice and a reasonable opportunity to respond, it determines that the Rule has been violated. Fed. R. Civ. P. 11(c); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 486 (D. Del. 1998).

The United States Court of Appeals for the Third Circuit has described the legal standard for Rule 11 sanctions as "stringent" because such sanctions: "1) are in derogation of the general

American policy of encouraging resort to the courts for peaceful resolution of disputes[,] 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases[,] and 3) increase tensions among the litigating bar and between the bench and the bar." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (internal quotation marks, citations and alterations omitted). Accordingly, Rule 11 should be interpreted "to prescribe sanctions, including fees, only in the exceptional circumstance . . . where a claim or motion is patently unmeritorious or frivolous." *Id.* (internal quotation marks and citations omitted); *see also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).

### III. DISCUSSION

In their Motion, Defendants proposed three grounds for Rule 11 sanctions—that is, three examples of Plaintiffs' sanctionable arguments and/or litigation conduct. (D.I. 87 at 2-3) These included: (1) Plaintiffs' insistence that there was personal jurisdiction in this Court over Savencia, (D.I. 87 at 7-10; D.I. 91 at 2-6); (2) Plaintiffs' refusal to withdraw "[p]atently [t]ime-[b]arred [c]laims[,]" (D.I. 87 at 10-13 (emphasis omitted); D.I. 91 at 7-10); and (3) that Plaintiffs' conspiracy claims in Counts VIII and IX of the FAC are tactical and frivolous, (D.I. 87 at 13-15; D.I. 91 at 10). Defendants argue that Plaintiffs' counsel's refusal to withdraw the FAC after being provided with notice of its frivolous nature warrants Rule 11 sanctions, in the form of: (1) dismissal of nearly the entirety of the instant suit and (2) awarding Defendants their attorneys' fees and costs incurred in connection with the Motion. (D.I. 87 at 15-17)[1]

---

[1] Defendants seek dismissal via this Motion of every claim in the FAC other than Count I's allegation of breach of contract premised on alleged violations of Articles III.1 and III.11 of the SPA. (D.I. 87 at 17)

3

As to the first basis for proposed sanctions—Plaintiffs' allegation that there is personal jurisdiction over Savencia in this Court—the Motion is denied. In the July 10 R&R, the Court agreed with Plaintiffs that there is personal jurisdiction over Savencia here, in that by seeking transfer of the case to this Court pursuant to 28 U.S.C. § 1404(a), Savencia impliedly consented to personal jurisdiction in this Court. (July 10 R&R at 12-21) The Court cannot find frivolous a legal theory that has actually prevailed here (and that has prevailed in other courts when presented under similar circumstances).[2]

Similarly, with regard to the third proposed basis for sanctions—the alleged frivolous nature of Plaintiffs' conspiracy claims—the Motion is denied. In the FAC, Plaintiffs bring two counts for conspiracy against Defendants: Count VIII for conspiracy to commit breach of fiduciary duty, (D.I. 77 at ¶¶ 89-93), and Count IX for conspiracy to commit constructive fraud, (*id.* at ¶¶ 94-99). In their motions to dismiss, Defendants argued several grounds for dismissal of these claims. (*See* July 10 R&R at 44) But in the instant Motion, they focus on only one, the "intra-corporate conspiracy" doctrine, (D.I. 87 at 13-15; D.I. 91 at 10), which states that a company cannot conspire with its subsidiaries, agents or employees, *see Developmental Techs., LLC v. Mitsui Chems., Inc.*, Case No. 8:18-cv-1582-T-27TGW, 2019 WL 1598808, at *6-7 (M.D. Fla. Apr. 15, 2019); *Mancinelli v. Davis*, 217 So. 3d 1034, 1036 (Fla. Dist. Ct. App. 2017). Defendants' Rule 11 argument is that in Count VIII and Count IX, Plaintiffs are alleging just this—that Defendants *did* either conspire with each other, or, *inter alia*, that they conspired

---

[2] *See Lockett v. Pinnacle Entm't, Inc.*, Case No. 19-00358-CV-W-GAF, 2019 WL 4296492, at *4-7 (W.D. Mo. Sept. 10, 2019); *cf. Orbis Opportunity Fund, LP v. Boyer*, Civil Action No. 20-cv-40-RGA, 2020 WL 3060368, at *3-4 (D. Del. June 9, 2020); *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10 Civ. 2333(LTS), 2011 WL 1327137, at *3 (S.D.N.Y. Mar. 31, 2011).

with Alain Voss, Schratter's President and Chief Executive Officer (i.e., Defendants' employee). (D.I. 87 at 13-15; D.I. 91 at 10)[3]

The Court disagrees. The allegation in these counts is clearly that both Defendants conspired with Mr. Voss. (FAC at ¶¶ 89-99; *see also id.* at ¶¶ 20-23) Yet as Plaintiffs point out, to the extent that these Counts are meant to allege a conspiracy occurring *after* Schratter's sale closed, Mr. Voss was no longer then *Defendants'* employee or agent; instead, by then he was *Plaintiffs'* employee, and so the intra-corporate conspiracy doctrine would have no effect. (D.I. 90 at 11)[4] And to the extent that the counts are meant to allege that such a conspiracy occurred *prior to* the closing (i.e., at a time when Mr. Voss worked at Schratter and Schratter was still *Defendants'* subsidiary), Plaintiffs assert that the "personal stake" exception to the intra-corporate conspiracy doctrine would then apply. (D.I. 90 at 11-12) This doctrine states that a conspiracy between employers and their employees can still exist when the employee has a "personal stake" in the conspiracy that is separate and distinct from the corporation's interest. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 181 (Fla. Dist. Ct. App. 2000); *see also* (D.I. 90 at 11-12). While the Court need not decide now whether this "personal stake" exception would apply on the facts alleged in the FAC, at a minimum, it can conclude that Plaintiffs' argument in that regard is not frivolous. After all, the FAC's allegations are that in order to obtain his participation in this conspiracy, Defendants provided Mr. Voss with various personal benefits,

---

[3] The Court did not need to reach the applicability of the intra-corporate conspiracy doctrine in resolving Defendants' motions to dismiss as to these claims, as instead it concluded that the claims were subject to dismissal on other grounds. (July 10 R&R at 44)

[4] In their reply brief, Defendants do not really have an answer to this explanation for why this aspect of the claims is not frivolous. (D.I. 91 at 10)

including paying him millions of dollars and permitting him to draw a salary for jobs in which he provided no actual service. (FAC at ¶ 21)

However, Defendants' second basis for sanctions—i.e., that Plaintiffs have pressed forward with their claims despite knowing that nearly all of them are time-barred—is a little different. In Defendants' briefing on their respective motions to dismiss, they raised several arguments as to why Plaintiffs' claims were time-barred. One of those issues is of particular importance here.

In the original Complaint—and particularly in paragraph 43 of that pleading—Plaintiffs alleged facts that could indicate that by as early as January 2015, they were aware of at least some of the alleged breaches of contract and/or fraudulent activity that are now at issue in the FAC. (D.I. 1, ex. 1 at ¶ 43 ("*[B]eginning in January 2015*, Plaintiffs discovered that there were long-term commitments of [Schratter], not undertaken in the ordinary course of business, entered into with certain significant clients and vendors which were binding upon [Schratter] but which Savencia and [Zausner] had never discussed with or disclosed to Plaintiffs or their representatives.") (emphasis added); *see also id*. ¶¶ 46, 49-51, 58) These allegations were then omitted from the FAC when it was filed. (D.I. 77). Defendants' argument for sanctions here is that: (1) Plaintiffs had previously alleged that these allegations were truthful; (2) Plaintiffs included those allegations in the original Complaint because that pleading was filed in Florida, which has a longer four- and five-year statute of limitations period for the claims at issue (such that even had the claims begun to accrue in January 2015, the original Complaint's filing in October 2018 would not have been problematic for Plaintiffs from a time-bar perspective); (3) but when Plaintiffs later saw their case transferred to Delaware, and realized that it was more likely that Delaware's shorter three-year limitations period might apply to the claims, Plaintiffs

6

intentionally omitted these allegations from the more recently-filed FAC, in a bad faith attempt to keep their claims viable; and (4) instead, in the FAC, Plaintiffs now allege that they did not learn of the claims at issue until at least 2017 (which would not be problematic from a time-bar perspective). (Tr. at 209-14; *see also* FAC at ¶¶ 47-48; D.I. 91 at 7)

Defendants' argument may or may not ultimately have merit. At least at first blush, the way Plaintiffs' pleadings changed here does seem a bit troubling. Moreover, when the Court asked Plaintiffs' counsel about this issue during oral argument, the confusing responses the Court received did not alleviate concern.[5]

---

[5] During oral argument, the Court asked Plaintiffs' counsel about the allegations at issue in the original Complaint having to do with prior notice of the alleged misconduct—including those allegations in paragraph 43, which stated that Plaintiffs became aware of certain of the alleged conduct in January 2015—that were later omitted from the FAC. At one point, Plaintiffs' counsel stated that Plaintiffs had wholly foregone any claims premised on this previously-referenced conduct. (Tr. at 219-22, 225; *see also* D.I. 90 at 6 (asserting that paragraph 43's allegations "have nothing to do with the [FAC]")) But that is actually hard to tell from the wording of the FAC. The FAC alleges breaches of, *inter alia*, Articles III.7(c) and III.9 of the SPA and, relatedly, that, *inter alia*, Defendants made various misrepresentations to Plaintiffs prior to and/or at closing about Schratter's operations and financial condition. (FAC at ¶¶ 55, 58, 63, 68, 73, 78, 91) The original Complaint's allegations—including those in paragraph 43 about misrepresentations that were "discovered" "beginning in January 2015"—sound like they could also be captured by the FAC's allegations too. (D.I. 1, ex. 1 at ¶¶ 42-43)

Indeed, after the Court continued to follow up about this issue, things got a bit more nuanced. At that point, Plaintiffs' counsel said that he "cannot represent" to the Court that the conduct referred to in paragraph 43 is not the same conduct alleged to have amounted to a breach of contract in the FAC; counsel explained that he "[did not] know" if there was such overlap between the respective complaints. (Tr. at 227, 230) When the Court followed up by asking why the allegations found in paragraph 43 of the original Complaint were omitted from the FAC, Plaintiffs' counsel stated that this was because although he had written the FAC, when he did so, he "didn't even review the initial [C]omplaint" beforehand, and so he could not "tell you why I omitted the allegation in [paragraph] 43 [of the original Complaint from the FAC]." (Tr. at 233) If these representations were intended to make the Court feel *less* concerned about the viability of the instant Motion, they failed.

7

Despite this, the Court cannot agree with Defendants that it should adjudicate this issue now and grant their Motion on this ground. The Third Circuit has recognized that "'in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the *end* of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.'" *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) (quoting Fed. R. Civ. P. 11 advisory committee notes, 1983 amendments) (emphasis added). In light of this guidance, district courts within the Third Circuit have recognized that resolution of such Rule 11 issues should occur after a full and fair factual record has been made. *See, e.g.*, *Princeton Digital Image Corp. v. Office Depot Inc.*, Civil Action No. 13-239-LPS, D.I. 52 at 84 (D. Del. May 5, 2015) (denying a Rule 11 motion "very much without prejudice" to the filer's ability to renew at a later point in the case, in order to enable the Court to better determine whether the conduct at issue was violative of the Rule); *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 86-87 (E.D. Pa. 1992) (granting a motion for Rule 11 sanctions post-trial, and noting that it was appropriate to do so at that stage because "a full record of the facts underlying this claim has now been developed"—a record that was not available at the pleading stage).[6] Here, the record about what Plaintiffs knew when is sparse, largely consisting of the few paragraphs in the original Complaint and the FAC that are cited above. The Court is also not clear on the extent to which the notice-related allegations at issue in the original Complaint (like those in paragraph 43) overlap with the subject matter of the FAC's claims. And lastly, since the Court has recommended that the claims should not now be dismissed on statute of limitations grounds,

---

[6] *See also TIC Park Ctr. 9, LLC v. Cabot*, Case No. 16-24569-Civ-WILLIAMS/TORRES, 2018 WL 4932249, at *3 (S.D. Fla. Oct. 10, 2018) (citing cases), *reconsideration denied*, 2018 WL 7286989 (S.D. Fla. Nov. 28, 2018).

(July 10 R&R at 37), it is likely that further record evidence will soon be gathered about these issues (i.e., exactly when Plaintiffs were aware of the existence of the misconduct alleged in the FAC).[7] For all of these reasons, it would be premature to definitively rule on this aspect of the Motion now. So the Court will deny the Motion on this ground, without prejudice to Defendants' ability to renew at a later stage of the case.

IV. **CONCLUSION**

For the reasons set out above, the Court orders that Defendants' Motion be DENIED. That denial is without prejudice to Defendants' ability to re-raise a Rule 11 motion later in the case with regard to the time-bar issue discussed above.

Dated: July 10, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[7] Indeed, during oral argument, Defendants' counsel suggested that further relevant evidence demonstrating the merit of its argument here *would* likely be presented at the summary judgment stage, were the statute of limitations issue to remain live until then. (Tr. at 127-28)