IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZAUSNER FOODS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>ECB USA, INC., ATLANTIC VENTURES CORP., G.I.A. C2B, CLAUDE BLANDIN, BRUNO BLANDIN, PATRICK BLANDIN, ARNO LEONI, and JOHN DOE DEFENDANTS 1-10,<br><br>Defendants. | Civil Action No. 19-731-RGA |

MEMORANDUM ORDER

In his Report & Recommendation (C.A. No. 20-1769, D.I. 56),[1] the Magistrate Judge recommends that I GRANT-IN-PART and DENY-IN-PART Defendants' motion to dismiss and strike (C.A. No. 20-1769, D.I. 42). Specifically, he recommends that I grant Defendants' motion to dismiss for lack of personal jurisdiction over the Individual Defendants and deny the motion in all other respects. In the same Report (C.A. No. 20-1769, D.I. 56 at 32), the Magistrate Judge DENIED Plaintiff's motion for jurisdictional discovery (C.A. No. 20-1769, D.I. 45).

Defendants ECB, AVC, and C2B object to two of the Magistrate Judge's findings: (1) that Zausner has standing to bring this action, and (2) that Zausner stated a claim for breach of the Stock Pledge Agreement. (D.I. 216). Zausner objects to two of the Magistrate Judge's findings: (1)

---

[1] Unless otherwise specified, citations to docket entries herein refer to Case No. 19-731-RGA-CJB. Pursuant to an Order signed by the Magistrate Judge on February 2, 2022, in C.A. No. 20-1769-RGA-CJB, "all future filings [in this matter] shall be made in the lead case only, Case No. 19-731-RGA-CJB."

1

that the Court lacks personal jurisdiction over the Individual Defendants, and (2) that Zausner has not made the *prima facie* showing required to be permitted to take jurisdictional discovery from the Individual Defendants. (D.I. 217). The objections are fully briefed. (D.I. 216, 217, 220, 221) I consider the challenged recommendations *de novo*.[2]

## Defendants' First Objection

Defendants object to the finding that Plaintiff has prudential standing to bring this action, arguing, "The SPA contains an anti-assignment clause prohibiting ZNHC from assigning its rights, **by operation of law or otherwise**, without the **written consent** of ECB USA and Atlantic Ventures." (D.I. 216 at 2) (emphasis in original). Defendants argue Zausner became ZNHC's successor via a "merger effected under the Delaware merger statute," and, "Under Delaware law, a merger is an 'assignment by operation of law.'" (*Id.* at 2-3 (citing *MTA Canada Royalty Corp. v. Compania Minera Pangea, S.A. de C.V.*, 2020 WL 5554161, at *3 (Del. Super. Ct. Sept. 16, 2020)). Therefore, Defendants argue, the anti-assignment provision of the SPA, which states, "Neither party may directly or indirectly assign any of its rights or delegate any of its obligations under this Agreement, by operation of law or otherwise, without the prior written consent of the other party," precluded a transfer of ZNHC's enforcement rights to its successor, Zausner.

I disagree.

I agree with the Magistrate Judge that the first sentence of the SPA's "Assignment" provision, "This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, legal representatives and permitted assigns," makes clear

---

[2] I consider Plaintiff's objection to the non-case-dispositive motion for jurisdictional discovery under a "clearly erroneous or . . . contrary to law" standard. *See* Fed. R. Civ. P. 72(a).

that the parties intended to grant the parties' "successors" enforcement rights with respect to the SPA, merely by virtue of their being the parties' successors. (C.A. No. 20-1769, D.I. 39 Ex. 1 ¶ XII.4). This successors' enforcement right is derived from the SPA itself, not from the assignment of rights "by operation of law" that accompanies a merger. *See Corp. Exp. Office Products, Inc. v. Phillips*, 847 So.2d 406, 415 n.6 (Fla. 2003) (noting, under Florida law, "the rights of the merged corporation become those of the surviving corporation"). That the provision also grants enforcement rights to "permitted assigns" implies the parties intended to distinguish successors from permitted assigns. As the Magistrate Judge points out, there are many ways besides a merger for rights to be assigned from the parties to a third party, either "by operation of law" or otherwise. (C.A. No. 20-1769, D.I. 56 at 9-10).

Even if Delaware law were controlling,[3] Defendants' argument that *MTA Canada* is dispositive on this issue of contract interpretation would still be unpersuasive. Unlike Section XII.4 of the SPA, the relevant provision of the Agreement at issue in *MTA Canada* begins with an anti-assignment clause prohibiting assignment "by operation or law or otherwise . . . without the prior written consent of each other party," and then states, "*Subject to the preceding sentence,*[4] this Agreement will be binding upon, inure to the benefit of, and be enforceable by, the parties and their respective successors and assigns." *MTA Canada Royalty Corp. v. Compania Minera Pangea, S.A. de C.V.*, 2020 WL 5554161, at *2 (Del. Super. Ct. Sept. 16, 2020) (emphasis and footnote

---

[3] It is not. I find it is clear from the SPA's choice of law provision that Florida law governs the instant dispute. (20-1769, D.I. 39 Ex. 1 ¶ XII.5 ("This Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Florida applicable to contracts made and to be wholly performed within such State.")).

[4] The Court in *MTA Canada* notes, "The use of 'sentence' instead of 'sentences' in [the relevant provision] likely is a drafting anomaly." *MTA Canada*, 2020 WL 5554161, at *5.

3

added). In *MTA Canada*, the anti-assignment clause unambiguously curtailed the successors' enforcement right granted by the Agreement. Here, that is not the case.

For these reasons, in addition to the reasons articulated by the Magistrate Judge in his Report and Recommendation, Defendants' First Objection is OVERRULED.

## Defendants' Second Objection

Defendants object to the finding that Plaintiff stated a claim against ECB and AVC in Counts II and IV for (1) breach of the Stock Pledge Agreement, and (2) breach of the implied covenant of good faith and fair dealing with respect to the Stock Pledge Agreement.

Defendants argue the Magistrate Judge "rewrite[s]" portions of the Stock Pledge Agreement in finding that, by alleging that ECB and AVC caused SFI to enter into an insolvency proceeding that rendered the Collateral essentially worthless, Plaintiff had stated a claim for breach of Section 8 of the Stock Pledge Agreement. (D.I. 216 at 7).

I disagree.

Section 8 of the Stock Pledge Agreement prohibits Defendants from doing anything to "dispose of . . . any of the Collateral or any interest therein except as expressly provided for herein or with the prior written consent of the Secured Party." (C.A. No. 20-1769, D.I. 39-1, Ex. C at 4). Defendants claim, "There is no allegation that [ECB]/AVC ever did anything to interfere with the Collateral – the shares of SFI." (D.I. 216 at 8). This is simply not true. As the Magistrate Judge notes, Plaintiff specifically alleges in its complaint that, by causing SFI to enter the insolvency proceeding, ECB and AVC "destroyed, dissipated and disposed of the value of Zausner's security interest in 90% of the shares of SFI." (C.A. No. 20-1769, D.I. 56 at 26-27 (citing C.A. No. 20-

1769, D.I. 39 ¶ 108)). By alleging ECB and AVC took actions to render the Collateral worthless, Plaintiff has sufficiently alleged a breach of the Stock Pledge Agreement.

Defendants' entire argument relating to Count IV is based on its contention, "there is no underlying breach of the Stock Pledge Agreement." (D.I. 16 at 9). Because, for the reasons stated above, I agree with the Magistrate Judge's finding that Plaintiff has successfully alleged a breach of the Stock Pledge Agreement, I also agree that Defendants' challenge to the allegations of a breach of the implied covenant of good faith and fair dealing also fails.

For these reasons, Defendants' Second Objection is OVERRULED.

### Plaintiff's First Objection

Zausner objects to the Magistrate Judge's finding that this Court lacks personal jurisdiction over the Individual Defendants, arguing, "the Individual Defendants meet the foreseeability prong of the 'closely related' test, such that they are bound by the [SPA]'s forum selection clause, and as such, Zausner has established that this Court has personal jurisdiction over the Individual Defendants." (D.I. 217 at 1).

Zausner argues that I found this Court had personal jurisdiction over Savencia S.A. under the "closely related" test, and therefore, this Court must also have personal jurisdiction over the Individual Defendants who, Zausner argues, "were ***much* more actively involved** than Savencia S.A. was in negotiating and executing the SPA." (*Id.* at 2-3) (overemphasis in original). This argument is utterly unpersuasive. In finding this Court had personal jurisdiction over Savencia, I adopted in full the Magistrate Judge's finding that "Savencia affirmatively sought transfer of venue

to this court pursuant to Section 1404(a), and thereby consented to personal jurisdiction in Delaware." (C.A. No. 20-1769, D.I. 135 at 17, adopted in full, D.I. 141). Individual Defendants have not similarly consented to personal jurisdiction in this District.

Zausner makes no other substantive arguments in support of its objection. Therefore, I adopt the Magistrate Judge's reasoning in full supporting his finding that this Court does not have personal jurisdiction over Individual Defendants. Plaintiff's First Objection is OVERRULED.

### Plaintiff's Second Objection

Zausner makes no additional substantive arguments in support of its second objection, that the Magistrate Judge erred in finding Plaintiff has not made the *prima facie* showing of personal jurisdiction required for the Court to permit Zausner to conduct jurisdictional discovery. Instead, Zausner makes speculative arguments, suggesting jurisdictional discovery is necessary for it to make its *prima facie* showing of personal jurisdiction. (D.I. 217 at 3-6). As the Magistrate Judge explains, that is not the law in the Third Circuit. To be entitled to jurisdictional discovery, a plaintiff must make a "required threshold showing" by "present[ing] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003). I find, for the reasons articulated by the Magistrate Judge in his Report and Recommendation, Plaintiff has not done that here.

Therefore, Plaintiff's Second Objection is OVERRULED.

The Report & Recommendation is **ADOPTED**. The motion to dismiss (C.A. No. 20-1769, D.I. 42) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Claims against Individual

Defendants are **DISMISSED** for lack of personal jurisdiction. The objection to the denial of the motion for jurisdictional discovery (C.A. No. 20-1769, D.I. 45) is **OVERRULED**.

Entered this 25 day of March, 2022.

*Richard G. Andrews*
United States District Judge