IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC. and ATLANTIC VENTURES CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SAVENCIA, S.A. and ZAUSNER FOODS CORP., on behalf of itself and as successor in interest to ZNHC, INC., <br><br> Defendants. | Civil Action No. 19-731-GBW-CJB |

## MEMORANDUM ORDER

1. The Court, having reviewed Defendants Savencia, S.A. and Zausner Foods Corp.'s ("Defendants") motion seeking a determination that Plaintiffs ECB USA, Inc. ("ECB") and Atlantic Ventures Corp. ("Atlantic Ventures," and together with ECB, "Plaintiffs") have waived privilege as to any documents on the "Miami Server," ("Motion"), (D.I. 326), the briefing related thereto, (D.I. 326; D.I. 341; D.I. 349), and having heard argument on the Motion on February 28, 2023, hereby ORDERS that the Motion is DENIED without prejudice to renew.

2. In their briefing and at oral argument, Defendants' counsel seemed to suggest that this Motion was a "slam dunk" that could be quickly and easily resolved in their favor, because Plaintiffs intentionally (or via an inadvertent disclosure) waived privilege as to the contents of the Miami Server, in that: (1) the documents were located on a server belonging to Schratter Foods, Inc. ("SFI"), an entity that was an Atlantic Ventures subsidiary; (2) the server was transferred to the possession of a third party ("SFI's Assignee") after SFI was placed into a Florida insolvency proceeding; and (3) during this litigation, Plaintiffs facilitated Defendants' ability to review documents located on that server, without having first conducted a privilege

review of those very documents. (D.I. 326 at 1) In support, Defendants primarily relied on two cases in which courts found that a party voluntarily waived privilege as to documents held on a computer server. However, contrary to Defendants' suggestion, (D.I. 326 at 7), the circumstances here are not exactly like those in *Serviz, Inc. v. ServiceMaster Co., LLC*, C.A. No. N20C-03-070 PRW CCLD, 2021 WL 5768655 (Del. Super. Ct. Dec. 6, 2021). In *Serviz*, the plaintiff was found to have intentionally waived privilege where: (1) its documents at issue had been located on a server in the plaintiff's physical possession, which the plaintiff then sold to a third party; (2) thereafter, the plaintiff negotiated the further sale of that server to a different third party; and (3) plaintiff's counsel admitted that when plaintiff did all of this, it knew that the server likely contained the plaintiff's own privileged documents. *Serviz*, 2021 WL 5768655, at *1, *4. Nor—again contrary to Defendants' suggestion, (D.I. 326 at 8-9)—is this case on all fours with *In re Fontainebleau Las Vegas Contract Litig.*, No. 09-02106-MD, 2011 WL 65760 (S.D. Fla. Jan. 7, 2011). In *Fontainebleau*, a voluntary waiver of privilege was found as to documents located on three servers, wherein: (1) the waiving party owned and shared those servers with two other entities; (2) at some point, the waiving party physically possessed the server documents and then handed those documents over to third-party lenders that had previously subpoenaed those documents. *In re Fontainebleau*, 2011 WL 65760, at *1-3, *6.

      3.      Here, in contrast: (1) the documents at issue were originally located on a server owned by a third party (SFI), not Plaintiffs; (2) the documents were then transferred to another third party (SFI's Assignee) via an insolvency proceeding that SFI (not Plaintiffs) initiated; (3) SFI's Assignee made the documents accessible to Defendants (albeit via Plaintiffs' facilitation); and (4) at no point have Plaintiffs admitted that they knew—nor is it yet clear that they should have known—that the documents at issue likely contained privileged information when they

2

were made available to Defendants. (D.I. 326 at 2; D.I. 341 at 1-3, 8-9; D.I. 349 at 1-2; *see also* D.I. 341, ex. 1 at ¶ 13 (declaration from Plaintiffs' representative, who asserts that Plaintiffs were unaware that any of their privileged documents were on the Miami Server as of the date the insolvency proceeding was initiated)) Now, it may be that when the record is fully formed, cases like *Serviz* or *Fontainebleau*—even if they are not apples to apples with the instant case—can still help to show that Plaintiffs have not met their burden to demonstrate that they did not intentionally waive privilege here. But the Court's point is simply that such a conclusion is not crystal clear at this stage, in light of the current record.

    4.        Defendants may have a better argument that Plaintiffs made an inadvertent disclosure that constitutes a waiver of privilege as to the Miami Server documents. But under relevant law, when considering that issue, the Court must assess the applicability of a multi-factor test. For example, under Florida law, the factors that the Court must parse in order to determine whether a disclosure was inadvertent include: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interest of justice would be served by relieving a party of its error. *Nova Se. Univ., Inc. v. Jacobson*, 25 So.3d 82, 86 (Fla. Ct. App. 2009). Yet it is hard to see how the Court could engage in an analysis of at least the "extent of the disclosure" factor and the "overriding interests of justice" factor without having some sense of the nature of the documents on the Miami Server—and how many of those documents may be subject to a claim of privilege by Plaintiffs. Indeed, such details can often play a big role in a court's ultimate decision on the inadvertent disclosure issue. *See Ramkelawan v. Globus Med. Inc.*, Case No: 5:18-cv-100-Oc-JSM-PRL, 2019 WL 1763237,

3

at *3 (M.D. Fla. Apr. 22, 2019) (applying Florida law and concluding that there was no waiver due to inadvertent disclosure in part because "[t]he extent of the disclosure . . . weighs strongly in favor of Plaintiffs, as the disclosure consisted of a single 35-page document out of over 20,000 pages of documents that Plaintiffs produced"); *In re Murphy*, Case No.: 9:17-bk-07843-FMD, 2018 WL 11205932, at *3 (Bankr. M.D. Fla. Jan. 18, 2018) (concluding the same, in part because "[o]f the hundreds of documents, only seven e-mails were inadvertently disclosed"); *In re Fundamental Long Term Care, Inc.*, 515 B.R. 874, 882 (Bank. M.D. Fla. 2014) (concluding the same, in part because "the extent of the disclosure was minimal compared to the extent of the overall production").

       5.       Here, the Court simply does not have enough information to determine whether any inadvertent disclosure amounted to a waiver of privilege. Of the tens or hundreds of thousands of documents on the server (the "server documents"), (D.I. 326 at 4-5), so far as the Court is aware, there is only one as to which Plaintiffs currently believe they have a privilege claim. Moreover, the Court has been provided with almost no information of record about the contents of the server documents. That is, the Court knows little about: (1) the extent to which any of those documents are in fact documents of Plaintiffs (as opposed to SFI's documents); (2) whether additional server documents may be subject to a privilege claim by Plaintiffs; or (3) whether or to what extent any of the documents have any actual relevance to this case. (D.I. 341 at 7)

       6.       The Court understands that both Plaintiffs and Defendants have not yet finished reviewing those portions of the server documents that may have applicability to this case. The Court believes that both sides should be given a fair opportunity to conclude that review. That way, if further motion practice is warranted, the parties will have the ability to augment the

record as to the above-referenced concerns. Therefore, the parties shall be permitted 14 additional days from the date of this Order to review the contents of the Miami Server (and they may seek additional time via stipulation or motion). After this, to the extent either side believes that any further motion practice is required on the waiver issue, they may alert the Court by filing a one-page, single-spaced letter on the docket. The Court will thereafter set a further briefing schedule on any new forthcoming motion, as necessary.

Dated: March 7, 2023

                                                        *Christopher J. Burke*
                                                        Christopher J. Burke
                                                        UNITED STATES MAGISTRATE JUDGE