IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC. and ATLANTIC VENTURES CORP., ) ) ) Plaintiffs, ) ) v. ) ) SAVENCIA, S.A. and ZAUSNER FOODS ) CORP., on behalf of itself and as successor ) in interest to ZNHC, INC., ) ) Defendants. ) | Civil Action No. 19-731-GBW-CJB |

## MEMORANDUM ORDER

Pending before the Court in this action is Plaintiffs ECB USA, Inc. and Atlantic Ventures Corp.'s (collectively, "Plaintiffs") motion to exclude the opinions and testimony of Defendants Savencia, S.A. ("Savencia") and Zausner Foods Corp.'s ("Zausner," and collectively with Savencia, "Defendants") due diligence expert, Alan B. Lee ("Lee"), which are set out in Lee's March 17, 2023 expert report ("report"). (D.I. 444)[1] For the reasons set out below, the Court GRANTS the Motion.

**I.    BACKGROUND**

The Court will write here for the parties, and so it will forego a lengthy recitation of the facts. To the extent certain facts are relevant to resolution of the Motion, they will be set out in Section III.

---

[1] Lee also provided a separate rebuttal expert report regarding the opinions of Plaintiffs' expert Ricky Lee Antle; the Court does not understand those rebuttal opinions to be at issue as to the instant Motion. (D.I. 466 at 2, 20)

The Motion was filed on June 28, 2023. (D.I. 444) Briefing on the Motion was completed on August 16, 2023. (D.I. 521) The Court has been referred this case for all purposes through the case-dispositive motion deadline. (D.I. 118)

## II.    STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony, providing that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702's requirements have been examined in detail by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and have been said to embody "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).

With their Motion, Plaintiffs challenge the reliability and fit of Lee's testimony. But for reasons set out further below, herein the Court will need only to address the latter. The "fit" requirement "goes primarily to relevance[,]" as the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and have "a valid [] connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (internal quotation marks omitted); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The standard for fit is not a high one; it is met "when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an

2

issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citations omitted).

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)). Nonetheless, the burden is placed on the party offering expert testimony to show, by a preponderance of proof, that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).

**III.     DISCUSSION**

With their Motion, Plaintiffs make three different arguments as to why Lee's opinions and testimony should be excluded; one of those is that they are not relevant to this action. (D.I. 445 at 3) Below, the Court will explain why it agrees that Defendants have not met their burden to demonstrate the relevance of Lee's proposed testimony, such that the testimony should be excluded.

Lee is a certified public accountant ("CPA") and consultant. (D.I. 467, ex. 1 ("Lee Rep.") at ¶¶ 3-6) Defendants hired Lee to analyze the due diligence conducted by Plaintiffs in connection with Plaintiffs' purchase of Schratter Foods Inc. ("Schratter")—a transaction that is at the heart of this case—and to provide opinions related to that due diligence process. (*Id.* at ¶ 2) In this case, Plaintiffs allege that Defendants, *inter alia*, committed breach of contract and fraud regarding the purchase of Schratter.

In his report, Lee provides three main opinions:

- "Due Diligence is a tailored process that varies in scope based on the facts and circumstances of a specific transaction and is designed to identify and mitigate relevant risks to a prudent acquirer."

3

- "The Plaintiffs' due diligence of the Schratter acquisition, supported by multiple experienced, independent financial and legal advisors was appropriate and adequate for the circumstances."

- "The Plaintiffs completed the acquisition of Schratter after thoroughly evaluating the financial, business, and commercial risks identified during due diligence and either mitigated or accepted these risks when acquiring Schratter."

(*Id.* at 5 (emphasis omitted))

So how are Lee's opinions said to be relevant to the claims and/or defenses at play in this case? In their answering brief, Defendants include a section that purports to speak directly to this question: Section III of the brief, which is titled "Alan Lee's Opinions are Relevant[.]" (D.I. 466 at 12-15) At the beginning of that section, Defendants noted that in Plaintiffs' opening brief, Plaintiffs had assumed that the reason why Lee was retained was to provide evidence relevant to Plaintiffs' fraud claims. (*Id.* at 12-13) But Defendants responded by arguing that "Plaintiffs' contention that [] Lee's opinions have nothing to do with their *fraud* claims is a red herring." (*Id.* (emphasis in original)) Defendants asserted that this was so because "[a]t minimum, [Lee's] affirmative opinions are relevant to Plaintiffs' *contractual* claim for alleged breaches of numerous provisions of the [Stock Purchase Agreement, or 'SPA,' which facilitated Schratter's sale.]" (*Id.* at 13 (emphasis in original); *see also id.* at 1; D.I. 147 at ¶¶ 170-79); *25 Calhoun CMB, LLC v. Concord Park/Charleston, LLC*, Civil Action No. 2:19-cv-2537-RMG, 2021 WL 4077497, at *2 (D.S.C. Sept. 8, 2021) (concluding that a due diligence expert could provide relevant testimony as to a plaintiff/buyer's breach of contract claim).

But in what way are Lee's opinions said to be relevant to Plaintiffs' breach of contract claims? In their answering brief, Defendants answer this question by making reference to Plaintiffs' allegations that Defendants breached three particular portions of the SPA: Article

4

III.20, Article VI.1 and Article VI.2.  (D.I. 466 at 13)  Defendants explain that as to these allegations of breach, Plaintiffs have asserted that Defendants failed to provide certain "pieces of information [to Plaintiffs] during due diligence [preceding Schratter's sale], including the terms of [former Schratter President and Chief Executive Officer] Alain Voss'[] employment letters and the terms of a June 30, 2014 Share Purchase Agreement[ the 'June 30 SPA'.]" (*Id.*; *see also* D.I. 147 at ¶¶ 104, 106, 109, 173, 176; D.I. 185 at 28-30 (discussing why Plaintiffs pleaded a viable claim for breach of contract as to Articles VI.1(i) and VI.2))  Therefore, it seems clear that in Section III of Defendants' answering brief, Defendants were asserting that:  (1) the main or primary reason why Lee's opinions are relevant to this case is that they relate to certain of Plaintiffs' breach of contract claims, particularly those relating to Article III.20, Article VI.1 and Article VI.2; and (2) something about Lee's opinions is going to inform Defendants' defenses to these breach of contract claims.

But this all begged the further question: *exactly how* are Lee's opinions said to be relevant to Defendants' defenses in this regard?  Here, things started to get murky in Defendants' briefing.  Defendants did very little, beyond what the Court has summarized above, to explain the *how*.  (D.I. 466 at 13)  In attempting to figure out the answer, the Court has again reviewed Plaintiffs' allegations of breach regarding the Articles at issue.  But so far as the Court can surmise, the only one of those Articles (and the theories of breach related thereto) that could possibly implicate testimony about the due diligence process is Article VI.2.  (*See* D.I. 185 at 28-30 (summarizing the allegations of breach of contract as to these Articles))  Article VI.2 requires that Plaintiffs were to get "reasonable access to and the right to inspect all of the . . . books and records, contracts, agreements and other documents and data related to [Schratter.]"  (D.I. 272,

5

ex. 1 at Article VI.2)[2]  The Court has previously explained how it understands Plaintiffs to have alleged that Zausner breached this Article when it:  (1) failed to include certain information regarding Mr. Voss' true role and authority at Schratter in a virtual data room that was set up to allow Plaintiffs to perform due diligence as to Schratter's sale; and (2) failed to include the June 30 SPA in the data room.  (D.I. 185 at 30)  So it seems possible that a due diligence expert *could* be tasked with providing an opinion about why whatever amount of data was or was not disclosed in the data room on these subjects was perfectly "reasonable" for a transaction such as this one—and/or why it was "reasonable" that information about Mr. Voss' role or the June 30 SPA should or should not have been included in the data room.  Perhaps *those* types of opinions would actually speak to the Article VI.2 breach of contract theory.

      The problem for Defendants is that Lee's proffered opinions do not really address that subject matter.  Lee's report does not mention breach of contract claims, nor does it specifically address Defendants' disclosure (or lack thereof) of the details of Mr. Voss' role or of the June 30 SPA.  Instead, the meat of Lee's opinions are about how the due diligence Plaintiffs conducted "was appropriate and adequate for the circumstances" and how Plaintiffs purchased Schratter "after thoroughly evaluating the financial, business and commercial risks identified during due diligence[.]"  (Lee Rep. at 5; *id.* at ¶¶ 60-85; *see also* D.I. 466 at 5, 19)  More specifically, in his report, Lee is opining about *other* types of due diligence concerns—i.e., he is trying to demonstrate how:  (1) Plaintiffs hired lots of reputable financial and legal advisors to help them with due diligence; (2) those advisors actually helped Plaintiffs identify certain red flags and

---

[2]    In its July 28, 2021 Report and Recommendation, the Court concluded that Plaintiffs had sufficiently pleaded a breach of contract claim as to this theory of breach contract, (D.I. 185 at 30), so the Court is confident that this type of breach of contract claim is still in the case.

reduce the purchase price of Schratter; and (3) Plaintiffs ultimately performed adequate due diligence under the circumstances, and so they should not be heard to complain about a lack of due diligence disclosures after the fact. (Lee Rep. at ¶¶ 60-85)

So far as the Court can tell, only one paragraph in Lee's opinion—paragraph 68—explicitly touches on the subject of the data room in any detail. But even in that paragraph, Lee simply discusses—at a very high level—how Defendants put certain financial statements and Schratter Board documents in the data room, and how the parties' "[letter of intent regarding the sale] was not a guarantee that every document requested would necessarily be provided within the compressed due diligence window (nor does that usually happen)." (*Id*. at ¶ 68) Lee's opinions here in paragraph 68 do not speak to any of the particular documents or facts at issue regarding the Article VI.2 breach of contract theory. Nor do they seem intended to be used to do so. For these reasons, the Court cannot conclude that Defendants have made a sufficient showing that Lee's opinions or testimony are relevant to Plaintiffs' breach of contract claims. *Cf. CAP-XX, Ltd. v. Maxwell Techs. Inc.*, Civil Action No. 19-1733-CFC, 2023 WL 4420415, at *1-2 (D. Del. July 10, 2023) (excluding a damages expert's testimony on lack of "fit" grounds, where the expert did not sufficiently explain how his testimony was relevant to the damages issue in the case, which related to the plaintiff's U.S.-based sales activities).

The only other type of claims that the parties discuss in the briefing are Plaintiffs' fraud claims. But on that front too, Defendants did not sufficiently explain how Lee's opinions were relevant. In Section III of their answering brief—again, the place in the brief where the reader is supposed to learn how Mr. Lee's "[o]pinions are [r]elevant[,]" Defendants barely use the word "fraud." Moreover, it is not clear that Lee himself believes his opinions to be relevant to this subject; as Plaintiffs note, Lee stated in his deposition that his report "has nothing to do with

fraud[,]" "is not related to the determination of whether or not there was fraud in this matter" and "is solely focused on the diligence that the buyer performed." (D.I. 445, ex. H at 175; *see also* D.I. 445 at 4) And in their briefing, Defendants never clearly pointed to certain fraud allegations in the case and then explained why aspects of Lee's testimony actually speak to one or more elements of those claims (or would otherwise help the jury assess the claims). (D.I. 466 at 12-15)

The closest Defendants came to touching on this issue in Section III of their answering brief was when they stated that while due diligence "will not necessarily 'ferret out' fraud, it can identify red flags or raise questions that an inquiring buyer may follow up on, which occurred here." (*Id*. at 13 (citing Lee Rep. at ¶¶ 46, 60, 63, 75-85)) But Defendants fail to cogently explain how any of this type of due diligence work, or Plaintiffs' identification of any particular "red flags," relate to any of the elements of a fraud claim in Florida, or to any particular live allegations of fraud. How is this aspect of Lee's testimony meant to "aid the jury in determining an issue in the case" as to fraud? *Meadows*, 306 F. App'x at 790. Defendants never really say.[3] And so Defendants have failed to sufficiently set out how Lee's opinions and testimony are relevant to Plaintiffs' fraud claims too.[4] *Cf. Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 581 B.R. 370, 380-81 (Bankr. S.D.N.Y. 2017).

---

[3] The Court is not suggesting that a due diligence expert could *never* provide an opinion that would be relevant to a fraud claim. *See, e.g., Coquina Invs. v. Rothstein*, No. 10-60786-Civ., 2011 WL 4949191, at *10 (S.D. Fla. Oct. 18, 2011) (concluding that a due diligence expert's testimony could be relevant to rebut a plaintiff's fraudulent misrepresentation claim, where the expert opined that the plaintiff did not properly conduct due diligence regarding certain settlements at issue, and where the opinion could be relevant to whether the fraud at issue should have been obvious to the plaintiff). It is only saying that it was Defendants' job to *explain* what that relevance was here, and Defendants did not adequately do so.

[4] In arguing that Lee's testimony is not relevant, Plaintiffs also cited to a portion of Lee's deposition testimony; in it, Plaintiffs claimed that Lee took the position that "fraud is both

IV.     CONCLUSION

For the reasons set out above, the Court hereby ORDERS that Plaintiffs' Motion is GRANTED.

Dated:  January 10, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

permissible and ethical" because Lee answered "Yes, I do" to the question "Do you think it is ethical to lie to a buyer during the due diligence process prior to closing?" (D.I. 445 at 17 (emphasis and citation omitted))  This assertion led the parties, as they are wont to do, (*see* D.I. 532), to spend pages of briefing accusing each other of wrongful or deceptive conduct. Defendants, for example, pointed out that Plaintiffs had not disclosed to the Court that in the very next page of his deposition transcript, Lee explained that he had misheard the question at issue, and that he had instead thought Plaintiffs' counsel had asked him whether it was "unethical" to lie to a buyer during due diligence. (D.I. 466 at 6-8 (citing D.I. 467, ex. 2 at 38))  And yes, of course Plaintiffs should have pointed this out to the Court in their opening brief, for sake of completeness and full disclosure (but they did not).  And Plaintiffs then go on to point out that a few pages later in his deposition transcript, Lee *again* appeared to testify that he did not think it would be unethical for a seller to provide false information to a buyer. (D.I. 521 at 2-3 (citing *id.*, ex. 1 at 40-41))  And yes, of course Defendants should have pointed this out to the Court in their answering brief, for sake of completeness and full disclosure (but they did not). Left unsaid by the parties is how any of this deposition testimony is particularly relevant to resolving the *Daubert* motion at issue (in the Court's view, it is not).

9