IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC. and ATLANTIC VENTURES CORP., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SAVENCIA, S.A. and ZAUSNER FOODS )<br>CORP., on behalf of itself and as successor )<br>in interest to ZHNC, INC., )<br>)<br>Defendants. ) | Civil Action No. 19-731-GBW-CJB |

## MEMORANDUM ORDER

Pending before the Court in this action is Defendants Savencia, S.A. ("Savencia") and Zausner Foods Corp.'s ("Zausner," and collectively with Savencia, "Defendants") motion to exclude the opinions and testimony of Plaintiffs ECB USA, Inc. and Atlantic Ventures Corp.'s (collectively, "Plaintiffs") expert Ricky Lee Antle ("Antle"), which are set out in Antle's March 16, 2023 report (the "report"). (D.I. 425) For the reasons set out below, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion.

**I.   BACKGROUND**

The Court will write here for the parties, and so it will forego a lengthy upfront recitation of the facts. To the extent certain facts are relevant to resolution of the Motion, they will be set out in Section III.

The Motion was filed on June 28, 2023. (*Id*.) Briefing on the Motion was completed on August 16, 2023. (D.I. 506) The Court has been referred this case for all purposes through the case-dispositive motion deadline. (D.I. 118)

**II.   STANDARD OF REVIEW**

In its January 10, 2024 and March 22, 2024 Memorandum Orders, the Court set out certain legal standards that govern motions like this one, brought pursuant to Federal Rule of Evidence 702. (D.I. 554 at 2-3) Those standards are incorporated by reference here, and the Court will follow them in deciding the instant Motion. To the extent that other legal principles relating to *Daubert* motions are relevant, the Court will address them below.

**III.   DISCUSSION**

Antle is a professor of accounting at the Yale School of Management ("YSOM"); he teaches at YSOM, as well as at Yale Law School and at Yale College. (D.I. 427, ex. B ("Antle Rep.") at 1) Antle teaches courses on "accounting practices, rules and conventions, and common uses of financial statements in various investment and valuation contexts." (*Id.*) Plaintiffs hired Antle to provide his opinions on: (1) damages incurred by Plaintiffs; (2) why "financial statements presented in conformity with [U.S. Generally Accepted Accounting Principles, or "GAAP"] and [International Financial Reporting Standards, or "IFRS"] or other applicable accounting standards" are important to a purchaser of a business; and (3) whether there were deficiencies in the 2013 and 2014 financial statements (the "financial statements") of third-party Schratter Foods Inc. ("Schratter"), and, if so, what were the nature and extent of such deficiencies. (*Id.*) In this case, Plaintiffs allege that Defendants, *inter alia*, committed breach of contract and fraud regarding their sale of Schratter to Plaintiffs.

In his report, Antle provides a few opinions that will be at issue below. Relevant portions of those opinions include the following:

- "I am uneasy about the fact that there were no disclosures [in the financial statements] about Schratter's ability to continue to operate as a going concern."

- "I was surprised that the financial statements did not make any mention of a possible impairment of goodwill. . . . Given the

> financial condition of Schratter in 2014 and its recent financial performance, I would have expected to see some disclosures about an impairment test for goodwill and why no impairment was recorded."

- "[F]or the out-of-pocket damages plus interest, I estimate they are $40.3 million, and in no event less than $39.2 million."

- "Damages from the forfeiture of a 10% discount on purchases from entities formerly affiliated with Schratter" equal $23.758 million, assuming 15.15% growth, and $22.555 million, assuming 7.02% growth.

(*Id*. at 2-3, 7-8, 11-12)

In their briefing, Defendants break down their arguments for exclusion into two overarching categories: (1) those relating to Antle's opinions on Schratter's financial statements; and (2) those relating to Antle's opinions as to damages estimates. The Court will take up these categories in turn.

### A. Antle's Opinions Regarding Schratter's Financial Statements

Defendants raise three issues with Antle's opinions on Schratter's financial statements:[1] (1) Antle is not qualified to render them; (2) they are too vague to be helpful to a jury; and (3) they are speculative and unreliable. (D.I. 426 at 10-12) The Court takes up each issue below.

---

[1] It appears that Antle's opinions about the financial statements are related to certain of Plaintiffs' claims that Defendants breached their sale contract with Plaintiffs by failing to accurately prepare those statements, or that Defendants committed fraud relating to their preparation of such statements. (D.I. 185 at 23-25, 36-37; *see also id*. at 42-49) The Court previously found that Plaintiffs had not plausibly pleaded these types of claims. (*Id.*) And so, for reasons the Court has previously expressed, it does not believe that these claims are properly still in this case. (D.I. 551 at 9-10 n.14) If the District Judge agrees, then this would be a basis to exclude Antle's opinions regarding the financial statements (i.e., on relevance, or "fit" grounds). That said, the Court recognizes that Plaintiffs have objected to the Court's prior decision in this regard, (*see* D.I. 556), and that Defendants did not raise this issue in bringing the instant Motion. In light of this, herein the Court will address only those arguments for exclusion that Defendants made in their briefing, and will assess the Motion by assuming *arguendo* that Plaintiffs' objections on this ground will be successful (while pointing out how the outcome would differ if they were not).

### 1. Is Antle Qualified to Render Opinions on Schratter's Financial Statements?

Defendants first argue that Antle is unqualified to render opinions on Schratter's financial statements because he is not a CPA, has not practiced as an accountant, and has no audit experience. (*Id*. at 10)  The United States Court of Appeals for the Third Circuit has explained that pursuant to Rule 702, an expert witness must have sufficient qualifications to provide the expert testimony at issue, and that an expert is qualified if he or she "possess[es] specialized expertise." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  The Third Circuit interprets the "qualifications" requirement liberally and has observed that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*"); *see also Schneider*, 320 F.3d at 404.  The basis of this specialized knowledge may be "practical experience as well as academic training and credentials." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (internal quotation marks and citation omitted).  At a minimum, however, "a proffered expert witness . . . must possess skill or knowledge greater than the average layman[.]" *Id.* (internal quotation marks and citation omitted).

The Court concludes that Antle is qualified to render an opinion regarding Schratter's financial statements.  Antle has been a professor of accounting since 1985 at YSOM, a distinguished graduate institution. (Antle Rep. at 1)  In that time, he has taught a variety of accounting courses, which are "aimed at giving [his students] a solid foundation to understand[, *inter alia*,] common uses of financial statements[.]" (*Id.*)  He has also co-authored two editions of a textbook titled *Financial Accounting*, has served as a consultant for the American Institute of Certified Public Accountants and has advised large accounting firms on issues involving the scope of their practices. (*Id.*)  He clearly possesses skill or knowledge greater than the average

4

layman with regard to accounting practices, including as to how those practices should be utilized in preparing a company's financial statements. And thus his experience surely qualifies him to opine on general accounting standards and purported deficiencies in Schratter's financial statements.[2]

Moreover, contrary to what Defendants suggest, the Court is aware of no precedent stating that in order for Antle to be qualified to testify about the importance or adequacy of financial statements, he must be a CPA, a practicing accountant or someone who has actually performed audits on a company's finances. *See Natchez Reg'l Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 577-78 (S.D. Miss. 2012) (rejecting an argument that the plaintiff's proposed expert witness on accounting matters (including on whether certain financial statements were prepared in accordance with GAAP) was unqualified, in light of the witness' "distinguished accounting background[,]" where the defendants argued that the witness lacked qualifications because he did not have an active CPA license and was not certified as a forensic accountant); *see also CrossFit Inc. v. Martin,* No. CV-14-02277-PHX-JJT, 2017 WL 3308989, at *3 (D. Ariz. Aug. 3, 2017) (concluding that a witness was qualified to offer expert opinions on damages, to estimate revenues and to project future earnings, even though he was "not a certified public accountant [], does not have a degree in accounting, and by his own admission, is not qualified to create income statements for the relevant time period in 2015[,]" because he otherwise had relevant experience to bring to bear on the matter); *Orthoflex, Inc. v. ThermoTek,*

---

[2] In their briefing, Plaintiffs also cited to additional aspects of Antle's resume in support of their argument about his qualifications; Antle's resume appears to have been a part of some sort of appendix to Antle's report. (D.I. 464 at 5 (citing *id.*, ex. A at 13-17)) Unfortunately, Plaintiffs did not include Antle's resume (or any other part of this appendix) in the relevant exhibit that they provided to the Court. (*See id.*, ex. A (ending on page 12, the last page of Antle's written report)) And so the Court cannot rely on them here.

*Inc.*, 986 F. Supp. 2d 776, 796 (N.D. Tex. 2013). And Defendants cited to no such authority in their briefing. (D.I. 426 at 10)[3]

### 2. Would Antle's Opinions Be Helpful to a Jury?

Defendants' next argument is that Antle's testimony regarding Schratter's financial statements should be excluded because they would not be helpful to the jury. (*Id*. at 10-11) In that regard, Rule 702 requires that the proffered expert witness' specialized knowledge must more likely than not "help the trier of fact to understand the evidence or to determine a fact in issue[,]" Fed. R. Evid. 702(a), which goes primarily to relevance, *see In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). The standard for relevance, or "fit," is not a high one; it is met "when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citations omitted).

More specifically, here Defendants are addressing the portions of Antle's report where he referenced "two immediate areas of concern" regarding Schratter's financial statements "that are not meant to be dispositive." (Antle Rep. at 10) As to these, Antle includes the following questions in the report:

- "First, given the declining reported performance of the firm and its dependence on credit from its parent, why was there no disclosures about the going concern assumption in the financial statements or the audit report?"; and

- "Second, were impairment tests performed on goodwill and, if so, how did they not indicate an impairment?"

---

[3] Of course, Defendants "are free to question [Antle] about his qualifications, and may argue that they are not as good as others, but their challenges go to the weight that might be accorded to his opinions and not to their admissibility." *Otsuka Pharm. Co. v. Zenara Pharma Priv. Ltd.*, C.A. No. 19-1938-LPS, 2022 WL 4365744, at *2 (D. Del. Sept. 21, 2022) (internal citation omitted).

(D.I. 426 at 4-5, 9 (quoting Antle Rep. at 10))  Antle goes on to write that he is "uneasy" about the fact that there were no disclosures about Schratter's ability to continue to operate as a going concern, and that he "was surprised" that the financial statements did not make any mention of a possible impairment of goodwill.  (*Id*. (quoting Antle Rep. at 11))  Defendants argue that Antle's statements above would not be helpful to a jury because in them, Antle does not actually opine that there "*should have been* a disclosure about [Schratter's] ability to operate as a going concern (and, if so, what that disclosure should have said), or that there was *any actual* impairment of goodwill (and, if so, the extent of that impairment)."  (*Id*. at 9-10 (emphasis in original))

       The Court acknowledges that, having read a lot of expert reports, Antle's language here does seem unusually passive.  One might typically expect an expert to use more definitive or damning language in assessing the actions of the other side (e.g., instead of saying that he or she was "uneasy" or "surprised" about the lack of particular content in a financial statement, an expert might more typically assert that the absence of the content "amounts to a clear violation" of a particular standard or principle).  But so far as the Court is aware, there is no rule that says that an expert's view on a subject needs to be rendered in *utterly damning* or *bombastic* language, or even that it needs to amount to a *fully dispositive conclusion* on a matter.  (D.I. 464 at 8-9); *see also Kumho Tire Co. v. Camichael*, 526 U.S. 137, 148 (1999) (noting that, pursuant to Rule 702, an expert can provide, *inter alia*, "specialized observations"); Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules (noting that the Rule "encourage[s] the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference").  And even though it is expressed in somewhat polite wording (e.g., "areas of concern"), Antle's ultimate viewpoint seems clear enough:  he thinks that the absence of this

7

material in the relevant financial statements is potentially problematic, and that this, in turn, could bolster Plaintiffs' case and hurt Defendants' case.

Lastly, Defendants suggest that these lack-of-disclosure-related opinions should be excluded because: (1) at his deposition, Antle referred to these as "areas of concern" but noted that "whether they were actually defects in the statements would require further investigation[,]" such as via a "reaudit" or "examin[ing] the work papers of the auditors"; and (2) Antle did not actually perform a reaudit or examine any auditor work papers. (D.I. 427, ex. A at 65-66 (*cited in* D.I. 426 at 10-11); Antle Rep. at 10)[4] Yet the Court is not convinced that Antle's failure to take these further steps means that his opinions at issue would necessarily be entirely unhelpful to a jury. One expert is not required to provide the entirety of a party's evidence on a subject in order for that expert's testimony to be helpful to a factfinder. Put differently, it seems very possible that: (1) Antle could (by way of provision of legitimate expert opinion) raise "concern[s]" about particular issues; and yet (2) in order for Plaintiffs to actually prevail on its claims as to these issues, they might need to provide *additional* evidence demonstrating that the subject matter of Antle's "concerns" actually leads to liability or an entitlement to damages. The fact that Antle might provide evidence going to the first of these steps and not the second does not mean that the first step is of absolutely no help to a juror.

### 3. Are Antle's Opinions Speculative and Unreliable?

Defendants next argue that Antle's opinions about the financial statements should be excluded because they are speculative and thus "completely unreliable." (D.I. 426 at 11) On that front, Rule 702 mandates that the relevant expert testimony "must be supported by

---

[4] Although Defendants made arguments about these deposition statements in their opening brief, Plaintiffs failed to address the specific statements at all in their answering brief. (*See* D.I. 506 at 3)

appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Schneider*, 320 F.3d at 404. Such testimony should amount to "more than subjective belief or unsupported speculation[,]" *Daubert*, 509 U.S. at 590, and a court's focus in examining this factor must be on "principles and methodology" rather than on the expert's conclusions, *Daddio v. Nemours Found.*, 399 F. App'x 711, 713 (3d Cir. 2010) (internal quotation marks and citation omitted).

More specifically, Defendants challenge as unreliable Antle's opinions that he had "concern" about Schratter's financial statements. Defendants assert that the opinions are unreliable for three reasons. Below, the Court will list each of the reasons given, and explain why it does not think they demonstrate that Antle's opinions should be excluded on this ground:[5]

- Defendants first note that in support of his opinion that additional "going concern" disclosures should have been included, Antle relied in part on a September 2014 e-mail by Savencia director Thomas Swartele. (D.I. 426 at 11 (citing Antle Rep. at 11)) In the e-mail, Swartele wrote that there are "documents/strategic analysis which show this business [i.e., Schratter] is in bankruptcy." (*Id.* (citing Antle Rep. at 11)) Without further explanation, Defendants suggest that Antle's reliance on this e-mail is improper because it is a "single e[-]mail" and it was "dated five months before [Schratter] released its 2014 audited financial statements." (*Id.*) The Court does not see what is wrong with Antle's reliance on this fact. It is a fact that, to Antle, suggests that Schratter may have been in trouble as a viable business as of 2014 or earlier. It seems perfectly reasonable for Antle to cite to this fact in order to bolster his opinion.

- Defendants next note that in support of his view about the lack of going concern disclosures, Antle also relied on an observation that in 2014, over $25 million of debt that Schratter owed to its parent (ZNHC, Inc.) was converted into

---

[5] Plaintiffs' response as to this argument from Defendants was unfortunately unhelpful, in that it did not speak directly to any of the specific issues raised by Defendants. (D.I. 464 at 9-10; *see also* D.I. 506 at 4 (Defendants noting this)) That said, for the reasons set out herein, the record itself appears to provide a clear enough basis to permit the testimony.

9

    contributed capital. (Antle Rep. at 11 (*cited in* D.I. 426 at 12)) Antle concludes that these "loans strongly suggest that Schratter was crucially dependent on its parent for its financial survival; i.e., there existed substantial doubt that Schratter was not operating as a going concern on its own." (*Id.*) Defendants criticize Antle's suggestion that this fact supports the need for further going concern disclosures, and they note that this conversion of debt to equity was disclosed in the relevant financial statements. (D.I. 426 at 12) But Antle's point is not that these loans were not disclosed, it is that Defendants did not provide sufficient *explanation* for the reasons behind the loans (which might have shed more light on whether Schratter was a viable going concern). Again, the Court does not see what is problematic about Antle's methodology here.

- Lastly, as to Antle's opinion that he was "surprised" that the financial statements did not explain why there was an impairment of goodwill or discuss why no such impairment was recorded, (Antle Rep. at 11-12), Defendants criticize this opinion as "vague and detached from reality, rendering it unreliable[,]" (D.I. 426 at 12). Defendants note that in his deposition, Antle was shown evidence that an amount relating to goodwill was listed in the 2013 and 2014 financial statements, and that this entry was in fact written down (or "impaired") in those years. (D.I. 427, ex. A at 81-82 (*cited in* D.I. 426 at 12)) But as Defendants also note, Antle clarified in his deposition that his concern was about the failure of Defendants to provide a written *explanation* for the write-downs. (*Id.* at 82 (*cited in* D.I. 426 at 12)) The Court does not see how Defendants have demonstrated this was not a valid concern for Antle to have, or why it renders his opinion unreliable.

    **4.**    **Conclusion**

For the above reasons, the Court declines to grant Defendants' Motion as it relates to Antle's opinions regarding the financial statements.

    **B.**    **Reliability of Antle's Damages Opinions**

Defendants' other challenges are to Antle's damages opinions, which they argue are "based on pure speculation" and thus unreliable. (D.I. 426 at 13-20) Here, Defendants break their arguments up into two groupings: Antle's opinions regarding the value of lost discount

10

damages and Antle's opinions regarding out-of-pocket damages. (*Id.*) The Court will address the arguments as to each type of damages in turn below.

### 1. Value of Lost Discount Damages

When it comes to Antle's opinions on the value of lost discount damages, Defendants propose five different reasons why Antle's testimony should be excluded. (*Id.* at 13-18) The Court need address only one here.

This is Defendants' argument that as part of his lost discount damages opinion, Antle "blindly adopted" projections from a 2014 business plan (the "Business Plan") prepared by Alain Voss ("Voss"), the former President and Chief Executive Officer of Schratter, without independently verifying the "reliability or realism" of those projections. This, Defendants say, renders Antle's "damages estimates wholly speculative and unreliable." (*Id.* at 14, 16) For the reasons set out below, the Court agrees.

As an initial matter, the Court steps back to provide some context regarding these "value of lost discount" damages, and what they are about. At the time of its sale to Plaintiffs in 2014, Schratter was allegedly entitled to obtain a 10% price discount on purchases from its former dairy affiliates. (Antle Rep. at 3; *see also* D.I. 147 at ¶¶ 34, 178) One of Plaintiffs' allegations is that Defendants later wrongfully terminated this agreement, breaching their sale contract with Plaintiffs, and costing Plaintiffs/Schratter the value of these discounts thereafter. (Antle Rep. at 3-4; *see also* D.I. 147 at ¶¶ 34, 148-59, 178)[6] In estimating the value of these lost discounts, Antle relied on the Business Plan prepared by Voss. This plan provided, *inter alia*, expectations

---

[6] This type of breach of contract claim is another claim that the Court previously recommended be dismissed, (D.I. 185 at 31-32), and thus one the Court believes should not be part of this case anymore, *see infra* n.1. However, for the same reasons previously stated, *see id.*, the Court will herein assess the Motion as to this claim solely by assessing the arguments Defendants make in their briefing.

11

for the net sales of ANCO, Schratter's largest division, for the years 2015-2019 as well as other revenue information for Schratter; Antle used this information to project out the amount of Schratter's expected sales (and, relatedly, its lost relevant discounts) through 2024. (Antle Rep. at 4; D.I. 426 at 6 & n.2) Ultimately, Antle utilized two calculations for the value of lost discount damages that were derived from the Business Plan: one based on a 15.15% predicted growth rate, and one based on a 7.02% predicted growth rate. (Antle Rep. at 6; D.I. 426 at 6)[7]

In *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), the Third Circuit explained that while an expert may rely on a company's business plan or similar documents in order to make estimates about the company's future financial performance, the expert would not have "good grounds" to do so if he did not "know[] the circumstances under which such projections were created or the assumptions on which they were based." 696 F.3d at 292. For the expert's methodology to amount to "good grounds," the *ZF Meritor* Court indicated that the expert "must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.*; *see also Allscripts Healthcare, LLC v. Andor Health, LLC*, Civil Action No. 21-704-MAK, 2022 WL 3021560, at *16 (D. Del. July 29, 2022) (same, citing *ZF Meritor*); *Shire Viropharma Inc. v. CSL Behring LLC*, Civil Action No. 17-414 CONSOLIDATED, 2021 WL 1227097, at *20 (D. Del. Mar. 31, 2021) ("In order to rely on secondary sources, the expert must demonstrate that (1) he or she has conducted some sort of

---

[7] The 15.15% rate was drawn from a portion of the Business Plan that estimated revenues for Schratter growing by that amount between 2014 and 2015. (Antle Rep. at 6) Antle noted that one could consider this 15.15% rate to be "overly optimistic[,]" and so he alternatively used the 7.02% growth rate, which was the "rate of growth in ANCO projected sale[s] in 2015[.]" (*Id.*) Defendants assert that Antle's use of the 7.02% figure in his report was a mistake, in that Antle mistyped certain figures from the Business Plan in order to get that number; Defendants state that in truth, Antle actually meant to use a 7.5% figure. (D.I. 426 at 6 n.2; D.I. 427, ex. A at 56) The difference here is immaterial for our purposes, and so the Court will simply refer to the rate at issue as 7.02%. (D.I. 426 at 6 n.2)

12

independent investigation or verification to ensure the data is both accurate and helpful to the court, and (2) the investigation is sufficiently thorough such that the expert has gained a working familiarity with the borrowed data.").

Here, while Antle was aware that the Business Plan at issue was prepared by Voss, the record is clear that he conducted absolutely no investigation to verify that the projected growth rates drawn from that plan were reliable. During his deposition, Antle confirmed that: (1) his only basis for concluding that the projected growth rates at issue were realistic was that he was "relying on the [B]usiness [P]lan[,]" as he had no personal experience with the relevant business area (i.e., the dairy or cheese distribution business); and (2) he did not "do anything" to "pressure test the assumption of [the] growth" rates, such as by looking at market trends or competitor trends or by speaking to relevant witnesses with knowledge of the Business Plan. (D.I. 427, ex. A at 23, 28, 57-58, 90-91) In such circumstances, Antle's opinions regarding value of lost discount damages, which are based on these projected growth rates, should be excluded on lack-of-reliability grounds. *See ZF Meritor, LLC* 696 F.3d at 293 (affirming the district court's exclusion of an expert's testimony on lack-of-reliability grounds, where although the expert was generally aware of the circumstances under which the internal business projections at issue were created and the purposes for which they were used, he "did not know who initially calculated" the figures at issue and did not know the "methodology used to create the [projections] or the assumptions on which [the] price and volume estimates [at issue] were based").[8]

---

[8] *See also MOSAID Techs. Inc. v. LSI Corp.*, Civil Action No. 10-192-RGA, 2014 WL 807877, at *3 (D. Del. Feb. 28, 2014) (excluding an expert's testimony as to lost profits and the cost of capital, where those estimates were drawn entirely from a "Final Business Case" document provided by his client, in part because the expert had "no personal knowledge of the assumptions that were made or the qualifications of those persons in charge of making the assumptions[ and] has provided no support for the accuracy of the statements and figures contained in the [document] or otherwise 'demonstrate[d] why he believed the estimates

### 2. Out-of-Pocket Damages

Defendants also argue that Antle's out-of-pocket damages estimates are unreliable. (D.I. 426 at 18-20) They make three primary arguments in this regard. First, Defendants assert that Antle incorrectly includes as damages amounts of money that Plaintiffs did not actually pay out-of-pocket (and that instead were paid by non-Plaintiffs, like Voss Enterprises, Inc., G.I.E. C2B and Schratter). (*Id*. at 19) Second, they argue that Antle fails to consider that some of the monies Plaintiffs count as damages were already recovered by Plaintiffs or by related parties. (*Id*. at 20) And third, they assert that Antle's approach to calculating pre-judgement interest for certain payments was flawed, in that the calculations that Antle used were not sufficiently connected to the dates of the payments. (*Id*.)

The briefing on these issues was not good. (D.I. 426 at 18-20; D.I. 464 at 16-18; D.I. 506 at 9-10) But in the Court's view, Defendants' arguments here should not result in exclusion of the relevant testimony. For one thing, to a great degree, the arguments are premised on the idea that the Court will first understand that certain "facts" that Defendants reference are indisputably correct. But Defendants cite to almost no record evidence that would actually demonstrate to the Court *how or why* their assertions are unequivocally so. (D.I. 426 at 7-8, 19-20) Additionally, to a great degree, these arguments appear to reflect legal and/or factual disputes between the parties as to how certain alleged damages should or should not be calculated. This is not a basis for exclusion under Rule 702. (D.I. 464 at 16-18); *see also Shure Inc. v. ClearOne, Inc.*, Civil

---

[therein] were reliable'") (quoting *ZF Meritor*, 696 F.3d at 292); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l Inc*., 350 F. Supp. 2d 582, 590 (D. Del. 2004) (excluding an expert's damages estimates that were based upon data and projections in a third party advertising company's marketing plan, where the expert's deposition testimony revealed that "he did not know what he was basing his testimony on" as he "simply adopted the [] marketing plan without reviewing its underpinnings").

Action No. 19-1343-RGA-CJB, 2021 WL 7209740, at *4 (D. Del. Oct. 5, 2021); *Shire Viropharma Inc.*, 2021 WL 1227097, at *26.

For the foregoing reasons, the Court will not exclude Antle's out-of-pocket damages estimates.

## IV.   CONCLUSION

For the reasons set out above, the Court hereby ORDERS that Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Motion is GRANTED to the extent it seeks exclusion of Antle's opinions regarding value of lost discount damages, and is otherwise DENIED.

Dated: June 10, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

15