IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ECB USA, INC., et al.,

              Plaintiffs,

    v.

SAVENCIA, S.A. et al.,

              Defendants.

C. A. No. 19-cv-731-GBW-CJB

Thomas G. Macauley, MACAULEY LLC, Wilmington, DE; Stephen G. Harvey, STEVE HARVEY LLC, Philadelphia, PA; Joel S. Magolnick, John E. Kirkpatrick, MARKO & MAGOLNICK P.A., Miami, FL

    *Counsel for Plaintiffs*

David W. Marston Jr., Jody C. Barillare, Brian Morris, MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Troy S. Brown, Margot G. Bloom, Su Jin Kim, MORGAN LEWIS & BOCKIUS LLP, Philadelphia, PA; Michael J. Ableson, MORGAN LEWIS & BOCKIUS LLP, New York, NY

    *Counsel for Defendants*

## **MEMORANDUM OPINION**

July 11, 2024
Wilmington, Delaware

/s/ *signature*

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court are Plaintiffs ECB USA, Inc., Atlantic Ventures Corp., and G.I.E. C2B's ("Plaintiffs") and Defendants Savencia S.A., Zausner Foods Corp., Alain Voss, and others ("Defendants") Objections to Judge Burke's Orders and Reports and Recommendations. *See* D.I. 579.

## I. LEGAL STANDARD

The Court reviews a Magistrate Judge's findings of fact for clear error and reviews a Magistrate Judge's legal conclusions *de novo*. 28 U.S.C. § 636(b)(1)(A); *Cornell Univ. v. Illumina, Inc.*, 2017 WL 89165, at *8 (D. Del. Jan. 10, 2017). The Court reviews discretionary decisions for abuse of discretion. *Quantum Loyalty Sys. Inc. v. TPG Rewards Inc.*, 2012 WL 1134779, at *1 (D. Del. Apr. 4, 2012). "This deferential standard of review is especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Id.* (internal citations omitted) (citing *Cooper Hospital/University Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J.1998)).

## II. DISCUSSION

### A. Plaintiffs' Objections to Judge Burke's Order on Clawbacks.

Plaintiffs object to Judge Burke's Order finding that Plaintiffs waived their right to challenge Defendants' assertion of privilege with respect to certain clawed back documents by failing to abide by the requirements of the Protective Order. D.I. 320. The Court has reviewed Judge Burke's Order (D.I. 298) (the "Clawback Order"), Plaintiffs' Objections (D.I. 320), and

Defendants' Response (D.I. 329). Because this objection involves the construction of the parties' Protective Order, the Court considers whether Judge Burke's Order is "contrary to law."

The Protective Order that was entered in this action includes a clause that allows a party to "clawback" inadvertently produced privileged documents and sets up a procedure for doing so (the "Clawback Clause"). The parties dispute whether the Protective Order requires a party who has received a clawback notice to challenge that clawback notice within five (5) days if it seeks to contest the assertion of privilege.

For the reasons stated by Judge Burke in the Clawback Order, the Court agrees with Defendants that the proper construction of the Clawback Clause requires a party who seeks to challenge a clawback notice to do so within five (5) days of its receipt of the clawback notice. D.I. 298. Thus, the Court finds that the Clawback Order was not "contrary to law." Accordingly, the Court, ADOPTS Judge Burke's Clawback Order (D.I. 298), and OVERRULES Plaintiffs' Objections.

### B. Plaintiffs' Objections to Judge Burke's Order on Deduplication.

Plaintiffs object to Judge Burke's Order that granted Defendants' request for a supplemental document production by Plaintiffs with respect to certain documents that Defendants contend were not properly de-duplicated and are missing custodian-related and date-related metadata. The Court has reviewed Judge Burke's Order (D.I. 307) (the "Deduplication Order"), Plaintiffs' Objections (D.I. 324), and Defendants' Response (D.I. 344). Because this objection involves the construction of the parties' Protective Order, the Court considers whether Judge Burke's Order is "contrary to law."

3

The parties dispute whether the Protective Order requires a party producing ESI to deduplicate its production, and whether the Protective Order requires a party that produces a deduplicated production to include certain metadata fields. Judge Burke agreed with Defendants that Plaintiffs' document production was insufficient. The Court finds that the Deduplication Order was not "contrary to law."

Section VIII(B)(1) of the Protective Order requires the parties to produce deduplicated documents. *See* Protective Order, § VIII(B)(1) ("Email and Non-Email: the Parties agree to search for and produce *unique*, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.") (emphasis added). Duplicate documents are not "unique." *Id.*

The Court also finds that Plaintiffs' production was deficient for failure to produce documents that included the necessary fields under the Protective Order. Section III of the Protective Order requires the parties to produce documents "with a delimited, database load file that contains the metadata fields listed in Appendix 1." Protective Order, §III. Appendix 1 indicates that the parties should produce documents that contain fields for the custodian, the secondary (duplicate) custodian, and the date. *Id.*, Appx. 1. Plaintiffs concede that its deduplicated production "no longer included the fields 'Custodian,' and, in some instances, 'date.'" D.I. 324. Considering that Plaintiffs' *entire* production lacked the requisite "custodian" field, the Court is not convinced that Plaintiffs' production is the type of production that Section VII(E) contemplates supplementing only if such a field "become[s] relevant." Protective Order, §VII(E). Accordingly, the Court finds that Judge Burke properly ordered the parties to meet and confer to determine an appropriate procedure for Plaintiffs to supplement its deficient

4

production. Thus, the Court ADOPTS Judge Burke's Order on Deduplication and OVERRULES Plaintiffs' Objections.

### C. Plaintiffs' Objections to Judge Burke's Order on Certain of Plaintiffs' Discovery Disputes

Plaintiffs object to Judge Burke's Order denying Plaintiffs' discovery requests for (1) certain emails between alleged co-conspirators Alex Bongrain (Savencia's Chairman) and Alain Voss (the president and CEO of SFI), and (2) certain documents in the possession of Defendants' subsidiaries or affiliates. The Court has reviewed Judge Burke's Order (D.I. 353) (the "Discovery Order"), Plaintiffs' Objections (D.I. 368), and Defendants' Response (D.I. 374). The Discovery Order denied The Court addresses each in turn.

The Court reviews Judge Burke's denial of Plaintiffs' request for production of the emails between alleged co-conspirators Alex Bongrain (Savencia's Chairman) and Alain Voss for an abuse of discretion. Judge Burke did not abuse his discretion in denying Plaintiffs' request for production. Plaintiffs sought "[a]ll Documents evidencing communications between Alex Bongrain and Alain Voss, VEI, Bertrand Proust, ECB-USA, and/or Atlantic Ventures" for a four-year period. Judge Burke correctly found that Plaintiffs' request was overly broad because it was not limited to a specific, relevant topic. D.I. 353. Further, to the extent that Plaintiffs' request did seek relevant, non-privileged information, Defendants contend that they have produced that information. D.I. 374 at 6. ("Defendants [] advised that they searched Mr. Bongrain's email communications and produced the documents responsive to Plaintiffs' requests that pertain to the claims and defenses in the case.") Accordingly, the Court ADOPTS Judge Burke's Order denying Plaintiffs' request for production of these emails.

With respect to Plaintiffs' objections to Judge Burke's Order denying Plaintiffs' request for production of certain documents in the possession of Defendants' subsidiaries or affiliates (the "Subsidiaries' Documents"), the Court ADOPTS Judge Burke's Order. Judge Burke denied Plaintiffs' request for production of the Subsidiaries' Documents, after concluding that Plaintiffs had not met their burden to show that Defendants were in "possession, custody, or control" of those documents. The Court reviews Judge Burke's findings of fact for clear error, and reviews Judge Burke's legal conclusions *de novo*.

Plaintiffs assert that Judge Burke erred in denying Plaintiffs' request for production of the Subsidiaries' Documents with respect to those documents that were in the possession of Defendants' wholly-owned subsidiaries because a parent corporation necessarily has "control" of its wholly-owned subsidiary's documents. However, Plaintiffs' requests for production asked for the production of documents from "Savencia, Schratter, or any Savencia Affiliate Company [and] Voss, and any Affiliate of Voss." It is not clear to the Court which, if any, of those companies Plaintiffs contend are wholly-owned subsidiaries of Defendants. *Cf.* D.I. at 4 ("Nor have Plaintiffs ever established that Villars is a wholly-owned subsidiary of Savencia."). However, even if the Court were to assume that some, or all, of those companies are wholly-owned by Defendants, the Court would still adopt Judge Burke's ruling, because the only evidence that Plaintiffs presented that Savencia exercises control over certain of its allegedly wholly-owned subsidiaries is that Savencia is the parent corporation of those subsidiaries. *See* D.I. 330. However, *Gerling* does not stand for the proposition that a parent corporation always "controls" its subsidiaries for purposes of document production. *Sicav v. Wang*, 2014 WL 2624753, at *6 (S.D.N.Y. June 12, 2014) ("Mere ownership by a parent, however, is not a

6

decisive factor, but merely one factor among several…*Gerling*, which plaintiffs cite for the proposition that '[a] parent always controls a subsidiary,' does not so hold.").

Accordingly, the Court ADOPTS Judge Burke's Discovery Order. Plaintiffs' Objections are OVERRULED.

### D. Plaintiffs' Objections to Judge Burke's Order on Plaintiffs' Motion To Strike Defendants' Amended Initial Disclosures.

Plaintiffs object to Judge Burke's Order, dated June 23, 2023, D.I. 424, denying Plaintiffs' motion to strike Defendants' amended initial disclosures, or in the alternative, ordering the two individuals identified in those disclosures to appear for depositions. The Court has reviewed Judge Burke's Order (D.I. 424) (the "Motion to Strike Order"), Plaintiffs' Objections (D.I. 454), and Defendants' Response (D.I. 462). Because this objection involves the construction of Rule 26, the Court considers whether Judge Burke's Order is "contrary to law."

Just before the close of discovery, Defendants amended their initial disclosures to include two additional witnesses for trial, Bart McNeill and Ronan Loaec. Those individuals were identified in Defendants' initial disclosures, and they have also been designated as document custodians in this action. D.I. 424. Plaintiffs, however, argue that Defendants did not "disclose" these individuals under Fed. R. Civ. Pro. 26, because Defendants did not give Plaintiffs "any prior indication that they might call either individual as a witness." D.I. 454.

The Court disagrees. Rule 26 does not require a party to disclose the fact that it might call a witness at trial. Instead, it merely requires a party to identify the identity of those witnesses that it "may use to support its claims or defenses. *TC Tech. LLC v. Sprint Corp.*, 2021 WL 1615418, at *3 (D. Del. Apr. 26, 2021) is illustrative:

7

> I disagree with TC Tech's assertion that Sprint did not adequately disclose Mr. Bluhm as a potential trial witness. It is undisputed that Sprint identified Mr. Bluhm in its Rule 26(a)(1) initial disclosures as a witness having discoverable information relevant to Sprint's claims or defenses and, more specifically, as having knowledge regarding Sprint's accused LTE network.

*Id*; *see also U.S. ex rel. Higgins v. Boston Scientific Corp.*, 2020 WL 968218, at *11 (D. Minn. Feb. 28, 2020) (finding no Rule 26 violation with respect to witnesses not initially listed on a party's Rule 26 disclosures, but were identified as custodians, could have been deposed, and were otherwise made known to the opposing party through the discovery process).

Plaintiffs were on notice that these two individuals were documents custodians and thus likely to be in possession of discoverable information. D.I. 424, Default Standard at 3. As a result, under Rule 26(e), Plaintiff had notice that these individuals were witnesses that may be used to support Defendants' claims or defenses. Fed. R. Civ. P. 26(e). Accordingly, finding that Judge Burke's decision was not "contrary to law," the Court OVERRULES Plaintiffs' objections, and ADOPTS Judge Burke's Motion to Strike Order.

### E. Defendants' Objections to Judge Burke's Order Excluding Certain Opinions of Mr. Alan Lee.

Defendants object to Judge Burke's Order, dated January 10, 2024, granting Plaintiffs' motion to exclude certain opinions of Alan Lee regarding due diligence. The Court has reviewed Judge Burke's Order (D.I. 554) (the "Daubert Order"), Defendants' Objections (D.I. 560), and Plaintiffs' Response (D.I. 573). The Court reviews Judge Burke's Order excluding certain opinions of Mr. Lee for an abuse of discretion.

Judge Burke excluded certain of Mr. Lee's opinions on the grounds that those opinions were not relevant. Specifically, Judge Burke excluded Mr. Lee's opinions regarding Plaintiffs' breach of contract claims and fraud claims, after finding that Mr. Lee's opinions regarding due

8

diligence were not relevant to Plaintiffs' claims. Defendants object, and assert that Mr. Lee's opinions are relevant to Plaintiffs' breach of contract claims because those opinions would help the jury (1) understand how due diligence works generally, and (2) "understand and evaluate the contours and wealth of information that Plaintiffs and their counsel and advisors received from Defendants before acquiring Schratter." D.I. 560. Defendants also assert that Mr. Lee's opinions are relevant to Plaintiffs' fraud claims because Mr. Lee's opinions address whether Plaintiffs were justified in closing on the transaction at-issue in this case despite purportedly not receiving certain documents or information that Plaintiffs had requested. *Id.*

With respect to Plaintiffs' breach of contract claims, Judge Burke explained that Plaintiffs allege that Defendants breached three portions of the Stock Purchase Agreement (SPA) at-issue in this action: Article III.20, Article VI.1 and Article VI.2. D.I. 554 at 5. Judge Burke further explained that Mr. Lee's opinions were plausibly relevant only with respect to Article VI.2; which required Defendants to provide Plaintiffs with "reasonable access to and the right to inspect all of the . . . books and records, contracts, agreements and other documents and data related to [Schratter.]" *Id.* at 5-6. Ultimately, however, Judge Burke found that Mr. Lee's opinions were not sufficiently relevant to that issue, because Mr. Lee merely opined—at a "very high level"—that "Defendants put certain financial statements and Schratter Board documents in the data room, and how the parties' '[letter of intent regarding the sale] was not a guarantee that every document requested would necessarily be provided within the compressed due diligence window (nor does that usually happen).'" *Id.* at 7. Judge Burke found that Mr. Lee's general opinions did not "speak to any of the particular documents or facts at issue regarding the Article VI.2 breach of contract theory," and did not "seem intended to be used to do so." *Id.*

Judge Burke did not abuse his discretion in excluding Mr. Lee's opinions. "Expert testimony must fit the issues in the case; that is, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Antonio v. Progressive Ins. Co.*, 795 Fed. Appx. 128, 131 (3d Cir. 2020) (internal citations omitted). Mr. Lee's opinions do not "fit" the action, because his opinions are not relevant and would not be helpful to the trier of fact. *Id.* The Court agrees with Judge Burke that Mr. Lee's only plausibly relevant opinion is that "the LOI was not a guarantee that every document requested would necessarily be provided within the compressed due diligence window," because only that statement has the potential to make a material fact more or less likely—namely, whether Defendants breached Article VI.2 by failing to place certain documents in the data room (i.e. documents showing Mr. Voss' true role and authority at Schratter and the June 30 SPA). D.I. 554 at 5-7. However, Mr. Lee's opinions would not help the trier of fact, because Mr. Lee did not discuss the specific documents at-issue, or even discuss what types of documents typically *are* provided within the due diligence window. *See generally* D.I. 467, Ex. 1. Accordingly, Judge Burke did not err in excluding Mr. Lee's high-level opinions that not all documents need be provided in the due diligence window, because that opinion would not assist the trier of fact in determining whether Defendants breached their contractual obligations by failing to place the specific documents at-issue in this action in the data room.

The Court also finds that Judge Burke did not abuse his discretion in excluding Mr. Lee's opinions regarding Plaintiffs' fraud claims. Mr. Lee did not discuss fraud in his Declaration. Instead, Mr. Lee discussed the due diligence process, and opined that Plaintiffs' due diligence was "appropriate and adequate for the circumstances." D.I. 467, Ex. 1, at 20. Also, Mr. Lee did not opine that Plaintiffs would have discovered Defendants' purported fraud (i.e. the details of

Voss's role at Schratter or the June 30 SPA) by engaging in more thorough due diligence. *See id.* Thus, Mr. Lee's opinions are unlike the opinions that the court in *In re MSR Resort Golf Course LLC*, 471 B.R. 783 (Bankr. S.D.N.Y. 2012) found admissible, because that court found that appropriate due diligence would have put the plaintiff on notice of the allegedly fraudulent non-disclosure agreements at-issue in that case. *Id.* at 797-99.

Defendants argue that Mr. Lee's opinion that due diligence "can identify red flags or raise questions that an inquiring buyer may follow up on, which occurred here" is relevant to whether Plaintiff's justifiably relied on Defendants' representations. D.I. 560. However, Mr. Lee (and Defendants) fails to explain how any of those "red flags" should have put Plaintiffs on notice of Defendants' purported misrepresentations. Indeed, Mr. Lee instead concluded that Plaintiffs' due diligence was "appropriate and adequate under the circumstances". D.I. 467, Ex. 1, at 5. Also, Mr. Lee does not discuss the specific documents that Plaintiffs allege Defendants fraudulently withheld. *See id.* Accordingly, the Court finds that Defendants have not shown that Mr. Lee's opinions are relevant to whether Defendants' alleged fraud was known, or should have been obvious to Plaintiffs, or whether Plaintiffs justifiably relied on the information provided to them by Defendants.[1] Thus, finding that Judge Burke did not clearly err in excluding Mr. Lee's opinions, the Court ADOPTS Judge Burke's *Daubert* Order and OVERRULES Defendant's Objections.

---

[1] The parties dispute whether Florida law requires proof of justified reliance to state a claim for fraudulent inducement. The Court declines to rule on that issue at this time. *See G Barrett LLC v. Ginn Co.*, 2011 WL 6752551, at *4 (M.D. Fla. Dec. 13, 2011), *aff'd*, 494 Fed. Appx. 944 (11th Cir. 2012) ("Despite the Florida Supreme Court's pronouncements, the law concerning the elements of a claim for fraudulent inducement and/or misrepresentation in Florida remains somewhat murky as an expansive body of case law has developed in both the state and federal courts inserting the element of justifiable reliance into the tort of fraudulent inducement and fraudulent misrepresentation.")

### F. Defendants' Objections to Judge Burke's Order re: The Miami Server.

Defendants object to Judge Burke's Memorandum Order, dated January 31, 2024, denying Defendants' motion for a finding that Plaintiffs waived any privilege over documents contained on a computer server (the Miami Server) by voluntarily allowing that server's contents to be disclosed to a series of third parties. The Court has reviewed Judge Burke's Order (D.I. 561) (the "Miami Server Order"), Defendants' Objections (D.I. 574), and Plaintiffs' Response (D.I. 576). The Court reviews Judge Burke's findings of fact for clear error, and reviews Judge Burke's legal conclusions *de novo*.

Judge Burke found that the Miami Server is a computer server that originally belonged to Schratter Foods, Inc. ("SFI"). D.I. 561 at 1-3. At the relevant times related to the case, SFI was Plaintiffs' subsidiary. *Id.* In April 2018, SFI was placed in an assignment for the benefit of creditors ("ABC") (a state-law alternative to formal bankruptcy proceedings). *Id.* Along with other SFI assets, the Miami Server was transferred to an assignee, Mr. Les Osborne, after SFI entered into the ABC proceeding. *Id.* At that point, the server became the property of Mr. Osborne. *Id.* After the assignment, Plaintiffs obtained Mr. Osborne's permission to preserve SFI's hard drives and certain other of SFI's materials, including the Miami Server. *Id.* Plaintiffs paid for the cost to store these hard drives and documents. *Id.* After the litigation began in 2018, Plaintiffs disclosed the existence of the SFI server to Defendants, and advised them that the server was in Mr. Osborne's possession. *Id.* Then, after a dispute between the parties regarding which party was responsible for reviewing the contents of the Miami Server, Plaintiffs eventually obtained Mr. Osborne's permission to provide Defendants with a copy of the Miami Server. *Id.* Plaintiffs copied the server, and—without first conducting a privilege

review—sent that copy to Defendants' counsel without modification. *Id.* Plaintiffs also kept a copy of at least some of the Miami Server for their own review. *Id.*

In sum, Plaintiffs' allegedly privileged information that is located on the Miami Server was disclosed three times. Plaintiffs disclosed the information located on the Miami Server to SFI when Plaintiffs caused that information to be uploaded to the Miami Server. Next, SFI disclosed that information to Mr. Osborne when SFI assigned certain of its assets to Mr. Osborne during the ABC proceeding. Then, during this litigation, Plaintiffs disclosed that information to Defendants when Plaintiffs obtained a copy of the Miami Server from Mr. Osborne and sent that copy to Defendants' counsel.

In their briefing before Judge Burke, Defendants raised two theories of waiver. Defendants argued that SFI's assignation of the Miami Server to Mr. Osborne was an intentional disclosure, because Plaintiffs, rather than SFI, caused SFI to enter into the ABC proceeding. D.I. 408. Defendants also argued that Plaintiffs inadvertently disclosed the contents of the Miami Server to Defendants when Plaintiffs provided Defendants with a copy of that server during this litigation. *Id.*

Judge Burke denied Defendants' motion, and found that Plaintiffs had not waived privilege with respect to the contents of the Miami Server. D.I. 561. Defendants object, and argue that Judge Burke erred by (1) failing to address Defendants' theory of intentional waiver, and (2) concluding that the applicable five-factor test under Florida law for determining whether an inadvertent disclosure waives privilege militated against a finding a waiver under the circumstances of this action. D.I. 574.

The Court agrees with Defendants that Judge Burke did not address Defendants' intentional waiver theory. *See* D.I. 561 at n.4 ("In their opening letter brief on the Motion, Defendants address only the concept of inadvertent disclosure, (D.I. 408 at 4-5), and so the Court will do the same here as well."). Specifically, Defendants argued that "Plaintiffs, not SFI, decided to place SFI into insolvency proceedings and transfer the Miami Server to a third party," and that "the complete overlap of officers and directors between Plaintiffs and SFI—is how Plaintiffs' documents came to be stored on SFI's servers in the first place." D.I. 408 at 4. Judge Burke—in concluding that the record does not show that Plaintiffs knew or should have known that their privileged documents resided on the Miami Server prior to providing Defendants with a copy of that server—explained "there has been no finding in this case that SFI and Plaintiffs are alter egos." D.I. 561 at 10. It appears to the Court, however, that Defendants made the argument that SFI and Plaintiffs are alter egos (including by citing to documents identified on the Miami Server, *see* D.I. 408, Ex. 1) when "renew[ing] their argument that Plaintiffs' decision to cause the Miami Server to be transferred to an insolvency assignee…operated as an intentional waiver." D.I. 408 at 4. Accordingly, the Court finds that Defendants' argument should have been addressed prior to issuing a finding with respect to whether Plaintiffs knew or should have known that their privileged documents resided on the Miami Server.

Judge Burke's findings of fact and conclusions of law concerning whether Plaintiffs did or did not exercise control over SFI during the relevant times related to the case will assist the Court in reviewing Judge Burke's conclusion that Plaintiffs did not intentionally or inadvertently waive privilege over the contents of the Miami Server. Accordingly, the Court DEFERS ruling on Defendants' Objections to Judge Burke's Memorandum Order, dated January 31, 2024, and REMANDS this dispute to Judge Burke to (1) consider and explain whether Plaintiffs exercised

14

sufficient control over SFI such that SFI's disclosure of the Miami Server to Mr. Osborne was an intentional waiver because those corporations were alter-egos during the relevant times related to the case, and (2) consider and explain whether those findings regarding Plaintiffs' control over SFI (or lack thereof) affect Judge Burke's factual or legal conclusions with respect to whether Plaintiffs inadvertently disclosed the contents of the Miami Server.

### III. CONCLUSION

WHEREFORE, at Wilmington this 11th day of July, 2024, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Objections to Oral Order dated January 12, 2023 (D.I. 298) are **OVERRULED**.
2. Plaintiffs' Objections to Oral Order dated January 18, 2023 (D.I. 307) are **OVERRULED**.
3. Plaintiffs' Objections to Oral Order dated February 21, 2023 (D.I. 353) are **OVERRULED**.
4. Plaintiffs' Objections to Oral Order dated June 23, 2023 (D.I. 424) are **OVERRULED**.
5. Defendants' Objections to Memorandum Order dated January 10, 2024 (D.I. 554) are **OVERRULED**.
6. The Court **DEFERS** ruling on Defendants' Objections to Memorandum Order dated January 31, 2024 (D.I. 561). The dispute underlying Defendants' Objections is **REMANDED** to Judge Burke consistent with this Opinion.