IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC., and ATLANTIC VENTURES CORP.<br><br>        Plaintiffs,<br><br>        v.<br><br>SAVENCIA, S.A., and ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.<br><br>        Defendants.<br><br>ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.<br>        Counterclaim Plaintiff,<br><br>        v.<br><br>ECB USA, INC., and ATLANTIC VENTURES CORP.<br><br>        Counterclaim Defendants. | C.A. No. 19-00731 (GBW) |

## MEMORANDUM OPINION

Thomas G. Macauley, MACAULEY LLP, Wilmington, DE; Joel S. Magolnick, John E. Kirkpatrick, MARKO & MAGOLNICK, Miami, FL – attorneys for Plaintiffs and Counterclaim Defendants.

David W. Marston Jr., Jody C. Barillare, Brian F. Morris, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Troy S. Brown, Su Jin Kim, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, PA; Michael J. Ableson, MORGAN, LEWIS & BOCKIUS LLP, New York, NY – attorneys for Defendants and Counterclaim Plaintiff.

February 10, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Presently before the Court are Plaintiffs ECB USA, Inc.'s and Atlantic Ventures Corp.'s (collectively, "Plaintiffs") objections to Magistrate Judge Burke's Memorandum Order issued on March 22, 2024 (D.I. 577 ("the Order")). The Order granted Defendants Savencia, S.A.'s and Zausner Foods Corp.'s (collectively, "Defendants") *Daubert* Motion to Exclude the Expert Testimony of Jonathan Macey (D.I. 428). Jonathan Macey ("Macey") is Plaintiffs' expert whose opinions are reflected in his March 6, 2023 report. The Court has reviewed the Order, Plaintiffs' objections (D.I. 581), and Defendants' responses thereto (D.I. 582). For the reasons set forth below, Plaintiffs' objections are OVERRULED.

**I.   BACKGROUND**

The Court writes here for the parties, and thus will forego a lengthy recitation of the facts and procedural posture of this case.

Relevant here, on June 28, 2023, Defendants filed a *Daubert* Motion to Exclude the Expert Testimony of Macey ("the *Daubert* Motion") (D.I. 428). Macey is a professor at Yale Law School and at the Yale School of Management. (D.I. 430, Ex. A ¶ 2). Plaintiffs hired Macey to provide "opinions on issues of corporate governance and ordinary and customary corporate behavior." (*Id.* ¶ 1). Specifically, Macey provides the two following opinions concerning this case:

> **Opinion #1:** Based on commonly understood conceptions of the role of the CEO in business organizations such as Schratter Foods Incorporated ("Schratter"), Alain Voss was not actually the CEO of Schratter during the period beginning June 30, 2014 and continuing through December 31, 2014, as the term "CEO" is universally understood in business. During the foregoing period Voss was the CEO of Schratter in name only, without the usual responsibilities, authority, and duties associated with that position
>
> **Opinion #2:** Analysis of the quality of management of the company being acquired (the target company) is a critical consideration in making a corporate acquisition where the acquisition is being done with management in place. An inevitable implication of this analysis

1

> is that the identity of a company's CEO should be fully and accurately disclosed, including, but not limited to, in the governing documents of the target company. To the extent that a selling entity makes disclosures about the quality of management, such disclosures should be accurate

(D.I. 430, Ex. A ¶¶ 8,9).

In their Opening Brief in support of their *Daubert* Motion, Defendants argue that Macey's opinions should be excluded because they are "unreliable" and "would not assist the trier of fact." (D.I. 429 at 7). More specifically, Defendants contend that Macey's opinions do not "fit" the issues in the case because "[n]o specialized knowledge is needed for the jury to assess Voss's role within [Schratter], or the extent to which facts about Voss's role were disclosed to Plaintiffs." (D.I. 429 at 21). In opposition to Defendants' motion, Plaintiffs assert that Macey's opinions will "help the fact finder understand the evidence, which centers on Defendants' misrepresentations to Plaintiffs that Voss was the autonomous, competent, effective CEO/President with the full powers of those offices, and day-to-day managerial control over Schratter." (D.I. 465 at 13). This Court, however, disagreed with Plaintiffs.

On March 22, 2024, Magistrate Judge Burke issued a Memorandum Order granting Defendants' *Daubert* Motion ("the Order") (D.I. 577). (*See* D.I. 118 (Order referring motions to Magistrate Judge Burke)). The Order determined that Macey's opinions did not fit the facts of the case because they were neither relevant nor would assist the trier of fact. (D.I. 577). Plaintiffs filed Objections to the Order (D.I. 581) on April 5, 2024. On April 19, 2024, Defendants filed a Response to Plaintiffs' Objections (D.I. 582). Pursuant to Federal Rule of Civil Procedure 72(a), the Court now considers the objections and responses and may "modify or set aside any part of the [Order] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

2

## II. LEGAL STANDARD

"The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's *Daubert* decision." *ICU Med., Inc. v. Rymed Techs., Inc.*, 752 F. Supp. 2d 486, 495 (D. Del. 2010). Rule 702 of the Federal Rules of Evidence ("Rule 702") provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "First to be qualified, a witness must possess specialized expertise." *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 367 (D. Del. 2021). Next, to be reliable, the expert's testimony must be "grounded in the methods and procedures of science" and must constitute "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 590 (1993). Third, to fit, the expert's testimony must relate to an issue in the case and assist the trier of fact in reaching a conclusion. *See United States v. Ford*, 481 F.3d 215, n.6 (3d Cir. 2007). "The party offering the expert testimony bears the burden of proving admissibility."

*EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016) (citing to *Daubert*, 509 U.S. at 592, n. 10)).

"A *Daubert* motion to exclude testimony presents a non-dispositive matter, and objections to a Magistrate Judge's recommendation on a non-dispositive motion are subject to a 'clearly erroneous and contrary to law' standard of review, pursuant to 28 U.S.C. 636(b)(1)(A) and Fed. R. Civ. P. 72(a)." *Masimo Corp. v. Phillips Elec. North America Corp.*, 62 F. Supp. 3d 368, 388 (D. Del. 2014); *see also Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 Fed. Appx. 392, 395 (3d Cir. 2021) ("Upon objection from a party, the district court must review the Magistrate Judge's decision under a 'clearly erroneous or contrary to law' standard when the matter is non-dispositive, and under a de novo standard when the matter is dispositive."). A recommendation or order is "clearly erroneous" if there is a "'definite and firm conviction that a mistake has been committed.'" *Masimo Corp.*, 62 F. Supp. 3d at 388 (citing *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007)). An order is "contrary to law" "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins, Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

## III. DISCUSSION

Plaintiffs object to the Order on various grounds. (*See* D.I. 581). Specifically, Plaintiffs assert that the Order misinterprets Plaintiffs' allegations about Voss, "erroneously finds that Macey's opinions regarding the importance of senior management, including a CEO, in an acquisition with management in place, are irrelevant," and "makes an unfounded assumption that a lay person would know what a CEO's role and duties truly are 'in business.'" (D.I. 581 at 3-4). In other words, Plaintiffs object to the Opinion's finding that Macey's opinions do not "fit" the facts of the case and are not useful to the jury. (*See* D.I. 581 at 5, 7). The Court, however, disagrees

4

with Plaintiffs' objections and does not find that the Opinion is clearly erroneous or contrary to law.

"In assessing whether an expert's proposed testimony 'fits,' [the Court asks] whether the expert testimony proffered is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (cleaned up) (internal quotation marks and citations omitted). This standard for fit is "not high" but the standard is "higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994). On this point, Magistrate Judge Burke determined:

> This proposed testimony does not meet the fit requirement in part because it does not align with the relevant allegations in this case. As was noted above, here Plaintiffs allege that: (1) prior to mid-2014, Voss was the CEO of Schratter and held certain duties commensurate with that role; (2) but in June 2014, Defendants secretly "stripp[ed]" Voss of those duties, and gave those duties to another executive at Schratter (J.M. Wild, or "Wild"), who became the "de facto" CEO, such that Voss was thereafter the CEO "in name only"; and (3) yet Defendants did not tell Plaintiffs this before the Schratter deal closed, and instead communicated that Voss was a trusted, effective CEO. (D.I. 147 at ¶ 27 (alleging that Defendants "stripp[ed] Voss of his powers and offices as president and chief executive officer" but thereafter "held Voss out as Schratter's trusted, knowledgeable, and effective chief"); *id.* at ¶ 52 (asserting that the Schratter Employment Letter had "stripped Voss of his duties and that his duties had been assigned to Wild"); *id.* at ¶ 64 (alleging that Defendants had "kept secret the fact that Voss had been stripped of his duties and powers as Schratter's president and chief executive officer as of June 30, 2014, and that Wild was, in fact, the de facto chief executive officer, and holder of virtually all corporate authority for Schratter"); *see also id.* at ¶¶ 38, 65-66, 168, 181, 183, 191, 197, 199, 205, 207, 250) In order to determine whether these allegations are accurate, it is not relevant (and thus, the jury will not benefit from hearing testimony about) what CEOs at other companies "generally" do. Instead, what is relevant is what the CEO of Schratter actually did do before and after June 2014, and what Defendants communicated on this score.
>
> In order to assess these issues, the jury will need to answer related questions such as: (1) What duties did Voss have prior to early-to-mid 2014 in his role as CEO?; (2) Was he "stripped" of some or all

5

>of those duties thereafter, with the duties being given to Wild, such that Voss became the "CEO" in "name only"?; (3) What statements or disclosures did Defendants make to Plaintiffs about Voss' role in the relevant time period, and did Defendants make any misrepresentations or omit important facts on these subjects? (D.I. 465 at 8 (Plaintiffs noting that the evidence in the case "centers" on "Defendants' misrepresentations to Plaintiffs that Voss was the autonomous, competent, effective CEO/president, with the full powers of those offices, and day-to-day managerial control over Schratter")). These are factual questions regarding events that either did or did not occur in the past regarding Schratter's sale, and which are not particularly technical or complex. Thus, assessing whether these events occurred and how that relates to the instant claims does not necessitate reliance on expertise beyond the ken of a typical lay juror.

(D.I. 577 at 5-7) (footnotes omitted).

The Court agrees with Magistrate Judge Burke's thorough analysis on the issue.[1] Although Plaintiffs argue that Macey's opinion is "necessary for [the jury] to fully understand the role of a CEO as that term is used '*in business*'" (D.I. 581 at 5) (emphasis in original), Macey's opinion about the role of some CEOs does not relate to a "pertinent inquiry in the case." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, Case No. 1:17-cv-00770-JDW-MPT, 2024 U.S. Dist. LEXIS 7521, at *3, (D. Del. Jan. 16, 2024) (internal quotation marks omitted). The pertinent inquiry in this case is whether Defendants are liable for fraudulent misrepresentations or omissions made about Voss's pre-closing role. To answer that inquiry, the jury will need to know what Voss's role at Schratter was throughout 2014, if that role changed, and "the extent to which facts about Voss's role were disclosed to Plaintiffs." (D.I. 429 at 29). Information about what CEOs do, generally, is entirely irrelevant as to whether Defendants made material misrepresentation about Voss's role.[2]

---

[1]   Plaintiffs argue that the Opinion "misstates the alleged misrepresentations regarding Voss's role as CEO." (D.I. 581 at 3). Not so. The Opinion correctly quoted the relevant allegations in the Second Amended Complaint and the allegations as understood by Macey in his expert report. (*See* D.I. 582 at 7-8).

[2]   Plaintiffs need to prove that Wild assumed the duties previously assigned to Voss, and

6

Additionally, to succeed on their fraud claims, Plaintiffs must prove that Defendants' misrepresentations about Voss's role were material to Plaintiffs' decision to retain Voss. "Under Florida law, a [misrepresentation] is material if, but for the misrepresentation, the aggrieved party would not [have acted.]" *Ribak v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. Dist. Ct. App. 1997). Plaintiffs argue that Macey's opinions "explain the materiality of the misrepresentations to the jury" and that "such misrepresentations are important in acquisitions in general." (D.I. 581 at 3; *see also id.* at 7 ("Macey's testimony on this issue is important to the materiality of the misrepresentations because it explains the importance to a buyer of the disclosures regarding an incumbent CEO.")). The Order, however, found that Macey's opinions as to "materiality" did not fit the case:

> [In paragraphs 43-50 of his report], Macey opines that "analysis of the quality of management of the company being acquired . . . is a critical consideration in making a corporate acquisition" such that "the identity of a company's CEO should be accurately reflected in the governing documents of the firm." (D.I. 430, ex. A at 15-18) As to this opinion, Macey cites to published articles (some relating to private equity-related or venture capital-related acquisitions) for the proposition that "CEO quality" is "often critical to the success of an acquisition" or that "[t]arget firm management is often viewed by the acquirer" as being important or that "the quality of management of the company being acquired . . . is a critical consideration in making a corporate acquisition." (*Id.* at ¶¶ 43-50) But again, in this case, the relevant allegations are not about what "often" happens with regard to acquisitions involving *other* entities, such as those in the private equity realm. The allegations are that *these particular Plaintiffs* highly valued the fact that a successful, competent CEO was in place at Schratter (due to their lack of experience in the relevant field) and that this allegedly "created an opportunity for [Defendants] to fraudulently induce [Plaintiffs]" to follow through with the acquisition to their detriment. (D.I. 147 at ¶¶ 26, 68) Indeed,

---

in doing so Wild became the de facto interim CEO. It is not relevant whether Wild performed duties that CEOs at other companies performed. The only relevant inquiry is what *Schratter's* CEO's duties were and who performed them.

the only portion of paragraphs 43-50 that actually discusses or references the facts of this case make this clear, where Macey writes:

> I understand that Voss was portrayed to Plaintiffs as a successful CEO and the transaction was structured under the assumption that Voss would 'remain' CEO of Schratter after the acquisition was completed. Indeed, under the particular facts of this case, it seems highly unlikely that the Plaintiffs would have proceeded with the acquisition of Schratter if they had known the true facts about Voss' role as the imaginary CEO

(D.I. 430, ex. A at ¶ 43) These allegations—about assertions that Defendants allegedly made to Plaintiffs, and what impact those assertions had on Plaintiffs, all of which relate to the actual transaction at issue in this case—are what is going to be important to any trial here. Macey will have nothing relevant or admissible to say about how "Voss was portrayed" or whether it was "highly unlikely" that Plaintiffs would have bought Schratter had they known the "true facts" about Voss' role. (D.I. 429 at 18-19 (Defendants noting the same)) Instead, such testimony will come from fact witnesses who participated in the events giving rise to this case.

(D.I. 577 at 8-10) (footnotes omitted).

The Order concluded that Macey's opinion could not aid jurors in assessing the materiality element because Macey cannot opine on whether the alleged omissions and misstatements about Voss's role were important to the *specific Plaintiffs* in this case. Macey was not involved in the decision to retain Voss and thus cannot testify as to the state of mind of those who made the decision. Instead, it is only Plaintiffs, and Plaintiffs' fact witnesses, who can prove that the alleged misrepresentations and omissions were material to their decision to retain Voss. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (internal quotation marks omitted); *see also United States v. Mavashev*, 08-CR-902 (DLI)(MDG), 2010 U.S. Dist. LEXIS

8

2812, at *11 (E.D.N.Y. Jan. 14, 2010) (determining that an expert could not opine as to the materiality of fraudulent statements because "no witness, expert or otherwise, may testify as to legal conclusions, including whether a particular statement is material or not.").

For all these reasons, the Court does not find that the Order was clearly erroneous or contrary to law.[3]

## IV. CONCLUSION

For the aforementioned reasons, the Court OVERRULES Plaintiff's objections (D.I. 581). An appropriate Order will follow.

---

[3] Notably, Plaintiffs do not argue that Magistrate Judge Burke's decision was clearly erroneous or that he "misinterpreted or misapplied applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (explaining the standard of review for non-dispositive motions decided by a Magistrate Judge). Accordingly, it appears to the Court that Plaintiffs improperly seek *de novo* review. (*See also* D.I. 582 at 12 (Defendants observing same)). The Court, however, will not indulge Plaintiffs' "request."