**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ECB USA, INC., and ATLANTIC VENTURES CORP.

Plaintiffs,

v.

SAVENCIA, S.A., and ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.

Defendants.

C.A. No. 19-00731 (GBW)

ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.

Counterclaim Plaintiff,

v.

ECB USA, INC., and ATLANTIC VENTURES CORP.

Counterclaim Defendants.

**MEMORANDUM ORDER**

Presently before the Court are the following motions of Plaintiffs ECB USA, Inc. and Atlantic Ventures Corp. (collectively, "Plaintiffs") and Defendants Savencia, S.A. and Zausner Foods Corp. (collectively, "Defendants"):

1. Defendants' Objections to Judge Burke's Memorandum Order Denying-in-Part Defendants' Motion to Exclude the Expert Testimony of Ricky Antle (D.I. 597);
2. Defendants' Motion to Bifurcate the Punitive Damages Phase of Trial from Liability and Non-Punitive Damages (D.I. 689); and

3. Defendants' Motion to Quash the Trial Subpoenas of Shannon Delaney and Margot Bloom (D.I. 690).

The motions have been fully briefed by the parties. The Court has carefully reviewed the parties' submissions as well as the applicable law. For the reasons explained below the Court:

1. OVERRULES Defendants' Objections (D.I. 597);
2. DENIES Defendants' Motion to Bifurcate Trial (D.I. 689); and
3. GRANTS Defendants' Motion to Quash the Trial Subpoenas (D.I. 690).

## I. OBJECTIONS TO JUDGE BURKE'S MEMORANDUM ORDER (D.I. 597)

On June 10, 2024, Magistrate Judge Burke issued a Memorandum Order (D.I. 587) ("the Memorandum Order") granting-in-part and denying-in-part Defendants' motion to exclude the opinions and testimony of Plaintiffs' expert, Professor Ricky Lee Antle ("Antle") (D.I. 425). On June 24, 2024, Defendants' filed objections to Judge Burke's Memorandum Order (D.I. 597). Specifically, Defendants object to "the Order's decision denying Defendants' request to exclude Antle's purported expert opinions concerning Schratter Foods, Inc.'s ("SFI's") financial statements." (D.I. 597 at 3). Defendants contend that Antle lacks the "requisite specialized training" because he is not a Certified Public Accountant ("CPA") and "admitted that he never conducted an audit and has no audit experience," Antle's opinions are "too vague to be of any help to the jury," and that Antle's opinions are unreliable. (*Id.* at 7, 9). Plaintiffs oppose Defendants' objections and assert that Antle is qualified because he is a professor of accounting, authored numerous textbooks, and has advised large accounting firms for years. (D.I. 603 at 5-6). Additionally, Plaintiffs argue that Antle's views are helpful and that his opinions are reliable. (*Id.* at 8-9).

The Court reviews the Memorandum Order's findings of fact for clear error and its legal conclusions de novo. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017).

In relevant part, the Memorandum Order found:

> The Court concludes that Antle is qualified to render an opinion regarding Schratter's financial statements. Antle has been a professor of accounting since 1985 at YSOM, a distinguished graduate institution. (Antle Rep. at 1) In that time, he has taught a variety of accounting courses, which are "aimed at giving [his students] a solid foundation to understand[, inter alia,] common uses of financial statements[.]" (*Id.*) He has also co-authored two editions of a textbook titled Financial Accounting, has served as a consultant for the American Institute of Certified Public Accountants and has advised large accounting firms on issues involving the scope of their practices. (*Id.*) He clearly possesses skill or knowledge greater than the average layman with regard to accounting practices, including as to how those practices should be utilized in preparing a company's financial statements. And thus his experience surely qualifies him to opine on general accounting standards and purported deficiencies in Schratter's financial statements.
>
> Moreover, contrary to what Defendants suggest, the Court is aware of no precedent stating that in order for Antle to be qualified to testify about the importance or adequacy of financial statements, he must be a CPA, a practicing accountant or someone who has actually performed audits on a company's finances. *See Natchez Reg'l Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 577-78 (S.D. Miss. 2012) (rejecting an argument that the plaintiff's proposed expert witness on accounting matters (including on whether certain financial statements were prepared in accordance with GAAP) was unqualified, in light of the witness' "distinguished accounting background[,]" where the defendants argued that the witness lacked qualifications because he did not have an active CPA license and was not certified as a forensic accountant); *see also CrossFit Inc. v. Martin*, No. CV-14-02277-PHX-JJT, 2017 WL 3308989, at *3 (D. Ariz. Aug. 3, 2017) (concluding that a witness was qualified to offer expert opinions on damages, to estimate revenues and to project future earnings, even though he was "not a certified public accountant [], does not have a degree in accounting, and by his own admission, is not qualified to create income statements for the relevant time period in 2015[,]" because he otherwise had relevant experience to bring to bear on the matter); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 796 (N.D. Tex. 2013). And Defendants cited to no such authority in their briefing.

(D.I. 587 at 4-6) (footnotes omitted).

The Court agrees with the legal findings in the Memorandum Order. Although Antle's "lack of a license may preclude [him] from performing certain tasks – a judgment this Court need not presently make – it does not automatically render him unqualified to provide expert testimony." *Flair v. State Farm Fire & Cas. Co.*, Civil Action No. 08-3196, 2009 U.S. Dist. LEXIS 141539, at *5 (E.D. La. Feb. 2, 2009); *see also Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (determining that parties "[n]o longer need [expert witnesses to] belong to some recognized professional community. It is enough, to be qualified as an expert and thus entitled to give opinion testimony, that one has specialized knowledge that would assist the trier of fact.").

Additionally, Judge Burke found that Antle's testimony would be helpful to the jury:

> The Court acknowledges that, having read a lot of expert reports, Antle's language here does seem unusually passive. One might typically expect an expert to use more definitive or damning language in assessing the actions of the other side (e.g., instead of saying that he or she was "uneasy" or "surprised" about the lack of particular content in a financial statement, an expert might more typically assert that the absence of the content "amounts to a clear violation" of a particular standard or principle). But so far as the Court is aware, there is no rule that says that an expert's view on a subject needs to be rendered in utterly damning or bombastic language, or even that it needs to amount to a fully dispositive conclusion on a matter. (D.I. 464 at 8-9); *see also Kumho Tire Co. v. Camichael*, 526 U.S. 137, 148 (1999) (noting that, pursuant to Rule 702, an expert can provide, inter alia, "specialized observations"); Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules (noting that the Rule "encourage[s] the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference"). And even though it is expressed in somewhat polite wording (e.g., "areas of concern"), Antle's ultimate viewpoint seems clear enough: he thinks that the absence of this material in the relevant financial statements is potentially problematic, and that this, in turn, could bolster Plaintiffs' case and hurt Defendants' case. . .
>
> One expert is not required to provide the entirety of a party's evidence on a subject in order for that expert's testimony to be helpful to a factfinder. Put differently, it seems very possible that: (1) Antle could (by way of provision of legitimate expert opinion)

> raise "concern[s]" about particular issues; and yet (2) in order for Plaintiffs to actually prevail on its claims as to these issues, they might need to provide *additional* evidence demonstrating that the subject matter of Antle's "concerns" actually leads to liability or an entitlement to damages. The fact that Antle might provide evidence going to the first of these steps and not the second does not mean that the first step is of absolutely no help to a juror.

(D.I. 587 at 7-8) (footnotes omitted).

The Court finds that Judge Burke correctly concluded that Antle's Opinions may be helpful to a jury. Contrary to the thrust of Defendants' objections, an expert's opinion may be helpful to a jury even if the expert does not provide an absolute conclusion as to the issues in the case. *See, for example, Samaha v. Wash. State DOT*, No. Cv-10-175-RMP, 2012 U.S. Dist. LEXIS 190532, at *10-12 (E.D. Wash. Jan. 3, 2012) (determining an expert was qualified despite the fact that they did not provide a conclusion as to whether their findings were consistent with the conduct of a party); *see also United States v. Baskin*, 886 F.2d 383, 387 (D.C. Cir. 1989) ("Whether or not one qualifies as an expert depends not on knowledge of facts of a particular case but on one's past experience with regard to the subject matter on which one will opine."). The Court, therefore, does not find merit in Defendants' assertion that Antle's testimony would be not helpful to the jury.

Last, Defendants object to the Memorandum Order's findings that Antle's testimony was reliable. The Memorandum Order finds that Antle's opinions are reliable and not speculative:

> Defendants assert that the opinions are unreliable for three reasons. Below, the Court will list each of the reasons given, and explain why it does not think they demonstrate that Antle's opinions should be excluded on this ground:
>
> - Defendants first note that in support of his opinion that additional "going concern" disclosures should have been included, Antle relied in part on a September 2014 e-mail by Savencia director Thomas Swartele. (D.I. 426 at 11 (citing Antle Rep. at 11)) In the e-mail, Swartele wrote that there

are "documents/strategic analysis which show this business [i.e., Schratter] is in bankruptcy." (*Id.* (citing Antle Rep. at 11)) Without further explanation, Defendants suggest that Antle's reliance on this e-mail is improper because it is a "single e[- ]mail" and it was "dated five months before [Schratter] released its 2014 audited financial statements." (*Id.*) The Court does not see what is wrong with Antle's reliance on this fact. It is a fact that, to Antle, suggests that Schratter may have been in trouble as a viable business as of 2014 or earlier. It seems perfectly reasonable for Antle to cite to this fact in order to bolster his opinion.

- Defendants next note that in support of his view about the lack of going concern disclosures, Antle also relied on an observation that in 2014, over $25 million of debt that Schratter owed to its parent (ZNHC, Inc.) was converted into contributed capital. (Antle Rep. at 11 (cited in D.I. 426 at 12)) Antle concludes that these "loans strongly suggest that Schratter was crucially dependent on its parent for its financial survival; i.e., there existed substantial doubt that Schratter was not operating as a going concern on its own." (*Id.*) Defendants criticize Antle's suggestion that this fact supports the need for further going concern disclosures, and they note that this conversion of debt to equity was disclosed in the relevant financial statements. (D.I. 426 at 12) But Antle's point is not that these loans were not disclosed, it is that Defendants did not provide sufficient explanation for the reasons behind the loans (which might have shed more light on whether Schratter was a viable going concern). Again, the Court does not see what is problematic about Antle's methodology here.

- Lastly, as to Antle's opinion that he was "surprised" that the financial statements did not explain why there was an impairment of goodwill or discuss why no such impairment was recorded, (Antle Rep. at 11-12), Defendants criticize this opinion as "vague and detached from reality, rendering it unreliable[,]" (D.I. 426 at 12). Defendants note that in his deposition, Antle was shown evidence that an amount relating to goodwill was listed in the 2013 and 2014 financial statements, and that this entry was in fact written down (or "impaired") in those years. (D.I. 427, ex. A at 81-82 (cited in D.I. 426 at 12)) But as Defendants also note, Antle clarified in his deposition that his concern was about the failure of Defendants to provide a written explanation for the write downs. (*Id.* at 82 (cited in D.I. 426 at 12)) The Court

> does not see how Defendants have demonstrated this was not a valid concern for Antle to have, or why it renders his opinion unreliable.

(D.I. 587 at 9-10) (footnotes omitted).

The Memorandum Order carefully addressed each of Defendants' arguments. After conducting its own, independent review, the Court agrees with the Memorandum Order's findings and conclusions as to the reliability of Antle's opinions.

For the reasons stated above, the Court denies Defendants' objections to Judge Burke's Memorandum Order (D.I. 597).

## II. DEFENDANTS' MOTION TO BIFURCATE TRIAL (D.I. 689)

On January 7, 2025, Defendants filed a motion to bifurcate all issues related to punitive damages. (D.I. 689). On January 21, 2025, Plaintiffs filed a response to Defendants' motion to bifurcate. (D.I. 700). On January 28, 2025, Defendants filed a reply brief (D.I. 704). The Court has carefully reviewed all the submissions.

Pursuant to Federal Rule of Civil Procedure 42(b), "the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). When exercising this broad discretion, courts "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Enzo Life Scis., Inc. v. Digene Corp.*, Civil Action No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202, 2003 WL 21402512, at *4 (D. Del. June 10, 2003). "If a party moves for bifurcation, it has the burden to establish that bifurcation 'is appropriate.'" *AOB Prods. Co. v. Good Sportsman Mktg., LLC*, C.A. No. 22-1264-GBW, 2023

WL 130885, 2023 U.S. Dist. LEXIS 3223, at *5 (D. Del. Jan. 9, 2023) (quoting *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013)).

Defendants' motion to bifurcate is primarily rooted in the argument that Plaintiffs' $250 million punitive damages request and evidence of Defendants' net worths would unfairly prejudice the jury against Defendants.[1] (*See* D.I. 689 at 8-9). Following the Court's grant of Defendants' summary judgment motions, however, the Court does not anticipate that Plaintiffs would still argue to the jury that they are entitled to $250 million in punitive damages. The only remaining claims in the case concern the alleged misrepresentations about Voss and his role at Schratter in 2014. (*See* D.I. 719). Additionally, as Plaintiffs assert, if the trial was bifurcated, the parties would be required to present argument and evidence on certain issues twice. (*See* D.I. 700 at 5). Indeed, "an overlapping of issues is significant to the decision whether to bifurcate" because it negates an argument that bifurcation would serve the purposes of judicial efficiency. *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1434 (D. Del. 1989). In this case, the remaining issues are interwoven – each asserted claim has to do with the alleged misrepresentations about Voss's role, Voss's post-acquisition conduct, and Voss's relationship with Defendants.[2] *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, Case No. 6:06-cv-1757-Orl-GJK, 2009 U.S. Dist. LEXIS 136191, at *13 (M.D. Fla. Jan. 8, 2009) (finding that bifurcation was not warranted because "evidence involved in determining the issue

---

1 The Court also interprets Defendants' motion to bifurcate to include a veiled motion *in limine* to exclude evidence of Defendants' financial net worth. (*See* D.I. 689 at 10-11). The Court, however, will not address a motion *in limine* presented in this manner.

2 In their Reply Brief, Defendants argue that any evidence of Defendants' net worth is relevant only to punitive damages, and not to Plaintiffs' tort claims. (D.I. 704 at 6). Although this may be true, the Court still finds that the bulk of Plaintiffs' case would have to be repeated if the trial was bifurcated. Should Defendants have specific objections to the evidence about Defendants' net worth, then Defendants may raise those objections at trial.

of liability with respect to Plaintiffs' common law fraud and conspiracy claims will overlap with that required to resolve Plaintiffs' punitive damage claims."). Furthermore, the Court finds that the remaining issues in the case are not "particularly complex" and thus a single trial "does not carry with it a significant risk that the trier of fact will be confused." *Senior, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 571 (D. Del. 2013).

For these reasons, the Court concludes that bifurcation is not warranted and denies Defendants' motion to bifurcate (D.I. 689).

## III. DEFENDANTS' MOTION TO QUASH THE TRIAL SUBPOENAS (D.I. 690)

In this action, Plaintiffs served Defendants' former trial counsel, Margot Bloom ("Ms. Bloom"), with a Rule 45 trial subpoena, and Plaintiffs attempted to serve Defendants' former trial counsel and Defendant Zausner's current counsel, Shannon Delaney ("Ms. Delaney") with a Rule 45 trial subpoena. (D.I. 690 at 2; *see also* D.I. 690, Exs. 2, 3). Both Ms. Bloom and Ms. Delaney represented Defendants in connection with this matter while they were employed at Morgan Lewis & Bockius LLP. As a result, on January 7, 2025, Defendants filed a motion to quash Plaintiffs' Rule 45 trial subpoenas directed at two of Defendants' former lawyers (D.I. 690). On January 17, 2025, Plaintiffs filed a response in support of their Rule 45 subpoenas and opposing Defendants' motion to quash (D.I. 695). On January 24, 2025, Defendants filed a reply (D.I. 703).

A District Court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "Pertinent factors weighed in the undue burden analysis include relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prods.*, No. 23-1594, 2023 WL 5347298, 2023 U.S. App. LEXIS 21865, at *6 (3d Cir. Aug. 21, 2023). The party seeking to quash

the subpoena bears the burden of persuasion. *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011).

Additionally, where a party seeks to subpoena or depose opposing counsel, "courts tend to scrutinize the request with a 'jaundiced eye.'" *Patrick v. Equifax Info. Servs., LLC*, Civil No. 23-4092 (CPO)(EAP), 2024 WL 4404187, 2024 U.S. Dist. LEXIS 181639, at *9 (D.N.J. Oct. 3, 2024) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2102, at 27 (2d ed. 1994)). This Court has recognized that "deposing [or subpoenaing] opposing counsel is not an absolute right, but instead an exception for which a basis must be established." *Ricoh Co. v. Oki Data Corp.*, C.A. No. 09-694-SLR, 2011 WL 3563142, 2011 U.S. Dist. LEXIS 90297, at *6 (D. Del. Aug. 15, 2011). The party seeking to elicit the testimony of opposing counsel must show that "(1) no other means exist to obtain the information than to [question] the opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to. . . the case." *Id.* (citing to *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987)). Therefore, Plaintiffs must establish that the Rule 45 trial subpoenas directed towards Ms. Bloom and Ms. Delaney are warranted. Plaintiffs, however, fail to persuade the Court that either subpoena is warranted.

Plaintiffs assert that "[t]he Bloom subpoena should not be quashed because her testimony may be needed on rebuttal to address testimony or documents offered by Defendants in connection with the creation of the data room." (D.I. 695 at 9). The Court, however, is not persuaded by this argument. First, the Court is not convinced that Ms. Bloom's testimony is necessary. In fact, Plaintiffs acknowledge that "Mr. Loaec and/or others," may be able to testify as to the contents of the data room. (*Id.*). Second, Plaintiffs do not explain to the Court which specific documents or evidence Ms. Bloom could speak to and, thus, the request appears quite vague. Third, "Ms. Bloom

was litigation counsel for Defendants starting in 2018, which was four years after the transaction at issue closed and the operative events took place." (D.I. 690 at 12). Therefore, Ms. Bloom would not possess personal knowledge about the events giving rise to this case, such as whether Defendants informed Plaintiffs of Voss's true role at Schratter in 2014.

Plaintiffs' arguments in support of their subpoena of Ms. Delaney are similarly deficient. Plaintiffs fail to demonstrate that Ms. Delaney's testimony is necessary. Instead, Plaintiffs contend that "it is possible that [they] may not need [her] testimony at all" if Pierre Ragnet "will be available to testify at trial on behalf of Plaintiffs."[3] (D.I. 695 at 6). And, in fact, Pierre Ragnet is on Defendants' witness list and Defendants "anticipate that he will testify live at trial." (D.I. 703 at 7). Additionally, Ms. Delaney does not possess personal knowledge about the events giving rise to the remaining claims and defense in this action. (*See* D.I. 690, Ex. 3 ¶¶ 5-6 (Declaration of Ms. Delaney stating that she does not possess any such independent knowledge)). Ms. Delaney represented Defendants in connection with this matter for a short time in 2020 and joined Defendant Zausner as in-house counsel in 2021. (D.I. 690 at 6). As a result, Ms. Delaney's testimony is neither crucial nor relevant.

In conclusion, the Court does not find that Plaintiffs have presented a compelling reason to subpoena Defendants' former trial counsel or Defendant Zausner's current legal counsel. Further, the Court finds, for the same reasons, that the subpoenas would likely require the disclosure of privileged material and would be burdensome on Ms. Bloom and Ms. Delaney. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

---

[3] Defendants also assert that other fact witnesses have provided testimony on Defendants' financial statements, such as Allen Ezard. (D.I 690 at 7; D.I. 703 at 7).

For the above reasons, the Court grants Defendants' motion to quash the trial subpoenas (D.I. 690).

## IV. CONCLUSION

For the reasons explained herein, the Court:

1. OVERRULES Defendants' Objections (D.I. 597);
2. DENIES Defendants' Motion to Bifurcate Trial (D.I. 689); and
3. GRANTS Defendants' Motion to Quash the Trial Subpoenas (D.I. 690).

IT IS SO ORDERED this 13th day of February 2025.

The Honorable Gregory B. Williams
United States District Judge