IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECB USA, INC., and ATLANTIC VENTURES CORP.<br><br>    Plaintiffs,<br><br>    v.<br><br>SAVENCIA, S.A., and ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.<br><br>    Defendants.<br><br>ZAUSNER FOODS CORP., on behalf of itself, and as a successor in interest to ZNHC, INC.<br>    Counterclaim Plaintiff,<br><br>    v.<br><br>ECB USA, INC., and ATLANTIC VENTURES CORP.<br><br>    Counterclaim Defendants. | C.A. No. 19-00731 (GBW) |

## **MEMORANDUM ORDER**

Presently before the Court are the following motions *in limine* ("MIL"):[1]

1. Plaintiffs' MIL #1: To Preclude Argument Regarding Justifiable or Reasonable Reliance by Plaintiffs on Defendants' Misrepresentations (D.I. 718, Ex. 14 at 2);

2. Plaintiffs' MIL #2: To Preclude Argument or Evidence that Plaintiffs Should Have Uncovered the Fraud (D.I. 718, Ex. 14 at 5);

---

[1] The Plaintiffs are ECB USA, Inc. ("ECB") and Atlantic Ventures Corp. ("Atlantic") (collectively, "Plaintiffs"). The Defendants are Savencia, S.A. ("Savencia") and Zausner Foods Corp. ("Zausner") (collectively, "Defendants").

1

3. Plaintiffs' MIL #3: To Preclude Argument Regarding Due Diligence (D.I. 718, Ex. 14 at 9);

4. Plaintiffs' MIL #4: To Preclude Defendants from Introducing, Referring to, or Using at Trial, Documents Showing Payments to Alain Voss (D.I. 718, Ex. 14 at 12);

5. Plaintiffs' MIL #5: To Preclude Argument Regarding List of Documents in Due Diligence Data Room (D.I. 718, Ex. 14 at 15);

6. Plaintiffs' MIL #6: To Preclude Evidence from Bertrand Proust on Alleged Conduct by Plaintiffs (D.I. 718, Ex. 14 at 18);

7. Defendants' MIL #1: To Preclude Accusations that Defendants Withheld or Suppressed Evidence During Discovery (D.I. 718, Ex. 15 at 3);

8. Defendants' MIL #2: To Preclude Counter-Defendants from Asserting Discovery of Fraud as a Basis for Failure to Pay Deferred Installment Payments (D.I. 718, Ex. 15 at 6);

9. Defendants' MIL #3: To Require Plaintiffs to Play Video Recordings of Deposition Testimony When Available, Rather than Reading Transcripts to the Jury (D.I. 718, Ex. 15 at 9);

10. Defendants' MIL #4: To Preclude Inflammatory References to Enron, WorldCom, or Other High-Profile Accounting Scandals (D.I. 718, Ex. 15 at 12);

11. Defendants' MIL #5: To Preclude References to Prior Court Orders, Including Denials of Motion to Dismiss or Partial Exclusion of Defendants' Expert (D.I. 718, Ex. 15 at 14); and

12. Defendants' MIL #6: To Preclude Any Argument or Evidence of Fraud or Misrepresentations Concerning SFI's 2014 Audited Financial Statements (D.I. 718, Ex. 15 at 16).

Each MIL has been fully briefed. (See D.I. 718, Exs. 14, 15). For the following reasons, the Court (1) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #1; (2) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #2; (3) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #3; (4) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #4; (5) DENIES Plaintiffs' MIL #5; (6) GRANTS Plaintiffs' MIL #6; (7) GRANTS Defendants' MIL #1; (8) GRANTS-IN-PART and DENIES-IN-PART Defendants' MIL #2; (9) DENIES Defendants' MIL #3; (10) GRANTS-IN-PART and DENIES-IN-PART Defendants' MIL #4; (11) GRANTS Defendants' MIL #5; and (12) GRANTS Defendants' MIL #6.

## I.   LEGAL STANDARD

A motion *in limine* is designed to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Motions *in limine* allow the court "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 41 at n.2 (1984). "A motion *in limine* is appropriate for 'evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose.'" *Evolved Wireless, LLC v. Apple Inc.*, C.A. No. 15-542-JFB-SRF, 2019 U.S. Dist. LEXIS 37224, 2019 WL 1100471, at *1 (D. Del. Mar. 7, 2019) (quoting *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks necessary specificity with respect to the evidence to be excluded." *Davis v. Spicer*, Civil Action No. 21-874-SRF, 2023 WL 2126150, 2023 U.S. Dist. LEXIS 27627, at *1-2 (D. Del. Feb. 17, 2023).

## II. DISCUSSION

### A. Plaintiffs' MIL #1

Plaintiffs' MIL #1 seeks to preclude argument regarding justifiable or reasonable reliance on Plaintiffs' or Defendants' alleged misrepresentations. (D.I. 718, Ex. 14 at 2). Specifically, Plaintiffs contend that Defendants' Seventh Affirmative Defense, which asserts Plaintiffs' lack of justifiable or reasonable reliance on the alleged misrepresentations, should be precluded because, under Florida law, justifiable or reasonable reliance is not a required element of a fraud claim. (*Id.* at 2-4). Defendants, however, assert that justifiable reliance is a necessary element to prove fraudulent inducement under Florida law. (*Id.* Defs. Opp. at 2-3). As a result, Defendants aver that they should be able to introduce evidence that Plaintiffs did not reasonably or justifiably rely on various alleged misrepresentations. The Court, however, agrees with Plaintiffs.

Under Florida law, the elements required to prove fraudulent misrepresentation or fraudulent inducement are the same. *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. Dist. Ct. App. 2016). Those elements are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis in original) ("*Butler*"). "Justifiable reliance is *not* a necessary element of fraudulent misrepresentation [or inducement]." *Id.* (emphasis added). Therefore, Plaintiffs must prove reliance, but not justifiable reliance.

"Reliance means that a plaintiff has entered a transaction in whole or in part because of the defendant's fraudulent conduct." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022). "More specifically, reliance requires the plaintiff to have received, believed, and acted upon a misrepresentation by the defendant." *Id.* (internal quotation marks and quoted authority omitted). There is, however, "no reliance if the plaintiff is unaware of the defendant's

4

misrepresentation until after the transaction is complete, or if the plaintiff would have acted the same way regardless of whether the defendant had made the misrepresentation." *Id.* Additionally, there is no reliance if the party knew the representation was false or if the representation's falsity was obvious. *Specialty Marine & Indus. Supplies v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011) (citing to *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997)).

As a result, Plaintiffs are required to prove that they relied on the alleged misrepresentations. Defendants may offer rebuttal argument or evidence that proves Plaintiffs did not rely on any alleged misrepresentation because Plaintiffs knew the misrepresentation was false, its falsity was obvious, the misrepresentation was made after the transaction was complete, or that Plaintiffs would have acted the same regardless of the misrepresentation. Also, Defendants may argue that Plaintiffs' reliance on an allegedly fraudulent misrepresentation was *per se* unreasonable because the misrepresentations were disclaimed in a subsequent, comprehensive agreement. *See Vital Pharms., Inc. v. Balboa Capital Corp.*, 2016 U.S. Dist. LEXIS 113942, at *22 (S.D. Fla. Aug. 25, 2016).

Accordingly, to the extent Plaintiffs seek to preclude argument by Defendants that Plaintiffs are required to prove justifiable reliance as an element of their fraud claims, Plaintiffs' MIL #1 is granted. To the extent that Plaintiffs seek to prevent Defendants from offering evidence that Plaintiffs knew of the representation's falsity, or its falsity was obvious, Plaintiffs' MIL #1 is denied.

### B.   Plaintiffs' MIL #2

In Plaintiffs' MIL #2, Plaintiffs move to preclude argument or evidence by Defendants that Plaintiffs should have uncovered the alleged fraud. (D.I. 718, Ex. 14 at 5). Specifically, Plaintiffs aver that "Defendants seek to blame Plaintiffs for not discovering Defendants' frauds" but "Florida law prohibits such argument as a matter of public policy." (*Id.* at 7). Defendants contend that

"Plaintiffs' extensive familiarity with corporate acquisitions, and their access to teams of sophisticated due diligence professionals, are plainly relevant to whether they justifiably relied (or relied at all) on any alleged misrepresentation or omission by Defendants." (D.I. 718, Ex. 14 Defs. Opp. at 4).

The Court finds that Plaintiffs are not required to "allege that they had investigated the truth of the misrepresentations" through due diligence or otherwise. *Butler*, 44 So. 3d at 105; *see also Lorber v. Passick*, 327 So. 3d 297, 306 (Fla. Dist. Ct. App. 2021) (finding that "the body of case law [establishes] that the requisite level of diligent attention is much more lenient in cases concerning fraud."). Indeed, "a recipient [of a fraudulent misrepresentation] may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1980). A recipient of a false representation, however, may not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 997 (adopting the "principle of law" in Sections 540 and 541 of the Restatement (Second) of Torts (1976)) (quoting Rest. (Second) of Torts § 541 cmt. (a)). Therefore, Defendants may not argue or present evidence that Plaintiffs cannot recover because Plaintiffs failed to conduct proper due diligence or investigate the claims thoroughly. Defendants, however, may argue and present evidence that Plaintiffs failed to make a cursory examination or investigation which would have revealed the alleged misrepresentation's falsity.

Accordingly, for the reasons explained above, Plaintiffs' MIL #2 is granted-in-part and denied-in-part.

C.     **<u>Plaintiffs' MIL #3</u>**

Plaintiffs' MIL #3 seeks to preclude argument regarding due diligence. More precisely, Plaintiffs aver that Defendants should not be able to introduce evidence "of the due diligence performed or not performed by Plaintiffs in their purchase of Schratter and from arguing that the due diligence or lack thereof is a defense to the fraud claims." (D.I. 718, Ex. 14 at 9). Plaintiffs are correct insofar as "the scope and extent of Plaintiffs' due diligence efforts do not allow Defendants to escape" from the alleged fraud, but Plaintiffs' request is too broad for this Court to accept in full. (*Id.* at 10).

Several of Plaintiffs' surviving claims depend on alleged misrepresentations made during the diligence process. Therefore, Defendants must be able to present evidence and argument about what was disclosed during due diligence. (*See* D.I. 718, Ex. 14, Defs. Opp. at 7). Specifically, "Plaintiffs' knowledge or conscious disregard of disclosed facts, and their decision not to investigate an alleged misrepresentation are plainly relevant to [the elements of fraud.]." (*Id.* at 8). As a result, Defendants may argue that documents or statements made during diligence "disclose[d] information that Plaintiffs say was kept hidden." (D.I. 718 at 383 (Plaintiffs' Reply)[2]). Defendants may also discuss and present evidence of the due diligence performed by Plaintiffs.

Nevertheless, Defendants must be mindful of the Court's ruling on Plaintiffs' MIL #2. Plaintiffs are not required to prove that they conducted diligence or an investigation into the suspected fraud. (*See* D.I. 718, Ex. 14, Plaintiffs' Reply at 5 ("[A] claim of fraud will lie regardless of whether a party makes any investigation, unless the falsity of the misrepresentations is 'obvious'"). Therefore, Defendants may not argue that a lack of performing more thorough due diligence is a defense to Plaintiffs' fraud claims. (*See* D.I. 718 at 383).

---

[2]   Plaintiffs' Reply in Support of Plaintiffs' Motions *in Limine* is not paginated. Therefore, the Court will refer to the page number as it appears in D.I. 718.

As a result, Plaintiffs' MIL #3 is granted-in-part and denied-in-part.

D. <u>**Plaintiffs' MIL #4**</u>

Plaintiffs' MIL #4 requests that the Court preclude Defendants from introducing, referring to, or using at trial, any documents that purport to show payments made to Alain Voss by either Zausner or Savencia because Defendants failed to produce any such documents in discovery and failed to list any such documents on their exhibit list. (D.I. 718, Ex. 14 at 12). More precisely, "Plaintiffs do not seek a blanket ruling regarding broad categories of documents, but rather [a MIL] as to a small subset of documents that Defendants failed or refused to produce despite agreeing to produce any such documents in their possession, custody, and control." (*Id.* at 13). Defendants concede that they "do not intend to introduce non-existent evidence at trial that undermines their own defenses." (D.I. 718, Ex. 14, Defs. Opp. at 10). Defendants, however, argue that Plaintiffs' MIL #4 should be denied because it seeks to exclude all evidence of Defendants' payments to Voss, including evidence that has been disclosed in discovery and that relates to a "Financing Agreement" for Chocolate Stars. (*Id.* at 11-12).

If Defendants have already produced evidence of payments to Voss, they may use that evidence at trial. If Defendants have previously claimed certain evidence does not exist, and thus failed to produce that evidence, Defendants are precluded from surprising Plaintiffs with that evidence at trial. *See* Fed. R. Evid. 26; Fed. R. Evid. 37. Accordingly, MIL #4 is granted-in-part and denied-in-part.

E. <u>**Plaintiffs' MIL #5**</u>

Plaintiffs' MIL #5 requests that the Court "preclude Defendants from introducing, referring to, or otherwise using at trial, any evidence that purport[s] to show a list of the documents uploaded into the data room." (D.I. 718, Ex. 14 at 15). Plaintiffs assert that Defendants failed to produce a list of the data room documents or its electronically stored information, and that Defendants' Rule

8

30(b)(6) representative testified that he had no "personal knowledge of what documents were in the data room." (*Id.* at 15-16). Defendants, in opposition, contend that they "produced a complete set of the documents that were uploaded into the data room during discovery and have identified all such documents on their trial exhibit list." (D.I. 718, Ex. 14, Defs. Opp. at 13 (citing to D.I. 687, Ex. 1)). Additionally, Defendants assert that their Rule 30(b)(6) representative testified that "Zausner's Chief Information Officer (Ronan Loaec), had provided him with a thumb drive that contained a copy of the data room's contents, and that he had then made that thumb drive available to Defendants' counsel (who, in turn, produced its contents in this action);" and, that Defendants have "timely disclosed to Plaintiffs that they will call Ronan Loaec to testify at trial, who can attest how he copied the contents of the data room onto the thumb drive." (*Id.* at 14).

The Court observes that Plaintiffs do not deny that Defendants "produced all the documents that were in the data room," and instead argue that Defendants did not produce "*the list* of documents uploaded to the data room." (D.I. 718 at 385) (emphasis added). Although Plaintiffs may not have been provided with a list or log of the documents, Plaintiffs were provided with all the documents. Moreover, Plaintiffs will have an opportunity to cross examine Ronan Loaec about the contents of the data room at trial. Therefore, the Court does not find there to be any compelling basis to exclude documents from the data room.

For the aforementioned reasons, Plaintiffs' MIL #5 is denied.

F.   **Plaintiffs' MIL #6**

In Plaintiffs' MIL #6, Plaintiffs assert "Defendants should not be permitted to offer evidence from Bertand Proust on Plaintiffs' alleged conduct after [Plaintiffs'] purchase of Schratter." (D.I. 718, Ex. 14 at 18). Specifically, Plaintiffs seek to exclude evidence relating to a wrongful termination action filed by Proust against Schratter in a Florida state court. (*Id.*). The case was never adjudicated and was settled by Schratter's insurance carrier. (*Id.*).

Defendants, however, assert that evidence regarding Proust's character and termination may be relevant should Plaintiffs challenge his credibility.[3] Likewise, Defendants seek to negate the allegations about Proust in Plaintiffs' Second Amended Complaint which allege that Proust "cooked the books" and aided Voss in breaches of his fiduciary duty. (D.I. 147 ¶¶ 141, 160).

In this Court's Summary Judgment Memorandum Opinion (D.I. 719), the Court granted summary judgment to Defendants on any alleged breaches of Proust's fiduciary duties. (*See* D.I. 719 at 44-45). Therefore, any alleged fraud or breach of fiduciary duty committed by Proust is irrelevant to Plaintiffs' present case. Nonetheless, should Plaintiffs or Defendants call Proust as a witness to testify, then Proust's "reputation for having a character of truthfulness or untruthfulness" may be admissible, but only if his character for truthfulness has been attacked. Fed. R. Evid. 608(a). Importantly, though, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."[4] Fed. R. Evid. 608(b).

Consequently, neither Plaintiffs nor Defendants may use the Florida lawsuit, or the allegations therein, to impeach Proust or Plaintiffs' representatives. Such "unsubstantiated accusations" "are not admissible for impeachment purposes because they have little to no probative value and pose a substantial risk of prejudice." *McGill v. Whitney Museum of Am.*

---

[3] Defendants theorize that Plaintiffs will characterize Proust as a "bad apple" who was eventually fired for unethical workplace behavior. (D.I. 718, Ex. 14, Defs. Opp. at 18). Defendants seek to utilize the separate lawsuit in Florida, however, to argue that Proust "was fired not because of unprofessional conduct, but because he refused to engage in misconduct." (*Id.*).

[4] Extrinsic evidence may be admissible, however, to demonstrate that the witness is biased or not credible. *See United States v. Burnette*, 65 F.4th 591, 606-607 (11th Cir. 2023) ("observing that "the distinction between a witness's credibility or bias, on the one hand, and his character for truthfulness, on the other, is real, as both the Supreme Court and [the Eleventh Circuit] have recognized.").

*Art.*, 217 N.Y.S.3d 851, Misc. LEXIS 6709, at *16 (N.Y.S. 2024); *see also Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (supporting the proposition that mere existence of a lawsuit does not evidence wrongdoing). The Court finds that the probative value of any such evidence is substantially outweighed by the risk of undue prejudice and confusion of the jury under Federal Rule of Evidence 403.

Therefore, for the reasons explained herein, Plaintiffs' MIL #6 is granted.

### G.     Defendants' MIL #1

Defendants' MIL #1 seeks to preclude accusations that Defendants withheld or suppressed evidence during discovery. (D.I. 718, Ex. 15 at 3). Specifically, Defendants assert that the Court "should not permit Plaintiffs to make arguments that Defendants have withheld or suppressed evidence of 'secret' payments to Alain Voss (which is false, as no such payments were ever made)." (*Id.*). Plaintiffs, however, contend that evidence of payments to Voss does exist. For example, "Defendants agreed in writing to pay millions of dollars as a bonus to Voss on the sale of Schratter and its affiliate, Corman Ship Supplies, LLC." (D.I. 718, Ex. 15, P. Opp. at 2-3).

Allegations that a party has withheld or suppressed evidence are serious. Accordingly, "[w]hen a party alleges that evidence was withheld, they must present 'evidence that the documents are withheld, rather than - for instance - misplaced,' and '[w]ithholding requires intent.'" *Kaisinger v. Walmart Stores, Inc.*, C.A. No. 18-855, 2024 WL 1536040, 2024 U.S. Dist. LEXIS 64365, at *6 (E.D. Pa. Apr. 9, 2024) (quoting *Bull v. UPS*, 665 F.3d 68, 79 (3d Cir. 2012)). There is no evidence that Defendants either withheld or suppressed evidence. "Zausner and Savencia have produced sworn interrogatory responses confirming that no such bonuses were ever paid to Voss, Voss has testified under oath in accord, and there is no evidence to the contrary." (D.I. 718, Ex. 15 at 4 (citing to D.I. 653, Ex. 16; D.I. 653, Ex. 17 at 84:4-86:9, 94:22-95:4, 316:24-317:1; D.I. 653, Ex. 62)). Furthermore, the Court finds that unsubstantiated allegations that

Defendants suppressed evidence would be "unnecessarily prejudicial" to Defendants. *See Zausner Foods Corp. v. Blandin*, Case No. 1:22-cv-22660, D.I. 176 at 8-9 (S.D. Fla. Apr. 9, 2024) (holding same). Thus, for the aforementioned reasons, Defendants' MIL #1 is granted.

### H. Defendants' MIL #2

Defendant Zausner, as Counter-Plaintiff, alleges that ECB and Atlantic failed to pay Zausner $6.1 million in deferred installment payments required by the Stock Purchase Agreement ("SPA"). Defendant Zausner's MIL #2 seeks to preclude Plaintiffs/Counter-Defendants from asserting the discovery of fraud as a basis or affirmative defense for their failure to pay the deferred installment payments. (D.I. 718, Ex. 15 at 6). Defendants assert that Plaintiffs may not maintain this defense because Plaintiffs' superseded allegations indicate that Plaintiffs became aware of the fraud in 2015, which was significantly before the payments were due on December 31, 2016. (*Id.*).

Plaintiffs, in opposition, argue "Defendants' argument has nothing to do with evidentiary matters and instead seeks to address a factual and legal matter . . .." (D.I. 718, Ex. 15, P. Opp. at 411). Plaintiffs also assert that "Defendants conflate allegations regarding non-payment of bills with allegations regarding frauds related to the offices, authority, and status of Voss." (*Id.* at 6).

In the Court's Summary Judgment Memorandum Opinion (D.I. 719), the Court determined that Plaintiffs were on inquiry notice of the alleged SPA fraud and their breach of contract claims in January 2015. The Court's findings aligned with the later-retracted statements in Plaintiffs' superseded complaint. (*See* D.I. 719 at 52). To the extent that Plaintiffs seek to argue that they were unaware of the fraud prior to December 31, 2016, they cannot. To the extent Plaintiffs seek to argue that they knew of the fraud prior to that time, but that their knowledge of fraud led them not to make the deferred installment payment, they may do so.

Therefore, the Court grants-in-part and denies-in-part Defendants' MIL #2.

### I.     <u>Defendants' MIL #3</u>

Defendants' MIL #3 seeks to require Plaintiffs to play video recordings of all available deposition testimony rather than allowing Plaintiffs to read the deposition transcripts to the jury. (D.I. 718, Ex. 15 at 9). To support their motion, Defendants reference Federal Rule of Civil Procedure 32(c), which provides:

> Unless the court orders otherwise, a party must provide a transcript of any deposition testimony the party offers, but may provide the court with the testimony in nontranscript form as well. On any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form, if available, unless the court for good cause orders otherwise.

Fed. R. Civ. P. 32(c).

Defendants request that the Court require Plaintiffs to play the video recordings of the depositions because "the jury's ability to act as a finder of fact will be materially impaired if it cannot hear a witness's verbal cues and observe their body language as they deliver testimony." (D.I. 718, Ex. 15, Defs. Replies at 3).

Plaintiffs rebut that the "Court has good cause not to require Plaintiffs to offer video deposition testimony in this case." (D.I. 718, Ex. 15, P. Opp. at 10). That is, the Court "has limited time for this trial and has limited the amount of time each side may use to make its evidentiary presentation." (*Id.*). Furthermore, in this particular case, there are several witnesses who "either do not speak English fluently or speak slowly" and thus reading their deposition testimony would be clearer and more expeditious. (*Id.*).

Although it is true that "[p]laying a video deposition is superior to reading a deposition because the jury gets to see and hear the witness testify," the Court is loathsome to dictate the manner in which Plaintiffs present their case to the jury. *Stollings v. Ryobi Techs., Inc.*, 08 C 4006, 2015 WL 4100479, at *5 (N.D. Ill. July 6, 2015). Further, the Court finds good cause to

allow Plaintiffs to present the deposition testimony by reading it aloud because Plaintiffs have proffered that the videotaped depositions are lengthy and that several deponents spoke slowly and with difficulty due to language barriers. Moreover, if Defendants choose to do so, Defendants may play the video recordings of the same deposition testimony that Plaintiffs read to the jury, for either impeachment or credibility purposes.

For those reasons, Defendants' MIL #3 is denied.

### J. **Defendants' MIL #4**

In Defendants' MIL #4, Defendants request that the Court preclude any inflammatory references to Enron, WorldCom, or other high-profile accounting scandals. Specifically, Defendants assert that references to "high-profile and large-scale global accounting scandals . . . would only serve to confuse and inflame the jury." (D.I. 718, Ex. 15 at 12). Plaintiffs, in their opposition, contend that they should not be precluded from referencing accounting scandals because an email amongst Defendant Zausner's representatives included an attachment of an article that discussed the Enron scandal.[5] (D.I. 718, Ex. 15, P. Opp. at 12). The email with the Enron article attached also referenced an upcoming financial audit. (*Id.*). Plaintiffs, therefore, assert that they should be able to question the email's sender about his reasons and intent for attaching the Enron article. Defendants, however, do not seek to exclude Plaintiffs from questioning the email's sender and recipient about the email attachment. (D.I. 718, Defs. Reply at 4). Rather, Defendants "are moving to exclude" "anything beyond that," such as "open-ended questioning of other witnesses about high-profile scandals that have nothing to do with this case." (*Id.*).

---

[5] More specifically, "Zausner's President, attached an article about accounting scandals to an email to J. Wild on December 15, 2014 (PTX-137), just nine days after the parties signed the SPA and sixteen days before it closed." (D.I. 718, Ex. 15, P. Opp at 12).

The Court will grant-in-part and deny-in-part Defendants' MIL #4. In a related action between Defendant Zausner and one of Plaintiffs' Representatives, Claude Blandin, the Southern District of Florida addressed the same motion *in limine*. In doing so, it reasoned:

> Here, while the email message and its attachment presented by Defendants is likely prejudicial in referencing scandal-ridden Enron, it is also highly probative in providing context to the otherwise vague email message and supporting Defendants' opposition to Plaintiff's case-in-chief. Accordingly, to the extent Plaintiff seeks to exclude references to Enron and related content present in the article attached to the email, Plaintiff's motion in limine is denied.

*Zausner Foods Corp. v. Blandin*, C.A. No. 22-22660-CIV-SINGHAL, D.I. 176 at 9-10 (S.D. Fla. Apr. 9, 2024).

The Court agrees with the Southern District of Florida's reasoning. Plaintiffs may question witnesses with relevant personal knowledge about the email, produced in discovery, about the email and its contents. Plaintiffs, however, may not reference Enron, WorldCom, or other high profile accounting scandals beyond that to draw prejudicial analogies. *See, for example, CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 591, 605-06 (N.D. Ill. 2009) (granting the defendants' motion in limine to exclude references to Enron or WorldCom because any evidence of those scandals is irrelevant and, "even if relevant, highly prejudicial"); *see also United States v. Wittig*, No. 03-40142JAR, 2005 WL 1227938, at *4 (D. Kan. May 23, 2005) (ruling that counsel could not mention Enron, WorldCom, or similar scandals in openings, direct examination, cross examination, arguments, or objections before the jury).

### K. **Defendants' MIL #5**

Defendants' MIL #5 seeks to preclude references to this Court's prior orders that "(1) denied Defendants' motions to dismiss, (2) excluded the affirmative expert testimony of Alan Lee, and (3) permitted discovery on Defendants' financial net worth based on Plaintiffs' fraud claims, which are the subject of Defendants' pending motion to bifurcate." (D.I. 718, Ex. 15 at 14).

Defendants assert that evidence or argument about prior rulings run afoul of Federal Rule of Evidence 403. (*Id.*) Plaintiffs do not oppose Defendants' MIL #5 "so long as Defendants do not open the door to permit presentation of argument of the orders." (D.I. 718, Ex. 15, P. Opp. at 14).

Generally, a court's prior rulings have little, if any, probative value or relevance in a jury trial. *See Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, 2018 WL 2186677, 2018 U.S. Dist. LEXIS 79518, at *3 (D. Del. May 11, 2018). Additionally, evidence of prior rulings "by virtue of their having been made by a judge, would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1186 (E.D. Pa. 1980); *see also Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-LPS, 2021 WL 5275780, at *2 (D. Del. Nov. 10, 2021) ( "Even assuming there would be some probative value in the value in informing the jury of the Court's prior rulings, that value would be substantially outweighed by the countervailing concerns of [FRE] 403 including confusing the jury, wasting time, and unfairly prejudicing [the opposing party.]"). Therefore, the Court grants Defendants' MIL #5.

### L. Defendants' MIL #6

Defendants' MIL #6 requests the Court to preclude any evidence of fraud or misrepresentations concerning Schratter's 2014 Audited Financial Statements ("the audited financial statements"). (D.I. 718, Ex. 15 at 16). First, Defendants aver that the audited financial statements are irrelevant to Plaintiffs' fraud claims because the audited financial statements were not provided to Plaintiffs until after the SPA was signed. (*Id.* at 16). Accordingly, Plaintiffs may not argue that the audited financial statements induced them to execute the SPA. Second, the audited financial statements are not relevant to Plaintiffs' breach of contract claim (Count I) because the SPA expressly disclaimed reliance on extrinsic documents. (*Id.* at 17). Third, "SFI's

audited financial statements are irrelevant to Plaintiffs' conspiracy or aiding and abetting claims (Counts VI-IX) because there is no evidence showing Defendant Savencia had any involvement in preparing the [audited] financial statements, nor that Zausner aided and abetted or conspired as to anything regarding them." (*Id.* at 18).

In response, Plaintiffs assert that the audited financial statements are "highly relevant to Plaintiffs' fraud and conspiracy to commit fraud and constructive fraud claims." (D.I. 718, Ex. 15, P. Opp. at 16). Specifically, Plaintiffs intend to argue that the audited financial statements "induced Plaintiffs to enter into negotiations with Defendants that culminated in the First Amendment [to the SPA] and the $15 million payment." (*Id.*).

Following the Court's Summary Judgment Memorandum Opinion (D.I. 719), the only issues remaining in the case involve alleged misrepresentations about Voss's former role at Schratter. Therefore, the relevance of the audited financial statements is not apparent to the Court. (*See, e.g.*, D.I. 718, Ex. 15, Defs. Reply at 6 (observing that the allegations about "the continued employment of Alain Voss . . . [does not have] anything to do with SFI's 2014 audited financial statements."); *see also* Fed. R. Evid. 401. Accordingly, the Court grants Defendants' MIL #6.

## III. CONCLUSION

For the reasons articulated above, the Court: (1) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #1; (2) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #2; (3) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #3; (4) GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' MIL #4; (5) DENIES Plaintiffs' MIL #5; (6) GRANTS Plaintiffs' MIL #6; (7) GRANTS Defendants' MIL #1; (8) GRANTS-IN-PART and DENIES-IN-PART Defendants' MIL #2; (9) DENIES Defendants' MIL #3; (10) GRANTS-IN-PART and DENIES-IN-PART Defendants' MIL #4; (11) GRANTS Defendants' MIL #5; and (12) GRANTS Defendants' MIL #6.

IT IS SO ORDERED this 13th day of February 2025.

_____
THE HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE