**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ECB USA, INC., and ATLANTIC VENTURES CORP.,

Plaintiffs,

v.

SAVENCIA, S.A., and ZAUSNER FOODS CORP., on behalf of itself, and as successor in interest to ZNHC, INC.,

Defendants.

ZAUSNER FOODS CORP., on behalf of itself, and as successor in interest to ZNHC, INC.,

Counterclaim-Plaintiff,

v.

ECB USA, INC., and ATLANTIC VENTURES CORP.,

Counterclaim-Defendants.

Civil Action No. 19-731-GBW-CJB

---

Thomas G. Macauley, MACAULEY LLC, Wilmington, DE; Joel S. Magolnick, John E. Kirkpatrick, MARKO & MAGOLNICK, P.A., Miami, FL.

*Counsel for Plaintiffs/Counterclaim-Defendants*

Jody C. Barillare, Brian F. Morris, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Troy S. Brown, Su Jin Kim, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, PA; Michael J. Ableson, MORGAN, LEWIS & BOCKIUS LLP, New York, NY.

*Counsel for Defendants and Counterclaim Plaintiff*

**MEMORANDUM OPINION**

November 5, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are the Motion for New Trial (D.I. 763) ("Plaintiffs' Motion") filed by ECB USA, Inc., ("ECB") and Atlantic Ventures Corp. ("Atlantic") (collectively, "Plaintiffs" or "Counterclaim-Defendants") and the Motion to Amend/Correct Judgment (D.I. 766) ("Defendants' Motion") filed by Savencia, S.A., ("Savencia") and Zausner Foods Corp. ("Zausner" or "Counterclaim-Plaintiff") (collectively, "Defendants"). For the reasons set forth below, the Court DENIES Plaintiffs' Motion and GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion.

## I. BACKGROUND

### A. Pre-Trial History

In light of the lengthy record in this action, which was brought on October 24, 2018 (D.I. 1), the Court will only discuss the procedural issues relevant to Plaintiffs' Motion and Defendants' Motion.

This case centers on Plaintiffs' corporate acquisition of Schratter Foods Inc. ("Schratter"), pursuant to a Stock Purchase Agreement ("SPA"), followed by Schratter's subsequent collapse into insolvency, and Plaintiffs' alleged discovery of a fraudulent insider conspiracy by Defendants to dupe Plaintiffs into purchasing Schratter. In Plaintiffs' Second Amended Complaint ("SAC") (D.I. 147), Plaintiffs alleged that Defendants engaged in a conspiracy to defraud Plaintiffs by (1) misrepresenting Schratter CEO Alain Voss's ("Mr. Voss") abilities and responsibilities at Schratter prior to the acquisition, which induced Plaintiffs to partner with Mr. Voss and retain him as CEO of Schratter and the president of Atlantic after the acquisition, which Mr. Voss exploited by "drain[ing] Schratter of its assets and driv[ing] it into insolvency" (the "Inside Man Fraud"),

(2) inducing Plaintiffs to purchase Schratter at a grossly inflated price (the "Stock Purchase Fraud"), and (3) wrongfully causing Schratter to revoke and forfeit substantial pricing discounts and rights in June 2015 without the consent of Plaintiffs (the "Distribution Agreement Fraud"). *See* D.I. 147 ¶¶ 26-36. Plaintiffs asserted nine (9) counts in the SAC related to these allegations, including breach of contract against Zausner (Count I), fraud against Defendants (Counts II, III, IV, and V), aiding and abetting a breach of fiduciary duty against Defendants (Counts VI and VII), conspiracy to commit breach of fiduciary duty against Defendants (Count VIII), and conspiracy to commit fraud and constructive fraud against Defendants (Count IX). *See id.* ¶¶ 170-255. Counterclaim-Plaintiff Zausner asserted three (3) counts of breach of contract and one (1) count of breach of the implied covenant of good faith and fair dealing related to Counterclaim-Defendants' alleged failure to satisfy $6,100,000 in payment obligations under the SPA and related agreements. *See* D.I. 223 at 100-105.

The parties' estimates of the length of the trial in this case varied over time. When the parties first filed a Joint Proposed Scheduling Order, the parties anticipated that the trial could last more than ten (10) days. D.I. 27 at 9. Then, following a scheduling conference on April 13, 2020, Magistrate Judge Christopher Burke issued a scheduling order, setting the length of the trial at five (5) days. D.I. 121 at 12. On October 18, 2021, Judge Burke issued an amended scheduling order, scheduling the trial for seven (7) days. D.I. 202 at 12. On October 21, 2024, Plaintiffs moved to set a trial date, over Defendants' objection. *See* D.I. 632; D.I. 633; D.I. 634. Judge Burke granted that motion and scheduled a five-day timed trial to begin on February 18, 2025. D.I. 636. Plaintiffs objected and moved to add two additional days to the trial length. *See* D.I. 639. On February 6, 2025, the Court denied that motion. D.I. 721.

The same day, February 6, 2025, the Court ruled on several Motions for Summary Judgment filed by Defendants. *See* D.I. 719. The Court held, *inter alia*, as follows. *First*, Counts II and IV of the SAC were barred by Florida's independent torts doctrine. *See id.* at 9-11. *Second*, Defendants were entitled to summary judgment on Plaintiffs' theories of Distribution Agreement Fraud and Stock Purchase Fraud. *See id.* at 15-18. *Third*, Delaware's statute of limitations barred Count I of the SAC and partially barred Plaintiffs' other claims (Counts II-IX), to the extent that those claims arose out of alleged misrepresentations in the SPA. *See id.* at 42-53.

On February 13, 2025, the Court held a pre-trial conference. *See* D.I. 765-2, Ex. B (pre-trial conference transcript). There, the Court allocated sixteen (16) hours for the trial, including objections, split evenly between Plaintiffs and Defendants. *Id.* at 5:19-21. Plaintiffs objected, reminding the Court that the trial had previously been scheduled for five (5) days. *Id.* at 5:22-23, 6:2-3. The Court replied that the new allocation was adjusted based on the Court's rulings on Defendants' Motions for Summary Judgment. *Id.* at 5:24-25. Plaintiffs protested, arguing that the Court's rulings had not significantly narrowed the factual issues.[1] *Id.* at 6:15-23. The Court replied that it felt that the allocation was sufficient based on the Court's experience, e.g., trying complex multi-patent cases with allocations of ten hours per side. *Id.* at 6:24-25, 7:1-4.

On February 17, 2025, Plaintiffs renewed their objection to the sixteen-hour time allocation. D.I. 745. Plaintiffs contended that the sixteen-hour time limit was so highly prejudicial to Plaintiffs that Plaintiffs' due process rights would be denied. *Id.* at 1-2. Plaintiffs emphasized

[1] Plaintiffs indicated that they intended to raise "prior breach" as an affirmative defense under Florida law to Counterclaim-Plaintiffs' breach of contract claims against Plaintiffs/Counterclaim-Defendants. D.I. 765-2, Ex. B, at 6:15-23. Plaintiffs explained that the "prior breach" defense implicated factual issues that were similar to the issues that Plaintiffs' (then-dismissed) breach of contract claim would have involved. *Id.* at 6:15-23; 9:4-23. Thus, Plaintiffs believed that the Court's rulings on Defendants' Motions for Summary Judgment (D.I. 719) had not significantly narrowed the factual issues for trial. *Id.* at 6:15-23.

that they anticipated examining fourteen (14) witnesses and using fifty (50) exhibits in their case-in-chief, excluding additional examination and evidence used to rebut Defendants' counterclaims. *Id.* at 4. Plaintiffs averred that they could not effectively present the evidence necessary to prove their case and rebut Defendants' counterclaims in just eight hours. *Id.* at 5. On February 18, 2025, before the start of trial, the Court overruled Plaintiffs' objection, stating that the Court made an informed decision in limiting the trial time after carefully reviewing the parties' proposed witness lists, proffered testimony, and the remaining claims, counterclaims, and defenses. D.I. 746.

### B. Trial and the Jury's Verdict

The trial began on February 18, 2025. *See* D.I. 765-3, Ex. C (February 18, 2026, Trial Transcript). On February 21, 2025, the jury returned a unanimous verdict in favor of Defendants, finding Defendants not liable on Counts II-IX of Plaintiff's SAC and finding Plaintiffs/Counterclaim-Defendants liable for breach of contract and breach of the implied covenant of good faith and fair dealing, awarding Counterclaim-Plaintiff Zausner $6,100,000 in damages. *See* D.I. 749. On March 31, 2025, the Court entered judgment for Defendants in accordance with the jury's verdict. D.I. 758.

On April 28, 2025, Plaintiffs filed Plaintiffs' Motion for New Trial (D.I. 763), which has been fully briefed. *See* D.I. 764; D.I. 765; D.I. 770; D.I. 773. On the same date, Defendants filed Defendants' Motion to Amend/Correct the Judgment (D.I. 766), which has been fully briefed. *See* D.I. 767; D.I. 769; D.I. 774. The Court now resolves these outstanding motions.

## II. LEGAL STANDARD

### A. Motion for New Trial

After a jury trial, a federal district court has discretion to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). However, a court should grant a motion for a new trial only

when allowing a verdict to stand would result in a miscarriage of justice. *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). In other words, a court should not disturb a verdict unless the verdict, "on the record, cries out to be overturned or shocks [the court's] conscience." *Id.* at 1353 (citing *EEOC v. Delaware Dep't of Health & Social Serv.*, 865 F.2d 1408, 1413 (3d Cir. 1989)).

"In considering a new trial motion, the district court must 'view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.'" *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199, 261 (D. Del. 1999) (quoting *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984)), *aff'd sub nom. Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001). "To uphold the verdict, the district court only needs to determine that the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Id.* (citing *Dawson v. Chrysler Corp.*, 630 F.2d 950, 959 (3d Cir. 1980)). A court cannot grant a motion for new trial based on harmless error. *See* Fed. R. Civ. P. 61.

## III. DISCUSSION

Plaintiffs' Motion seeks that the Court set aside the jury's verdict and order a new trial. *See generally* D.I. 764. Defendants' Motion seeks that the Court amend its judgment based on the jury's verdict. *See generally* D.I. 766. Thus, the Court first considers Plaintiffs' Motion to determine whether the underlying verdict will stand before turning to Defendants' Motion.

### A. Plaintiffs Are Not Entitled to a New Trial.

Plaintiffs move for a new trial on three grounds. *First*, Plaintiffs contend that the Court's "strict and inflexible time-limitation in this case violated due process and effectively deprived Plaintiffs of their vital constitutional right" to a fair trial. D.I. 764 at 21. *Second*, Plaintiffs assert that the jury's verdict was contrary to the weight of the evidence and resulted in a substantial injustice. *Id.* at 26. *Third*, Plaintiffs aver that the Court erroneously overruled Plaintiffs'

objections to (1) testimony that Schratter failed to pay certain debts to Savencia Cheese and (2) testimony by Pierre Ragnet ("Mr. Ragnet") that Mr. Ragnet believed that another defense witness, J. Wild, was credible. The Court addresses each argument in turn.

### 1. **Plaintiffs Had Sufficient Time to Present Their Claims and Defenses.**

Plaintiffs contend that the Court's sixteen-hour time limitation for the trial violated Plaintiffs' due process rights by depriving Plaintiffs of their constitutional right to a fair trial. *See* D.I. 764 at 21. Plaintiffs assert that, by imposing the sixteen-hour limit, the Court forced Plaintiffs to abandon their initial trial strategy and reformulate a new strategy on the eve of trial. *See id.* at 22. Plaintiffs state that this reformulation caused Plaintiffs to significantly reduce the amount of testimony that they planned to elicit, leaving Plaintiffs just enough time to make a "barebones *prima facie* showing of fraud." *See id.*; *see also* D.I. 765 (declaration by Plaintiffs' trial counsel regarding the evidence Plaintiffs would have presented if they had more time). Plaintiffs further claim that the sixteen-hour limit prevented Plaintiffs from effectively exploring Defendants' witnesses' contradictory testimony. *See* D.I. 764 at 19. Defendants reply that the sixteen-hour limit was sufficient to try the case, and Plaintiffs were not prejudiced by it. *See* D.I. 770 at 19-24. Defendants essentially contend that Plaintiffs mismanaged their time by repeating testimony and argument unnecessarily. *See id.* For the reasons given below, the Court agrees with Defendants.

As a preliminary matter, the Court considers the legal basis for Plaintiffs' argument. The Court notes that Plaintiffs do not cite any case where the relief they seek (i.e., a new trial based on insufficient trial time) was granted. *See generally* D.I. 764 at 21-26; D.I. 773 at 3-10. However, Plaintiffs cite *In re Baldwin*, 700 F.3d 122, 129 (3d Cir. 2012), and *McKnight v. Gen. Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990), where courts alluded to the possibility that a new trial might be granted based on unreasonably strict trial time limits. Accordingly, the Court considers whether the sixteen-hour time limit the Court set in this case was appropriate. In doing so, the

Court observes that the actual length of the trial was four (4) days. *See* D.I. 756-3, Ex. C, at 2:15-16 (trial beginning at 9:00 a.m. on February 18, 2025); D.I. 756-6, Ex. F, at 912:11-12, 914:3-4 (trial ending on February 21, 2025, with jury beginning deliberations at 12:35 p.m. and returning a verdict at 5:37 p.m.), 829:19-20 (Plaintiffs' counsel observing during closing argument, "[w]e've been here for four days"). Thus, Plaintiffs' challenge to the trial time is essentially an argument that the reduction of trial length from five days (the length Plaintiffs requested) to four (the actual length of the trial following the sixteen-hour limit) deprived Plaintiffs of their right to a fair trial.

The Third Circuit has "recognized that a district court may impose limits on the parties' presentation time at trial, so long as the court both makes an informed analysis based on a review of the parties' proposed witness lists and proffered testimony and allocates trial time evenhandedly." *In re Baldwin*, 700 F.3d at 129 (internal marks omitted) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir. 1995)). Here, the Court did so. *See* D.I. 746 ("[I]n this case, the Court has made an informed analysis in limiting the time that each side has to make their trial presentation after carefully reviewing the parties' proposed witness lists, the proffered testimony, and the remaining claims, counterclaims, and defenses."). Specifically, the Court considered the fact that its rulings on Defendants' Motions for Summary Judgment (D.I. 719) and Defendants' motions *in limine* (D.I. 737) significantly reduced the scope of Plaintiffs' case. Namely, the Court dismissed Plaintiffs' breach of contract claim (Count I of the SAC) and Plaintiffs' other claims (Counts II-IX) to the extent that those claims related to Defendants' misrepresentations in the SPA ("Stock Purchase Agreement Fraud") or regarding the distribution agreement ("Distribution Agreement Fraud"). *See* D.I. 719 at 61. Thus, the success of Plaintiffs' claims at trial hinged completely on whether Plaintiffs could prove the "Inside Man Fraud." *See id.* That theory turned on proof that (1) Defendants misrepresented Mr. Voss's role

at Schratter in 2014, and (2) Plaintiffs relied on that misrepresentation and suffered damages as a result. *See id.* at 19-24. The Court assessed, based on Plaintiffs' offer of proof pretrial and proposed witness list, that eight (8) hours was sufficient for Plaintiffs to pursue those issues and their affirmative defenses. *See* D.I. 718 (Pretrial Stipulation and Order filed before the pre-trial conference); D.I. 718-1, Ex. 9 (Plaintiffs' Witness List), Ex. 13 (Plaintiffs' Statement of Intended Proof).[2] Thus, the Court made an informed decision in accordance with *In re Baldwin* and *Duquesne* to limit the time for trial to incentivize all parties to streamline their cases for the benefit of the jury by reducing cumulative evidence.

While Plaintiffs contend that they barely had enough time to present a "barebones" case, the Court observes that Plaintiffs chose to present a significant amount of cumulative evidence at trial. For example, Plaintiffs chose to walk multiple witnesses through the fact that Defendants represented that Alain Voss was the CEO of Schratter and managed it day-to-day, which Defendants did not dispute either before or during trial. *See supra* n.2; D.I. 765-3, Ex. C, at 173:23-181:8, 182:17-185:8; D.I. 765-4, Ex. D, at 493:24-496:6. Plaintiffs also walked multiple witnesses through the "Schratter Employment Letter"[3] and the fact that it was not provided to Plaintiffs

---

[2] Plaintiffs' Statement of Intended Proof (D.I. 718-1, Ex. 13) repeated evidence or argument many times. For example, Plaintiffs proffered many different forms of evidence to prove the same point: that Defendants represented to Plaintiffs that Mr. Voss had the ordinary powers of a CEO while at Schratter during 2014 when, Plaintiffs asserted, Mr. Voss did not have such powers. *See, e.g.*, D.I. 718-1, Ex. 13 ¶¶ 26, 29-30, 32, 40-42, 46-49, 52, 54, 56-73, 79, 90-92, 103, 114, 119-20, 158-60. Critically, **Defendants did not dispute that they represented to Plaintiffs that Mr. Voss was the CEO of Schratter because Defendants contended that the representation was true**. *See, e.g.*, D.I. 694 (Defendants' Second Amended Answer) ¶¶ 20, 28 ("It is admitted . . . that Voss was president and CEO of [Schratter]."); D.I. 718 ¶ 73. Thus, much of the evidence Plaintiffs proffered went to an undisputed fact.

[3] This was Plaintiffs' key document in the case (JTX-9). It purportedly stripped Alain Voss of some of his powers as CEO and made J. Wild the "de facto CEO" of Schratter. *See* D.I. 663-1, Ex. 5, at "Attachment 1." The relevant portion of the document was a single page. *See id.*

during the due diligence process prior to closing the Schratter acquisition, which Defendants also did not dispute. *See, e.g.*, D.I. 765-3, Ex. C, at 199:17-20, 204:7-10; D.I. 765-4, Ex. D, at 295:23-296:10, 344:6-16, 387:2-18. Indeed, Plaintiffs claim that they were "unable to publish, put into context, and dissect the key June 30 'Employment Letters'," D.I. 765 ¶ 47, yet Plaintiffs exhaustively explored those documents at trial.[4] Therefore, Plaintiffs' argument suggests to the Court that, given more time, Plaintiffs would have presented even more cumulative evidence.

Plaintiffs rely primarily on *In re Baldwin* to support their argument, but *In re Baldwin* is factually distinguishable. It is true that, in a footnote in *In re Baldwin*, the Third Circuit suggested that the district court should reconsider its time limit of 7.5 hours per side given the situation in that case. *See In re Baldwin*, 700 F.3d at 129 n.5. However, that situation was unlike the instant case. Here, unlike in *In re Baldwin*, there were not "sixteen named defendants." *Id.* at 124 n.2. There were two Plaintiffs/Counterclaim-Defendants and two Defendants (one of which was the Counterclaim-Plaintiff). Likewise, the parties here did not have to navigate complexities akin to "different liability rules and defenses applicable to defendants who were members of the board of directors versus defendants who were officers of the non-profit entity." *Id.* Despite the procedural length of this case, the legal and factual issues at trial were not complex. Although Plaintiffs asserted eight (8) counts related to fraud and breach of fiduciary duty, *see* D.I. 744 ¶ 6, those claims turned on the same core factual issues of whether Defendants misrepresented (1) Mr. Voss's competence and responsibilities, (2) the financial situation of Schratter, and (3) any secret

---

Plaintiffs discussed the letter with multiple witnesses during trial. *See, e.g.*, D.I. 763-3, Ex. C, 231:9-233:21; D.I. 765-4, Ex. D, at 308:13-309:18, 329:3-340:2.

[4] *See, e.g.*, D.I. 765-3, Ex. C, at 104:24-107:23, 119:19-120:4, 185:17-19, 199:17-204:16; D.I. 765-4, Ex. D, at 308:13 21, 329:3-340:2, 343:11-344:17, 376:24-379:12, 413:12-414:1, 420:23-426:6, 502:1-9; D.I. 765-5, Ex. E, at 590:9-591:25, 644:20-647:4, 720:23-722:18; D.I. 765-6, Ex. F, at 809:1-810:5, 815:6-817:7.

payments to Mr. Voss. While Plaintiffs/Counterclaim-Defendants also sought to prove affirmative defenses, most of those affirmative defenses depended on the same proof of Zausner/Counterclaim-Plaintiff's fraud or bad faith.[5] *See* D.I. 230 at 72. Plaintiffs had sufficient time to—and did—introduce evidence on each of those points at trial. Thus, this case is distinguishable from *In re Baldwin*.

For the foregoing reasons, the Court concludes that the sixteen-hour limit on trial time was appropriate and did not result in a miscarriage of justice. Therefore, the Court declines to overturn the jury's verdict and order a new trial.

**2. The Jury's Verdict Was Consistent with the Evidence.**

Plaintiffs next contend that the Court should order a new trial because the jury's verdict was contrary to the weight of the evidence.[6] Specifically, Plaintiffs assert that the evidence at trial established that (1) Defendants owed a duty to disclose all material facts and information related to the SPA and (2) Defendants failed to do so. *See* D.I. 764 at 27-29. Defendants respond that this case turned on the issue of materiality—i.e., whether the documents that Defendants admitted that they did not disclose to Plaintiffs, including Mr. Voss's "June 30 Employment Letters," a "June 23 Report to the Executive Committee," and related documents ("Undisclosed Documents"),

[5] The Court agrees with Plaintiffs that Plaintiffs did not spend significant time exploring alleged breaches of the SPA to support Plaintiffs' affirmative defense based on "prior breach" at trial. However, the Court does not agree that Plaintiffs had insufficient time to do so. Rather, the Court concludes that Plaintiffs chose to devote significant time to unnecessary presentation of cumulative evidence on undisputed points, *see supra*, instead of their affirmative defenses.

[6] Plaintiffs briefly advance a separate argument that "the verdict form removed issues related to reliance and damages from the jury's consideration." D.I. 764 at 27. Plaintiffs base this contention on the fact that Questions 2 and 3 on the verdict form asked, first, whether Defendants had committed fraud and, second, whether that fraud was the cause of Plaintiffs' damages. *See* D.I. 749 at 3-4. The Court disagrees. The Court instructed the jury on the elements of fraud, including reliance and damages. *See* D.I. 765-6 at 873:12-874:8. Thus, the jury could consider reliance, damages, and causation in answering Questions 2 and 3 on the verdict form.

were material to Plaintiffs' decision to sign the SPA and partner with Mr. Voss in acquiring and managing Schratter. *See* D.I. 770 at 24-25. Defendants therefore contend that the jury's verdict was not contrary to the weight of the evidence because the jury could reasonably have found that the Undisclosed Documents were not material and/or that Plaintiffs did not rely on the Undisclosed Documents for a variety of reasons. *See id.* at 25-26.

The Court agrees with Defendants. Plaintiffs spent a significant amount of their time at trial emphasizing the undisputed content of the Undisclosed Documents and the fact that they were not disclosed. *See supra* nn. 2-4. Rather than contesting that evidence, Defendants presented evidence that the Undisclosed Documents were not material because (1) the information contained in the Undisclosed Documents was available to Plaintiffs through other disclosures, (2) the Undisclosed Documents contained personal opinions that were not relevant to the SPA, and/or (3) the reductions in Mr. Voss's powers and responsibilities that some of the Undisclosed Documents suggested were never implemented.[7] Moreover, Defendants adduced evidence that (1) Plaintiffs met and planned to partner with Mr. Voss before Plaintiffs began discussions with Defendants, *see* D.I. 765-4, Ex. D, at 511:21-512:15, and (2) Mr. Voss explicitly told Plaintiffs that he would not disclose the Schratter Employment Letter to them, yet Plaintiffs chose to proceed with the deal anyway, *see id.* at 539:20-541:9. If the jury credited Defendants' evidence, the jury could reasonably have found that the Undisclosed Documents were not material and, therefore, Defendants did not commit fraud. Since the Court may not "substitute its judgment of the facts and the credibility of the witnesses for that of the jury," *Leonard v. Stemtech Int'l Inc.*, 834 F.3d

[7] *See* D.I. 770 at 25-26 (summarizing evidence); D.I. 765-4, Ex. D, at 356:23-357:4 (testimony that Attachment 1 to the "Schratter Employment Agreement," *see supra* n.3, was never put into effect), 367:12-368:8 (testimony that the Corman Ship Supplies payment and earnout agreement was set to begin in 2015, but Schratter sold in 2014), 370:10-20 (testimony that the recommendations from the June 23 Report to the Executive Committee were rejected).

376, 386 (3d Cir. 2016), and must "view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict," *Marino*, 749 F.2d at 167, that conclusion is sufficient to uphold the jury's verdict.

### 3. Testimony Regarding Schratter's Unpaid Debt to Savencia Cheese Was Not Unfairly Prejudicial.

Plaintiffs next contend that the Court should grant a new trial because, in Plaintiffs' view, the Court erred by permitting Defendants to introduce evidence related to Schratter's debt to Savencia Cheese ("Savencia Cheese Debt"), which Plaintiffs contend was irrelevant to the case and prejudiced Plaintiffs by portraying Plaintiffs as "'bad guys' that did not pay their debts." D.I. 764 at 30-32. Defendants respond that the evidence was relevant to Counterclaim-Plaintiff's claim that Counterclaim-Defendants breached the SPA. *See* D.I. 770 at 27-29. Specifically, Defendants assert that evidence related to the Savencia Cheese Debt was relevant because Plaintiffs' negotiations, on behalf of Schratter, with Pierre Ragnet (an officer of Defendants), on behalf of Savencia Cheese, were the reason Plaintiffs breached the SPA and the covenant of good faith and fair dealing. *See id.*

The Court agrees with Defendants. Zausner was permitted to introduce evidence related to Counterclaim-Defendants' alleged breach of the SPA and the covenant of good faith and fair dealing at trial. Zausner chose to do so by introducing evidence that Counterclaim-Defendants (1) were aware that they owed Zausner $6,100,000 in installment payments under the SPA and (2) attempted to negotiate a reduction in that amount and, at the same time, the amount Schratter owed to Savencia Cheese. *See, e.g.*, D.I. 765-4, Ex. D, at 472:16-474:12; D.I. 765-5, Ex. E, at 564:11-565:8. Thus, the evidence of the Savencia Cheese Debt that Zausner introduced was relevant to Zausner's breach of contract claim, and some explanation of the Savencia Cheese Debt was necessary to explain the communications that Zausner was using to prove Zausner's counterclaims.

*See* Fed. R. Civ. P. 401. Moreover, the evidence was not so unfairly prejudicial that it should have been excluded under Fed. R. Civ. P. 403. Zausner did not use the Savencia Cheese Debt to broadly argue that Plaintiffs were "bad guys." D.I. 764 at 32. Instead, Zausner used the Savencia Cheese Debt to argue that Counterclaim-Defendants breached the covenant of good faith and fair dealing by trying to cut deals with various entities to avoid paying the $6.1 million that Counterclaim-Defendants owed under the SPA. Accordingly, the Court holds that it properly permitted Defendants to introduce limited evidence of the Savencia Cheese Debt.

**4. Mr. Ragnet's Testimony Regarding J. Wild's Credibility Was Not Improper Bolstering.**

Finally, Plaintiffs briefly contend that the Court erred by allowing Pierre Ragnet ("Mr. Ragnet") to vouch for the truthfulness of J. Wild ("Mr. Wild") over Plaintiffs' objection. *See* D.I. 764 at 32-33; *see also* D.I. 765-4, Ex. D, at 448:15-19 (the challenged testimony). Plaintiffs assert that this was a prejudicial error because Mr. Wild's credibility was a central issue in the case. *See id.* Defendants respond that they were permitted to elicit a single-sentence opinion from Mr. Ragnet regarding Mr. Wild's truthfulness because Plaintiffs opened the door by pursuing a theory that Defendants, including their agents Mr. Ragnet and Mr. Wild, were liars who misrepresented Mr. Voss's powers and duties to Plaintiffs to induce Plaintiffs to purchase Schratter. *See* D.I. 770 at 29-30.

The Court agrees with Defendants. "A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Fed. R. Civ. P. 608(a). An attorney's statement during opening statements that a witness is a liar or is lying about aspects of the case can constitute an attack on the witness's

character for truthfulness, thereby opening the door to subsequent opinion testimony supporting the witness' character for truthfulness. *See Renda v. King*, 347 F.3d 550, 556 (3d Cir. 2003) (holding that it was reversible error for the district court to exclude opinion testimony regarding the defendant's good character for truthfulness, concluding that the plaintiff's attorney opened the door to such testimony by calling the defendant a liar during opening statements). That was the case here. During his opening statement, Plaintiffs' counsel repeatedly stated that Defendants and their agents, including Mr. Wild, had lied to Plaintiffs about the division of responsibility between Mr. Wild and Mr. Voss at Schratter in 2014.[8] Thus, Plaintiffs attacked Mr. Wild's credibility and opened the door for Defendants to rebut the attack, which Defendants properly did. Accordingly, the Court holds that Mr. Ragnet's opinion testimony regarding Mr. Wild's character for truthfulness was admissible.[9]

* * *

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for New Trial (D.I. 763).

[8] *See, e.g.*, D.I. 765-3, Ex. C, at 97:3-8 ("[T]he Blandins spoke with the senior executives of Savencia and Zausner. They promised -- you will see it -- in writing and orally, that they would deal with them with honesty, sincerity, and transparency. How did they really deal with them? With lies and deception."), 112:14-15 ("Alain Voss is the CEO/president, it's a lie."), 113:11 ("Once again, these are lies"), 113:18-21 ("Alain Voss . . . is the current CEO of the company -- again, a lie -- who has always benefited from significant autonomy -- also a lie."), 115:15-16 ("All of it lies, all of it written down in e-mails and other documents."), 116:7 ("[I]t was all a lie to sell Schratter."), 117:6 ("The problem is, it's a lie."), 121:3-4 ("The lies of Zausner.").

[9] Although the Court does not believe it erred, any error was not prejudicial. Even if Plaintiffs' counsel's statements in opening were insufficient to constitute an attack on Mr. Wild's credibility, it is "highly probable" that the single sentence of testimony in support of Mr. Wild's character by Mr. Ragnet (whom Plaintiffs also called a liar) "did not affect the outcome of the case." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 917 (3d Cir. 1985).

### B. Defendants Are Entitled to Pre-judgment and Post-judgment Interest, but Defendants' Request for An Award of Costs Is Premature.

Defendants' Motion (D.I. 766) requests that the Court amend the final judgment to include (1) an award of $2,697,063 of pre-judgment interest, (2) a post-judgment interest rate of 4.09 percent, compounded annually, on the total amount of damages, including the pre-judgment interest and any attorneys' fees awarded, and (3) an award of costs. D.I. 767 at 10. Plaintiffs do not oppose Defendants' Motion with respect to pre-judgment and post-judgment interest, but Plaintiffs object to Defendants' request for an award of costs and any determination of the propriety of attorney's fees at this stage. *See* D.I. 769 at 1-2. The Court previously instructed the parties not to file any motions for sanctions, costs, and/or attorneys' fees until fourteen (14) days after the time for appeal has expired or within fourteen (14) days after issuance of the mandate from the appellate court. *See* D.I. 758 at 2-3.

#### 1. Zausner Is Entitled to Pre-Judgment Interest.

"Prejudgment interest is awarded to restore a plaintiff to the position it would have been in had there been no wrongdoing." *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 450 (D. Del. 2023). When, as here, a court sits in diversity, state law determines the applicable rate of pre-judgment interest. *See Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). Counterclaim-Plaintiff Zausner bases its request on a provision in the SPA that modifies the Florida statutory interest rate, providing for an award of the prime rate, plus 2% on the outstanding amount that Counterclaim-Defendants owed under the SPA ($6.1 million). *See* D.I. 767 at 6. That provision applies to the amount Counterclaim-Defendants owed before January 1, 2020, after which time Zausner acknowledges that the statutory rate under Florida law applies. *See id.* at 7. Zausner requests $2,697,063 of pre-judgment interest in total, and Counterclaim-Defendants do not oppose

that request. Therefore, the Court GRANTS Zausner's request to amend the Judgment to include an award of pre-judgment interest in the amount of $2,697,063.00.

**2. Zausner Is Entitled to Post-Judgment Interest.**

"Post-judgment interest is mandatory for damages awarded in civil cases." *Purewick*, 666 F. Supp. 3d at 451-52 (citing 28 U.S.C. § 1961(a)). Zausner seeks post-judgment interest at a rate of 4.09%, the Treasury yield rate for the calendar week ending on March 28, 2025, the "calendar week preceding the date of the judgment." *See* D.I. 767 at 8 (quoting 28 U.S.C. § 1961(a)). Counterclaim-Defendants do not oppose this request, nor do they dispute the rate. Therefore, the Court GRANTS Zausner's request to amend the Judgment to award post-judgment interest at a rate of 4.09%, compounded annually, on the total amount of damages, including the pre-judgment interest and any attorneys' fees later awarded.

**3. Defendants' Motion for an Award of Costs is Premature.**

Defendants request that the Court amend the Judgment to include an award of costs to Defendants. *See* D.I. 767 at 10. This Court previously instructed the parties not to move for an award of costs until fourteen (14) days after either the deadline for appeal passes or an appellate mandate issues. *See* D.I. 758 at 2-3. Plaintiffs oppose Defendants' Motion on that basis. *See* D.I. 769 at 1-2. Accordingly, the Court DENIES WITHOUT PREJUDICE Defendants' request to amend the Judgment to include an award of costs. Defendants may renew their request after the deadline previously set by the Court.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for New Trial (D.I. 763). The Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion to Amend/Correct Judgment (D.I. 766). The Court will issue an Order consistent with this Opinion.